**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| FACTORY DIRECT WHOLESALE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE KICK, INC., and CKNAPP SALES, INC.,<br><br>Defendants. | ) | Civil Action No. 4:21-cv-00368-RSB-CLR |

**<u>MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW</u>**

Defendants Office Kick, Inc. and CKnapp Sales, Inc. (collectively, "Office Kick") respectfully move pursuant to Fed. R. Civ. P. 12(b) (6) to dismiss Counts VII (Tortious Interference) and VIII (Civil Conspiracy) of Plaintiff Factory Direct Wholesale, LLC's ("FDW") First Amended Complaint (Doc. 15).

## I. INTRODUCTION

Federal Rule of Civil Procedure 12(b) (6) allows a defendant to defend itself by moving the court to recognize the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b) (6). Here, Defendants Office Kick and VIVO move the court to recognize FDW's failure to state a claim upon which relief can be granted for each of FDW's Count VII (Tortious Interference) and Count VIII (Civil Conspiracy).

First, with respect to FDW's Count VII (Tortious Interference), Amazon allows **all sellers** that use its platform to report infringement of intellectual property (IP) rights, including patent rights. In particular, Amazon **expressly provides and allows** a process—that Amazon calls its "utility patent neutral evaluation" ("UPNE") process—that invites sellers to notify Amazon of identified patent infringement. In addition, Amazon provides an online reporting tool to allow

sellers to report infringement to Amazon. *See* Amazon.com – Report Infringement, available at https://www.amazon.com/report/infringement (last visited May 24, 2022).

Here, by using Amazon's own expressly allowed process and online reporting tool, Office Kick successfully notified Amazon of its patent rights, and Amazon subsequently, on its own accord, decided to remove FDW's products now at issue in this case. That is, Office Kick provided notice to Amazon that FDW's product were infringing, and Amazon—using its own process that all Amazon sellers agree to use in an interwoven set of contracts—determined that FDW's products infringed Office Kick's patents. This resulted in the removal of FDW's products from Amazon.com.

FDW then filed this declaratory judgment case alleging, in part, tortious interference. This, however, is a tactic that FDW has attempted at least once before in the Northern District of Georgia, where that court dismissed FDW's tortious interference for the same reasons that Office Kick identifies herein.[1] That is, as in the Northern District of Georgia case, so too FDW again attempts—now in this court—to assert tortious interference even though Amazon's own contracts and agreements expressly allow parties to notify Amazon of infringement, and where Amazon, at its sole discretion and judgement, acts to remove listings that it deems infringe identified patents (which it has determined to the be case for FDW's products).

Still further, as in the Northern District of Georgia case, FDW's arguments here are contrary to well settled Georgia law on tortious interference. In particular, tortious interference with a contractual relationship requires breach of a contract. However, FDW does not, and cannot,

[1] *FDW v. iTouchless Houseware & Products, Inc.*, No. 1:18-cv-4091-CAP, Doc. 16 (N.D. Ga. Nov. 29, 2018) ("The plaintiff has alleged that the defendant contacted Amazon and requested changes be made to listings belonging to the plaintiff and characterizes these requests as improper but makes no factual allegations to support these characterizations. In the absence of allegations that the actions by the defendant were somehow fraudulent or wrongful in some way, the claims for tortious interference fail.")

plead that Office Kick (or Amazon) has somehow breached any contract with FDW at least because Amazon's removal of FDW's infringing listings is **expressly allowed** by Amazon's Seller Agreement that all sellers (including FDW) must enter into before being allowed to list product(s) on amazon.com. And FDW readily admits that it is a seller on Amazon.com. See Doc. 15, at ¶ 17.

Finally, with respect to Count VIII (Civil Conspiracy), FDW alleges a conspiracy between Office Kick and CKnapp d/b/a VIVO to tortuously interfere with that Amazon contract (which was not, in fact, breached), even though Office Kick and VIVO are under common ownership and control, making a conspiracy impossible as a matter of law. For example, under Georgia law, there can be no conspiracy with oneself, as Office Kick and VIVO are positioned by virtue of their common ownership and control.

For these reasons, and several others (as discussed herein), including *Noerr-Penning* protected speech, federal patent law preemption, and failure to adequately plead under Fed. R. Civ. P. 9(b), FDW's Counts VII and VIII should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b) (6).

## II. BACKGROUND

Office Kick is the owner of all right, title, and interest in U.S. Patent Nos. 11,134,773 (the "'733 Patent"), 11,134,774 (the "'774 Patent"), and 10,575,630 (the "'630 Patent") (collectively, the "Office Kick Patents"). Each of the Office Kick Patents is titled "Desktop Workspace That Adjusts Vertically," and relates to convertible desktop workspaces that can be raised and lowered.

Before serving its Original Complaint, FDW reached out to Office Kick to initiate settlement discussions. Thereafter, on December 31, 2021, FDW filed its Original Complaint (Doc. 1) alleging, *inter alia*, tortious interference and civil conspiracy.

Following further settlement communications, FDW then filed its First Amended Complaint ("FAC") (Doc. 15). In addition to reasserting its claims for tortious interference, civil

conspiracy, and declaratory judgment of non-infringement of the ’733 Patent, FDW expanded its allegations to include additional counts for declaratory judgment of non-infringement of the ’774 Patent and the ’630 Patent. Doc. 15, at ¶¶ 107-114. FDW further included an invalidity challenge to each of the ’773 Patent, the ’774 Patent, and the ’630 Patent. Doc. 15, at ¶¶ 115-129.

### A. Amazon’s Agreements, Policies, and Rules, and Office Kick’s Enforcement

Amazon provides a variety of policies, contracts, and guidelines that sellers **must agree to** in order to become Amazon Sellers. Specifically, all sellers agree to be bound by Amazon’s Business Solutions Agreement (“the Amazon Seller Agreement”) to become an Amazon Seller – otherwise a seller cannot sell on the amazon.com website.[2]

The Amazon Seller Agreement authorizes Amazon, **in its sole discretion**, to terminate a seller’s access to the Amazon Marketplace, including their ability to list and offer for sale products on Amazon.[3] The Amazon Seller Agreement also requires that sellers be bound by Amazon’s additional “service terms and program policies that apply,” including but not limited to Amazon’s Intellectual Property for Rights Owners policies (“Amazon’s IP Policies”).[4]

---

[2] Amazon Services Business Solutions Agreement - Amazon Seller Central, available at https://sellercentral.amazon.com/gp/help/external/help.html?itemID=1791&language=en_US&ref=efph_1791_cont_SNV3657R94YP9DZ (last visited May 22, 2022) (the “Amazon Seller Agreement”). Although the Amazon Seller Agreement is not attached to the complaint, the Court can consider it without converting this motion into a motion for summary judgment because this (1) the Amazon Seller Agreement document is central to the plaintiff’s claim given that the plaintiff is (or was) an Amazon Seller, and (2) plaintiff does not dispute that it is (or was) an Amazon Seller pursuant to the Amazon Seller Agreement document. *See Bakos v. Unum Life Ins. Co. of Am*., CV 121-058, 2022 WL 791922, at *3 (S.D. Ga. Mar. 14, 2022).

[3] *See, e.g.*, Amazon Seller Agreement, at ¶ ¶ 3, 18 (“Amazon retains the right to immediately halt any [seller’s] Transactions, prevent or restrict access to the Services or take any other action to restrict access to or availability of any inaccurate listing, any inappropriately categorized items, any unlawful items, or any items otherwise prohibited by applicable Program Policies.”).

[4] *See* Amazon Seller Agreement, General Terms (“BY REGISTERING FOR OR USING THE SERVICES, YOU (ON BEHALF OF YOURSELF OR THE BUSINESS YOU REPRESENT) AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT”); *see also* Intellectual Property for Rights Owners - Amazon Seller Central, available at https://sellercentral.amazon.com/gp/help/external/help.html?itemID=U5SQCEKADDAQRLZ&language=en_US&ref=efph_U5SQCEKADDAQRLZ_cont_SNV3657R94YP9DZ (last visited May 22, 2022) (“Amazon’s IP Policies”).

Pursuant to Amazon's IP Policies, if patentee Amazon Seller believes another Amazon Seller's product for sale on Amazon infringes its patent, then the patentee Amazon Seller may report the infringement to Amazon.[5] Importantly, Amazon, **performs its own review and/or conducts its own procedure** to determine whether a product listed on its website infringes an identified patent. For example, if Amazon determines a seller's report of infringement is "valid," Amazon informs the infringing sellers and provides them an opportunity to contact the reporting seller.[6] Then, Amazon makes **its own internal assessment** of infringement claims, and determines whether to accept or reject the reporting seller's notice of infringement. If the report of infringement is accepted, Amazon removes the infringing content and takes appropriate action against the responsible sellers.[7] If the report of infringement is rejected, Amazon does not remove the reported content and does not take any further action against the seller.[8]

Office Kick regularly enforces its patent rights, including by reporting infringement to Amazon in accordance with Amazon's IP Policies and the Amazon Seller Agreement.[9] Office Kick also participates, at Amazon's invitation, in Amazon's Neutral Patent Evaluation Process in which an independent patent lawyer evaluates claims of infringement after analyzing written submissions by both the patent owner and the alleged infringer. Though Amazon's own process, to which all

---

[5] *See* Amazon's IP Policies ("If an ASIN or product on Amazon is infringing your utility patent, then you may report the entire ASIN.").

[6] *See* Amazon's IP Policies, Result from reporting a notice of infringement ("If your notice is valid, we will inform the responsible sellers about your claim and share your secondary contact information with them should they have any follow-up questions.").

[7] *See* Amazon's IP Policies, Result from reporting a notice of infringement ("If your notice of infringement is accepted, we will remove the content you reported and take appropriate action against the responsible sellers. Amazon does not share details of actions which are not already public in nature.").

[8] *See* Amazon's IP Policies, Result from reporting a notice of infringement ("If your notice of infringement is rejected, we will not remove the content you reported and we will not take action on the seller. You will receive a notification with the reason for rejection of your notice.")

[9] *See* Amazon's IP Policies ("If an ASIN or product on Amazon is infringing your utility patent, **then you may report the entire ASIN**.") (emphasis added); *see also* Amazon Seller Agreement, General Terms.

Amazon Sellers are bound, Amazon has recognized Office Kick's patents in several Amazon's Neutral Patent Evaluation Processes, in which a neutral third-party evaluator has found in Office Kick's favor each time.

Here, prior to this case, as part of its standard enforcement efforts, and in accordance with Amazon's standard polices under the Amazon Seller Agreement. Specifically, Office Kick has sent notices alerting Amazon to FDW's infringing products. After receiving these notices, and in accordance with its own policies and procedures, Amazon independently assessed the infringement allegations to determine whether or not they were valid prior to removing the product listings at issue in this case.[10]

### B. FDW's Allegations in the First Amended Complaint (FAC)

FDW's tortious interference and civil conspiracy claims are premised on nothing more than Office Kick's use of Amazon's standard polices under the Amazon Seller Agreement. More specifically, FDW alleges that Office Kick "intentionally interfered with FDW's contractual relationship with Amazon and with its prospective business relationship with Amazon's customers by wrongfully asserting that FDW's desk converters infringed the '773, '774, and '630 patents." Doc. 15, at ¶ 131. More specifically, FDW alleges that Office Kick tortiously interfered when Office Kick "raised their [allegedly] false claims of infringement directly with Amazon, causing Amazon to remove the falsely-accused products from its website." Doc. 15, at ¶¶ 18-19. FDW further alleges that Office Kick "acted improperly and without privilege by raising [these allegedly] frivolous claims of infringement with Amazon," which FDW further alleges "induced Amazon to discontinue selling FDW's accused [] products" because Amazon "remove[d] those

[10] *See* Amazon's IP Policies ("If an ASIN or product on Amazon is infringing your utility patent, then you may report the entire ASIN…. If your notice of infringement is accepted, we will remove the content you reported and take appropriate action against the responsible sellers…. If your notice of infringement is rejected, we will not remove the content you reported and we will not take action on the seller.").

products from Amazon's website." Doc. 15, ¶¶ 134-135.

In addition, FDW asserts that "Office Kick and Vivo conspired and reached an understanding among themselves to tortiously interfere with FDW's contractual and business relationships with Amazon and Amazon's customers" by notifying Amazon of FDW's infringing product listings. Doc. 15, at ¶ 140. FDW asserts that Office Kick acted "improperly" in enforcing its patents in the marketplace by reporting FDW's infringement to Amazon, further alleging that Office Kick's actions "caus[ed] the wrongful removal of FDW's products from Amazon's website." Doc. 15, at ¶¶ 134, 140.

In support of its Counts VII (Tortious Interference) and VIII (Civil Conspiracy), FDW alleges Office Kick tortiously interfered with the Amazon Seller Agreement. However, FDW fails to identify any particular provision of the Amazon Seller Agreement that Office Kick allegedly interfered with or breached. Tellingly, FDW fails to plead whether Amazon's removal of FDW's infringing product listings is outside of the Amazon Seller Agreement; as shown herein, Amazon's removal is instead fully within the Amazon Seller Agreement to which all sellers, including FDW, are bound. For the same reasons, FDW fails to state whether its Amazon Seller Agreement allows for third parties, such as Office Kick, to notify Amazon of infringing product listings; as described herein, the Amazon Seller Agreement invites patent owners, such as Office Kick, notify Amazon of infringing product listings.[11]

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) (2) requires that a pleading contain a "short and plain

[11] *See* Amazon's IP Policies ("If an ASIN or product on Amazon is infringing your utility patent, **then you may report the entire ASIN**…. If your notice of infringement is accepted, we will remove the content you reported and take appropriate action against the responsible sellers…. If your notice of infringement is rejected, we will not remove the content you reported and we will not take action on the seller.") (emphasis added). *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (document attached to motion to dismiss can be considered if the document is central to FDW's claim).

statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require detailed factual allegations, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the [non-moving party]." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Here, FDW must also satisfy Rule 9(b)'s heightened pleading standard. While FDW does not assert a claim for fraud, its tortious interference claim is grounded in allegedly fraudulent conduct. In particular, FDW has alleged Office Kick "falsely accused" it of patent infringement. Doc. 15, ¶¶ 18, 19, 59, 68. FDW alleges Office Kick was aware of the **falsity** of these statements because they were "frivolous and objectively baseless because no colorable or good faith argument exists" and that this was done as part of a scheme to "purposefully and with malice" to "induce" Amazon to act. *Id.* at ¶¶ 132-4. Claims for tortious interference and civil conspiracy that are grounded in fraud are subject to Rule 9(b)'s heightened pleading standard. *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 793 (N.D. Ill. 2015).

"[W]hen a complaint is grounded in fraud, as FDW's complaint is here, the complaint must

comply with Fed. R. Civ. P. 9(b)'s heightened pleading requirement that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Roundtree v. Countrywide Home Loans, Inc.*, No. 3:09–cv–189–J–32TEM, 2009 WL 5215334, at *4 (M.D. Fla. Dec. 29, 2009) (internal marks and citation omitted). "To satisfy Rule 9(b)'s 'particularity' standard, a complaint should 'identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the [d]efendants gain[ ] by the alleged fraud.' " *Id.* (quoting *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App. 81, 86 (11th Cir. 2008)).

Here, FDW's FAC fails to state a claim for Counts VII (Tortious Interference) and VIII (Civil Conspiracy) because FDW does not satisfy the applicable pleading requirements of either Federal Rules of Civil Procedure 8 or 9. Said another way, such allegations do not satisfy Federal Rule of Civil Procedure 8(a) (2) under the *Twombly* pleading standard. Additionally, FDW generally asserts allegations sounding in fraud throughout its FAC, but has failed to support such allegations with the particularity demanded by Rule 9(b).[12]

Moreover, while consideration of a motion to dismiss under Rule 12(b) (6) is generally confined to the pleadings, documents integral to the complaint may be considered on a motion to dismiss. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (document can be considered for motion to dismiss if the document is central to the Plaintiff's claim);.[13]

---

[12] FDW alleges in its FAC that Office Kick's actions, as alleged with respect to FDW's tortious interference count, "showed willful misconduct, malice, *fraud*" and "Defendants' conspiracy to tortiously interfere showed willful misconduct, malice, *fraud*[.]" Doc. 15, at ¶¶ 138, 144 (emphasis added).

[13] While FDW did not attach the Seller Agreement or Amazon's IP Policies to its FAC, it is integral to, and forms the basis of, FDW's tortious interference claim. *See* Doc. 15, ¶ 2 (FDW alleging that Defendants "tortuously interfered with FDW's contractual and business relations by causing Amazon [] to remove" certain of its product listings, an action that Amazon was explicitly authorized to do pursuant to the Seller Agreement and Amazon's IP Policies); *see also* Doc. 15, at ¶ 131 ("Defendants intentionally interfered with FDW's contractual relationship with Amazon"); Doc. 15, at ¶ 136 ("Defendants have tortiously interfered with Plaintiff's business and contractual relations with Amazon

## IV. ARGUMENT

FDW has failed to sufficiently plead claims for tortious interference and civil conspiracy. Not only do FDW's state law claims fail to satisfy the applicable pleading requirements of Federal Rule of Civil Procedure 9, but they fail to satisfy even the Rule 8 and *Iqbal*/*Twombly* pleading standards. FDW's tortious interference claim fails at least because (1) FDW fails to allege any support for its conclusory statements of "improper action" by Office Kick, (2) the alleged "interference" was explicitly authorized by the Amazon Seller Agreement, (3) the claim is barred by the *Noerr-Pennington* doctrine, and (4) the claim is preempted by federal patent law.

Similarly, FDW has not, and cannot, plead civil conspiracy because (1) there is no underlying tort to support the claim, (2) under Georgia law, there can be no conspiracy with oneself alone, (3) under Georgia law, one cannot conspire to do what it is legally allowed to do, and (4) FDW's conclusory allegations are merely speculative.

### A. FDW Does Not Plausibly State A Claim For Tortious Interference

FDW has not, and cannot, sufficiently plead a valid claim for tortious interference with contractual relations and prospective business relations. The Eleventh Circuit has said that such a claim requires four elements, including improper action by the defendant and breach of an underlying contract (e.g., here, the Amazon Seller Agreement):

> to establish a claim for tortious interference under Georgia law, whether asserting interference with contractual relations, business relations, or potential business relations, a plaintiff must prove: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

---

and the contractual and business relations with Plaintiff and its customers and prospective customers."). As such, the Amazon Seller Agreement and Amazon's IP Policies may be considered by the Court on a motion to dismiss without converting the motion to one for summary judgment.

*Coloplast Corp. v. Am. Breast Care, L.P.*, 209 F. App'x 945, 946 (11th Cir. 2006) (citing *Disaster Services, Inc. v. ERC Partnership*, 228 Ga. App. 739, 492 S.E.2d 526, 528-29 (1997)). "To satisfy this four-part test, a plaintiff must show more than that the defendant simply persuaded a person to break a contract." *Id*. (citing *Sommers Co. v. Moore*, 275 Ga. App. 604, 621 S.E.2d 789, 791 (2005)). The plaintiff must "adduce evidence of '**improper action or wrongful conduct**,' which Georgia courts have defined as 'constitut[ing] conduct wrongful in itself; thus, improper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.'" *Id*. (citing *Sommers*, 621 S.E.2d at 791).

Additionally, with respect to "a claim of tortious interference with contractual relations, a plaintiff must [further] show the 'existence of a valid contract'" and "**that the defendant is a 'stranger' to the 'contract** at issue and the business relationship giving rise to and underpinning the contract.'" *Quint Measuring Sys., Inc. v. Home Depot USA, Inc.*, No. 1:10-CV-01963-JOF, 2011 WL 13216960, at *7 (N.D. Ga. Mar. 8, 2011) (citing *Atlanta Market Center Management Co. v. McLane*, 269 Ga. 604, 608-610 (1998)).

#### 1. Office Kick's takedown notices were expressly allowed pursuant to Amazon's "interwoven set of contracts" (i.e., the Amazon Seller Agreement and the Amazon's IP Policies)

In addition, Office Kick cannot be liable for tortious interference because Office Kick and FDW are parties to a comprehensive interwoven set of contracts (i.e., the Amazon Seller Agreement and the Amazon's IP Policies) that govern Amazon's Neutral Patent Evaluation Process. In particular, under Georgia law:

> To be liable for interference with contractual or business relations, "one must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. In other words, all parties to a comprehensive interwoven set of contracts are not liable for tortious interference with any of the contracts or business relationships."

*Carey Station Vill. Home Owners Ass'n, Inc. v. Carey Station Vill., Inc.*, 268 Ga. App. 461, 463, 602 S.E.2d 233, 235 (2004).

Here, Office Kick is not a stranger to the Amazon Seller Agreement, nor is it a stranger to the business relationships at issue. FDW and Office Kick are both subject to the Amazon Seller Agreement and Amazon's IP Policies that permit parties to resolve patent disputes through Amazon's Neutral Patent Evaluation Process. As a part of this agreement, the parties agree to let Amazon decide, via a neutral third party evaluator, whether it is appropriate to discontinue sales on amazon.com that the neutral third party evaluator finds are infringing. Thus, the relationship between FDW and Office Kick is one of parties who have already agreed to, and are participants in, Amazon's policies. Because neither Office Kick nor FDW is a stranger to this process or the interwoven set of contracts that govern Amazon's patent process (see Exhibits A and B), then Office Kick cannot somehow be liable for tortious interference – Office Kick was merely complying with Amazon's expressly allowed contract provisions.

**2. FDW cannot allege any "improper action" because the Office Kick actions FDW pleads are explicitly authorized.**

FDW's pleading fails to allege how or why Office Kick's action is "improper" under Amazon's contracts, policies, or procedures.[14] "To establish that Defendants engaged in improper action or wrongful conduct, Plaintiff. . . must offer evidence of 'conduct wrongful in itself,' or 'action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.'" *Savage & Turner, P.C. v. Fid. & Deposit Co. of Maryland*,

[14] *See, e.g.,* Amazon Seller Agreement, at ¶ ¶ 3, 18 ("Amazon retains the right to immediately halt any [seller's] Transactions, prevent or restrict access to the Services or take any other action to restrict access to or availability of any inaccurate listing, any inappropriately categorized items, any unlawful items, or any items otherwise prohibited by applicable Program Policies."); *see also* Amazon's IP Policies ("If an ASIN or product on Amazon is infringing your utility patent, then you may report the entire ASIN.").

854 F. Supp. 2d 1359, 1361 (S.D. Ga. 2011) (citing *Kirkland v. Tamplin*, 285 Ga. App. 241, 645 S.E.2d 653, 656 (2007)) (finding no improper action where plaintiff "identifie[d] the four bases of allegedly improper action or wrongful conduct for which Plaintiffs seek relief" but "Plaintiff offer[ed] no evidence of any such conduct").

Here, FDW has not alleged conduct by Office Kick that is "wrongful in itself" or "involves predatory tactics." Instead, FDW alleges, without factual basis, that Office Kick "acted improperly and without privilege by raising frivolous claims of infringement with Amazon." Doc. 15, ¶ 134. However, initiating a dispute resolution process is not wrongful conduct that will support a tortious interference claim. *Savage & Turner, P.C. v. Fid. & Deposit Co. of Maryland*, 854 F. Supp. 2d 1359, 1361 (S.D. Ga. 2011) (holding that filing civil lawsuit and subsequent garnishment actions not wrongful). Moreover, "frivolous means 'without arguable merit either in law or fact.'" *Love v. Am. Gen. Life Ins. Co.*, No. CV616-068, 2016 WL 4492850, at *2 (S.D. Ga. Aug. 25, 2016), report and recommendation adopted, No. CV616-068, 2016 WL 4940341 (S.D. Ga. Sept. 14, 2016) (citing *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002)).

Here, however, Office Kick's claims were far from frivolous—in fact they were successful because Amazon agreed with Office Kick's claims by removing FDW's product listings that Amazon itself found to infringe Office Kick's patents. The FAC offers no facts to support a finding that Office Kick's enforcement of its valid patent rights in the marketplace was "without arguable merit either in law or fact." *Id.*; *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed.Cir.1998) ("Federal authority makes clear that it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent."); *Mikohn Gaming Corp. v. Acres Gaming, Inc*., 165 F.3d 891, 897 (Fed. Cir. 1998) ("Federal precedent is that communication to possible infringers concerning patent rights is not improper.").

Although FDW repeatedly characterizes Office Kick's notice of infringement to Amazon as "false," it is bedrock law that "a threshold showing of incorrectness or falsity [] is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002). Merely disagreeing with a patent owner's construction of its own patent claims, as FDW does here, does not show any "incorrectness or falsity" in Office Kick's notice of infringement to Amazon. *See, e.g.*, *Canfield Sci., Inc. v. Melanoscan, LLC*, No. CV 16-4636, 2017 WL 2304644, at *10 (D.N.J. May 25, 2017) (dismissing plaintiff's tortious interference claim where plaintiff's complaint argued the patent owner's notice of infringement was "false" but provided "absolutely no evidence that [patent owner] believed that [plaintiff] was not infringing but nevertheless sent the letter in bad faith").

Of course FDW finds undesirable Office Kick's notices to Amazon that assert FDW's products infringe; but such notices do not somehow make Office Kick's statement false or improper. *Id.* If FDW wants to argue non-infringement, it has the opportunity to do so in this case.

However, the Amazon Seller Agreement and related policies, including Amazon's IP Policies, specifically authorizes Office Kick to submit such notifications. Doc. 15, ¶ 131. That is, the Seller Agreement and Amazon's IP Polices allows Amazon sellers to assert their patent rights and report any suspected infringement, as discussed above. In fact, Amazon provides an online reporting tool to allow sellers to report infringement to Amazon. *See* Amazon.com – Report Infringement, available at https://www.amazon.com/report/infringement (last visited May 24, 2022).

Because the actions FDW characterizes as "improper" were explicitly authorized by Amazon via its Seller Agreement and Amazon's IP Policies, FDW's complaint cannot, and does

not, sufficiently allege any actual "improper" conduct by Office Kick as required for a claim of tortious interference under Georgia law.

Similarly, the Amazon Seller Agreement authorizes Amazon, *in its sole discretion*, to terminate FDW's access to the Amazon Marketplace. *See*, *e.g.*, Amazon Seller Agreement, at ¶ ¶ 3, 18. That said, FDW alleges in its FAC that Defendants "tortuously interfered with FDW's contractual and business relations by causing Amazon [] to remove" certain of its product listings. Doc. 15, ¶ 2. However, Office Kick did not "cause" Amazon to remove the product listings any more than it will "cause" this Court to dismiss these claims if the Court concludes they do not state a claim for which relief can be granted. Amazon was expressly authorized to make a determination on infringement, *in its sole discretion*, pursuant to the Amazon Seller Agreement. *See* Amazon Seller Agreement, at ¶¶ 3, 18.

Where, as here, a contract provision expressly permits the alleged "interference," a tortious interference claim is barred as a matter of law. *See, e.g.*, *Nobel Lodging, Inc. v. Holiday Hosp. Franchising, Inc.*, 249 Ga. App. 497, 500, 548 S.E.2d 481, 484 (2001) (affirming finding that there could be no tortious interference, under Georgia law, where the alleged "interference" was expressly permitted by way of contract).

Additionally, FDW's allegations of tortious interference here are similar to its previously-failed allegations against iTouchless Houseware in *FDW v. iTouchless Houseware & Products, Inc.*, No. 1:18-cv-4091-CAP (N.D. Ga. Nov. 29, 2018). There, as here, FDW asserted (1) a claim for tortious interference with contractual relations as to its agreements with Amazon and, (2) a claim for tortious interference with business relations between FDW and customers of Amazon. *See* Order Granting Mot. to Dismiss, Doc. 16, at 1-2, *FDW v. iTouchless Houseware & Products, Inc.*, No. 1:18-cv-4091-CAP (N.D. Ga. Nov. 29, 2018). Specifically, FDW alleged that the

defendant "iTouchless" tortiously interfered by contacting Amazon and requested that changes be made to listings belonging to FDW, including changes to its product descriptions and ASINs, which Amazon ultimately made; there, as is the case here now, FDW characterized iTouchless' actions as "improper." *Id.* at 2, 6-8; Def's Mot. to Dismiss, Doc. 4-1, at 2-3, *FDW v. iTouchless Houseware & Products, Inc.*, No. 1:18-cv-4091-CAP (Oct. 25, 2018). The defendant iTouchless argued in its motion to dismiss that the Amazon Seller Agreement and related policies authorized the actions taken by iTouchless because Amazon's policies and procedures allow Amazon sellers to request that changes be made to another seller's product listings. Def's Mot. to Dismiss, Doc. 4-1, at 3, 5-6, *FDW v. iTouchless Houseware & Products, Inc.*, No. 1:18-cv-4091-CAP (Oct. 25, 2018). The United States District Court for the Northern District of Georgia found that, despite FDW's allegations, the alleged "improper" actions were not actually improper, and on that basis dismissed FDW's claims with prejudice. Order Granting Mot. to Dismiss, Doc. 16, at 1-2, *FDW v. iTouchless Houseware & Products, Inc.*, No. 1:18-cv-4091-CAP (N.D. Ga. Nov. 29, 2018).

Accordingly, this Court, like the Northern District of Georgia in the *iTouchless* case, should dismiss FDW's tortious interference counts with prejudice.

### 3. FDW's tortious interference claim is barred by *Noerr-Pennington*.

The *Noerr-Pennington* doctrine initially protected defendants from Sherman Act liability for concerted efforts to petition government to pass legislation; it has since been extended to give immunity to defendants who exercise their right to petition by resorting to administrate and/or judicial proceedings. *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1233 (11th Cir. 2005). Although the *Noerr-Pennington* doctrine arose in the antitrust context, it has consistently been held to encompass all petitioning activity, including good faith litigation and concerted efforts incidental to litigation. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992) (holding that concerted threats of litigation are protected under *Noerr–Pennington*).

Infringement or takedown notices to Amazon have been held to constitute such efforts incidental to litigation, and therefore are protected by *Noerr-Pennington*. *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, No. C14-0950 RSM, 2014 WL 6452173, at *2 (W.D. Wash. Nov. 17, 2014), aff'd sub nom. *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017)) (*Noerr-Pennington* applies to "state law tortious interference" claims predicated on "infringement notice[s]. . . sent to Amazon").

Only under extraordinary circumstances would a patent owner's actions not be protected by *Noerr-Pennington*. As the Eleventh Circuit has explained, to overcome *Noerr-Pennington*, a plaintiff must allege a "sham litigation" by "establish[ing] that: (1) 'the [underlying activity was] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits'; and (2) the [defendant engaged in the underlying activity] with a 'subjective motivation ... to interfere directly with the business relationships of a competitor.'" *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures*, 508 U.S. 49, 60 (1993)). Claims of patent infringement are protected even if they "turn out to be inaccurate, provided they [are made] in good faith. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002).

Here, Count VII (Tortious Interference) fails both prongs of the sham litigation exception to *Noerr-Pennington*. First, FDW fails to plead facts to demonstrate that Office Kick's actions in enforcing its patent rights were "objectively baseless" such that there could be no expectation of success on the merits. If anything, FDW's own FAC acknowledges that Office Kick's takedown notices to Amazon were *objectively correct*, as Amazon evaluated the merits of Office Kick's infringement claims and agreed with them. Doc. 15, ¶ 19 (Defendants raised "claims of infringement directly with Amazon" and "Amazon [] remove[d] the []accused products from its

website."). Per its Seller Agreement and IP Policies, Amazon independently evaluates whether or not it believes any reports of infringement are "valid" and further determines, in its sole discretion, whether or not to remove the reported content or take action against the responsible seller.[15] Here, Amazon agreed with Office Kick and removed FDW's products as a result.

FDW's belief that it has defenses to patent infringement, or otherwise disagrees with Office Kick's (and Amazon's) conclusion that FDW infringes the patents-in-suit, is not enough to satisfy the objectively baseless prong. *See 800 Adept, Inc. v. Murex Sec., Ltd*., 539 F.3d 1354, 1370 (Fed. Cir. 2008) (citing *Golan v. Pingel Enter.*, Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002)) (explaining that to establish objective baselessness, a plaintiff must show, by clear and convincing evidence, that the patentee had no reasonable basis to believe its patent claims were valid or infringed). Because FDW has not (and cannot) allege sufficient facts to support its conclusory allegation that Office Kick's patent infringement notice to Amazon was objectively basis, the "sham litigation exception" to the *Noerr-Pennington* doctrine cannot apply. *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 67, 113 S. Ct. 1920, 1932, 123 L. Ed. 2d 611 (1993).

FDW also fails to sufficiently allege the second prong of the "sham litigation exception." Other than conclusory allegations that Office Kick's actions in enforcing its patent rights were done with the "specific intent" to cause harm to FDW, the FAC provides no facts upon which this Court can reasonably infer that Office Kick sought to enforce its patent rights with the "subjective motivation ... to interfere directly with the business relationships of" FDW. This is exactly the type of conclusory allegation the Court need not accept as true for purposes of Rule 12(b)(6), and moreover fail the pleading requirements of both Rule 8 and Rule 9.

**4. FDW's tortious interference claim is preempted by federal patent law.**

[15] *See* Amazon Seller Agreement; *see also* Amazon's IP Policies.

"Federal patent law 'preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent.'" *Iguana, LLC v. Lanham*, 835 F. Supp. 2d 1372, 1378 (M.D. Ga. 2011) (quoting *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 & n. 5 (Fed. Cir. 2008)). As the Supreme Court said over 100 years ago, "[p]atents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38, 33 S. Ct. 202, 57 L. Ed. 393, 1913 Dec. Comm'r Pat. 519 (1913).

According to the Federal Circuit, "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless [it can be shown] that the patent holder acted in bad faith." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998), *rev'd on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999); *see also Iguana, LLC v. Lanham*, 835 F. Supp. 2d 1372, 1378 (M.D. Ga. 2011). "Accordingly, to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). Like the exception to *Noerr-Pennington* protection, this "'bad faith standard has objective and subjective components." *Iguana, LLC v. Lanham*, 835 F. Supp. 2d at 1379 (citing *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008)). "The objective component requires a showing that the infringement allegations are 'objectively baseless.'" *Id.* "The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith." *Id.* Absent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent. *Id*.

Infringement allegations are objectively baseless if 'no reasonable litigant could realistically expect success on the merits.'" *Id.* (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60 (1993)). To show that a patentee's actions in enforcing their patent rights were objectively baseless, a plaintiff must show, by clear and convincing evidence, that the patentee had no reasonable basis to believe its patent claims were valid or infringed. *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (citing *Golan v. Pingel Enter., Inc.,* 310 F.3d 1360, 1371 (Fed. Cir. 2002)).

As described above, FDW's FAC at best provides nothing more than conclusory allegations of "improper" actions that fail to satisfy either the objective or subjective prongs of bad faith, which is a requirement to overcome federal preemption of its tortious interference claim. If anything, FDW admits that Office Kick's conduct was objectively reasonable by alleging that Amazon agreed with Office Kick's infringement notices.[16]

### B. FDW Does Not Plausibly State A Claim For Civil Conspiracy

FDW fails to sufficiently plead a claim for civil conspiracy. Under Georgia law, to succeed on a civil conspiracy claim, "a plaintiff must show that **two or more persons, acting in concert**, engaged in conduct that constitutes a tort." *Elliott v. Savannah Int'l Motors, Inc.*, 861 S.E.2d 137, 141 (Ga. Ct. App. 2021), cert. denied (Nov. 2, 2021) (citing *Jenkins v. Wachovia Bank, Nat. Assn*., 309 Ga. App. 562, 567 (3), 711 S.E.2d 80 (2011)) (emphasis added). Still further, absent the underlying tort, there can be no liability for civil conspiracy. *Id.*; *see also Stamey Cattle Co., LLP*

[16] As discussed above, Amazon's acceptance and confirmation of Defendants' notices of infringement demonstrate that Defendants' actions were not "objectively baseless" and were, in fact, objectively reasonable. Additionally, Plaintiff also fails to sufficiently allege the required subjective component of bad faith. Other than conclusory allegations that Defendants' actions in enforcing its patent rights were done with the "specific intent" to cause harm to FDW, Plaintiff provides no facts upon which this Court can reasonably infer that Office Kick sought to "interfere directly with the business relationships of" FDW by submitting notices of infringement to Amazon. *Andrx Pharms., Inc. v. Elan Corp., PLC,* c, 1234 (11th Cir. 2005).

*v. Wright*, No. 5:17-CV-147, 2019 WL 722597, at *18, n. 26 (S.D. Ga. Feb. 19, 2019) ("[T]here is no cause of action for civil conspiracy standing alone; rather, the claim must be grounded in some underlying tort.") (citing *Mclntee v. Deramus*, 722 S.E.2d 377, 379 (Ga. Ct. App. 2012)). That said, one cannot conspire to do what one is legally entitled to do. *See, e.g.*, *Barnwell v. Barnett & Co.*, 476 S.E.2d 1, 3 (Ga. Ct. App. 1996) (representatives of entity that had authority to terminate contract could not conspire to tortiously interfere with the contract). For the reasons set forth below, FDW's civil conspiracy claim necessarily fails.

**1. FDW Has No Underlying Tort To Support Its Civil Conspiracy Claim**

As noted above, Georgia law requires identification of some underlying tort to support a claim for civil conspiracy. *See, e.g., Lady Deborah's, Inc. v. VT Griffin Servs., Inc.*, No. CIV. A. CV207-079, 2007 WL 4468672, at *4 (S.D. Ga. Oct. 26, 2007) (granting motion to dismiss civil conspiracy claim brought under Georgia law after determining that plaintiff's tortious interference claim failed, explaining that "[a]bsent the underlying tort, there can be no liability for civil conspiracy"); *see also Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1344–45 (11th Cir. 2017). Because FDW's claim of tortious interference against Office Kick fails for at least the reasons stated above, FDW has no underlying tort to support its conspiracy claim against Defendants. As such, FDW's civil conspiracy claim also fails as a matter of law.

**2. Under Georgia Law, there can be no conspiracy with oneself.**

Even if there was an underlying tort (there is not), conspiracy requires **two or more persons, acting in concert**, engaged in conduct that amounts to a tort. *Mustaqeem-Graydon v. SunTrust Bank,* 573 S.E.2d 455, 461 (Ga. Ct. App. 2002). FDW's conspiracy claim is based on an alleged conspiracy between Office Kick and VIVO. *See, e.g.*, Doc. 15, ¶ 140 ("Office Kick and Vivo [*sic*] conspired and reached an understanding among themselves to tortiously interfere with FDW's contractual and business relationships with Amazon"). FDW's conspiracy claim fails as a

matter of law because Office Kick and VIVO are "essentially the same entity" and "Georgia courts are [] unwilling to recognize claims of 'intra-corporate' conspiracies." *Strickland v. Chase Bank USA, Nat'l Ass'n*, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712256, at *15 (N.D. Ga. July 2, 2009), report and recommendation adopted, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712252 (N.D. Ga. Aug. 24, 2009) (Georgia appellate courts have found that "a corporation cannot conspire with itself"). This is because "[c]onspiracy requires an agreement – and in particular an agreement to do an unlawful act – between or among two or more separate persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017). But "the very notion of an 'agreement' ... between a parent and a wholly owned subsidiary lacks meaning.... They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests." *Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752, 771, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

Here, the FAC admits VIVO is a parent or related affiliated of Office Kick and "owns and/or exercises managerial control over Office Kick." Doc. 15, ¶¶ 8, 14. This alone precludes a conspiracy claim because the defendants are "essentially the same entity" because they have common ownership and control (confirmable through publicly-available information). *See Wood v. S. Bell Tel. & Tel. Co.*, 725 F. Supp. 1244, 1248 (N.D. Ga. 1989) (citing *Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911 (N.D.Ga.1973)) ("[W]here a parent company exercises such control over a subsidiary that the two corporations are essentially the same entity, a parent corporation will be considered the employer of its subsidiary's personnel."). Documents publicly accessible through the Illinois Secretary of State[17] and the Colorado Secretary of State[18] show that Office

[17] Exhibit C ("CKnapp Sales, Inc. – Corporation/LLC Search/Certificate of Good Standing")

[18] Exhibit D ("Colorado Secretary of State – Statement of Change – Changing the Registered Agent Information")

Kick and VIVO have common ownership and control under Mr. Chance Knapp, at 195 East Martin Dr., Goodfield, IL 61742.[19] This information is publicly available and is also not in dispute. *See* Doc. 15, ¶ 140 ("Vivo is a parent or related company of, or is otherwise affiliated with, Office Kick.").

Thus, because "Georgia courts are clearly unwilling to recognize claims of 'intra-corporate' conspiracies," there can be no conspiracy between Office Kick and VIVO as a matter of law. *Strickland v. Chase Bank USA, Nat'l Ass'n*, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712256, at *15 (N.D. Ga. July 2, 2009), report and recommendation adopted, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712252 (N.D. Ga. Aug. 24, 2009) (acknowledging that Georgia appellate courts apply the intracorporate conspiracy doctrine, such that "a corporation cannot conspire with itself"); *see also Alta Anesthesia Assocs. of Georgia, P.C. v. Gibbons*, 245 Ga. App. 79, 85, 537 S.E.2d 388, 394 (2000) ("A corporation cannot conspire with itself and [] employees of a corporation are considered to be part of the corporate entity.")

### 3. There can be no conspiracy because one cannot conspire to do what it is legally allowed to do.

FDW's conspiracy claim fails because Office Kick is legally allowed to enforce its patent rights. FDW's alleged conspiracy is based on Defendants' alleged "agree[ment] to retain separate counsel to jointly represent them to contact Amazon and to cause Amazon to take down FDW's 79M and GDV products from the Amazon website." Doc. 15, ¶ 141. As discussed above, a patent

[19] "[B]ecause the Secretary of State's records are public records, the Court may properly take judicial notice of them without having to convert the motion to dismiss to a motion for summary judgment.*" Luster v. First Fin. Asset Mgmt., Inc.*, No. 120CV03505SDGJKL, 2021 WL 8268129, at *2 (N.D. Ga. July 20, 2021), report and recommendation adopted, No. 120CV03505SDGJKL, 2021 WL 8268136 (N.D. Ga. Sept. 15, 2021); *see also Street v. AU Health Sys., Inc.*, No. CV 120-084, 2021 WL 5514010, at *5 (S.D. Ga. Mar. 22, 2021) (taking judicial notice of information publically available on Georgia's Secretary of State website when considering defendants' motion to dismiss, noting that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

owner is entitled to notify those in the marketplace of its patent rights in an attempt to enforce those rights. Because Office Kick had a legal right to enforce its patents, sending notices of infringement to Amazon cannot be the basis for a conspiracy claim. *Rose v. Zurowski*, 511 S.E.2d 265, 266 (Ga. Ct. App. 1999); *see also Green v. Sams*, 209 Ga. App. 491, 498, 433 S.E.2d 678, 684 (1993) (explaining that there can be no conspiracy under Georgia law where "the actions taken by the defendants were either legal, or not the proximate cause of the damage alleged by the plaintiff"). As such, Defendants' actions in enforcing its valid patent rights do not (and cannot) support a claim for conspiracy.

**4. FDW's Conclusory Conspiracy Allegations Are Merely Speculative.**

Additionally, FDW's conspiracy allegation is nothing more than a "naked assertion," devoid of further factual enhancement, and does not meet the requirements of *Twombly* and *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). With respect to allegations of civil conspiracy, "[a]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." *Green v. Sams*, 209 Ga. App. 491, 498, 433 S.E.2d 678, 684 (1993). And, "[w]here a plaintiff in a civil case supports his case solely by circumstantial evidence. . . [t]here must be more than a 'scintilla' of circumstances to carry the case to the jury." *Budd v. Saddler Realty, Inc.*, 150 Ga. App. 148, 150, 257 S.E.2d 1, 2–3 (1979).

Here, FDW fails to point to any facts by which this Court may reasonably infer that Defendants agreed to commit some tort and acted in concert to do so. In fact, FDW does not even attempt to identify any circumstantial evidence that could plausibly support its claim (nor can it). FDW's naked assertions that Office Kick and VIVO reached an "agreement" and acted "in concert" to commit a tort are nothing more than speculative. Because FDW has not pled the

elements of conspiracy in more than a formulaic or conclusory manner (if at all), Defendants ask the Court to dismiss FDW's conspiracy claim.

## V. CONCLUSION

For the aforementioned reasons, FDW's claims of tortious interference (Count VII (Tortious Interference)) and civil conspiracy (Count VIII (Civil Conspiracy)) fail to state a claim upon which relief may be granted, and should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

May 26, 2022

By: */s/Jason Pedigo*

Jason Pedigo
Georgia Bar No. 140989
Ellis Painter
P.O. Box 9946
Savannah, GA 31412
pedigo@ellispainter.com
(912)233-9700
*Attorneys for Defendants*

By: */s/ Benjamin T. Horton*

Benjamin T. Horton
Ryan Phelan
Chelsea M. Murray
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300
E: bhorton@marshallip.com
E: rphelan@marshallip.com
E: cmurray@marshallip.com
*Attorneys for Defendants, appearing pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the within and foregoing document on all parties in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 26th day of May, 2022.

ELLIS PAINTER

*/s/Jason Pedigo*
Jason C. Pedigo
Georgia Bar No. 140989
Attorneys for Plaintiffs

P.O. Box 9946
Savannah, GA 31401
pedigo@epra-law.com
T: (912) 233-9700