## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| FACTORY DIRECT WHOLESALE, LLC, | |
| Plaintiff, | CIVIL ACTION NO.: 4:21-cv-00368 |
| v. | |
| OFFICE KICK, INC.; CKNAPP SALES, INC., | |
| Defendants. | |

## O R D E R

Presently before the Court is Defendants Office Kick, Inc., and CKNAPP Sales, Inc.'s (collectively "Defendants") Motion to Dismiss.  (Doc. 32).  Plaintiff Factory Direct Wholesale, LLC, brought this suit alleging, *inter alia*, that Defendants engaged in a civil conspiracy to tortiously interfere with Plaintiff's contractual relationship with non-party Amazon, Inc. ("Amazon").  (Doc. 15.)  Plaintiff alleges that Defendants filed frivolous notices to Amazon that certain desk converters sold by Plaintiff on Amazon's website were infringing Defendants' patents, resulting in Amazon removing the products from the site.  (Id.)  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants filed the at-issue Motion to Dismiss, arguing that Plaintiff failed to state claims for tortious interference and civil conspiracy.  (Doc. 32.)  The Motion has been fully briefed.  (See id.; docs. 43, 49–50.)  For the reasons stated below, the Court **DENIES** Defendants' Motion.  (Doc. 32.)

## BACKGROUND

### I.   The Parties and Defendants' Patents

The following allegations are set forth in Plaintiff's Amended Complaint.   (Doc. 15.) Plaintiff sells various models of adjustable standing desk converter units, which allow users to either stand or sit while using the work surface.   (Id. at p. 5.)  Plaintiff has sold at least fifteen different models of desk converters on Amazon's website.   (See id. at pp. 6, 29–30.)  Defendants are Plaintiff's competitors, selling desk converters on their own respective websites.   (Id. at p. 4.) Defendant CKNAPP Sales, Inc., also known as Vivo ("Vivo"), is a parent or related company of, or is otherwise affiliated with, Defendant Office Kick, Inc. ("Office Kick").   (Id. at p. 3.) Specifically, Vivo owns and/or exercises managerial control over Office Kick, and Chance Knapp, Vivo's President, is Office Kick's registered agent.  (Id. at p. 5.)

According to the records of the United States Patent Office, Office Kick is the holder of three patents related to desk converter designs: (1) Patent No. 11,134,773 (the "773 Patent"), (2) Patent No. 11,134,774 (the "774 Patent"), and (3) Patent No. 10,575,630 (the "630 Patent," and, collectively with the 773 and 774 Patents, the "Patents").   (Id. at pp. 7–8, 22, 25; see docs. 15-1, 15-5, 15-6.)  Both Office Kick and Vivo identified the Patents as part of their respective intellectual property ("IP") portfolios on their websites.  (Doc. 15, p. 5.)

### II.   Amazon's Seller Agreement and IP Policies[1]

---

[1]   Although the documents described in this section are not attached to Plaintiff's Amended Complaint, Defendants attached them to their Motion to Dismiss, (docs. 32-1, 32-2), and the documents are both undisputed and central to Plaintiff's Amended Complaint.  In fact, Plaintiff references and relies upon them in its Response to Defendants' Motion to Dismiss.  (See, e.g., doc. 43, pp. 6–7.)  Thus, pursuant to the incorporation by reference doctrine, the Court may consider them without converting Defendants' Motion to a motion for summary judgment under Rule 56.  See Bakos v. Unum Life Ins. Co. of Am., No. 1:21-cv-058, 2022 WL 791922, at *3 n.2 (S.D. Ga. Mar. 14, 2022) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.") (quoting Day v. Taylor, 400 F.3d 1272, 1275–76 (11th Cir. 2005)), aff'd, No. 22-11131, 2022 WL 3696648 (11th Cir. Aug. 25, 2022).

Sellers on Amazon are bound by the Amazon Services Business Solutions Agreement (the "Seller Agreement").  (See doc. 32-1, p. 2 ("By registering for or using [Amazon's] services, you . . . agree to be bound by the terms of [the Seller Agreement].").)  Paragraph 18 of the Seller Agreement gives Amazon "the right to immediately halt any [seller's] [t]ransactions, prevent or restrict access to the Services or take any other action to restrict access to or availability of . . . any unlawful items[] or any items otherwise prohibited by applicable Program Policies."  (Id. at p. 12.) "Service" includes selling on Amazon.  (Id. at p. 17.)  The Seller Agreement also binds sellers to Amazon's "service terms and program policies" for the country in which the seller is authorized to use Amazon's services.  (Id. at p. 2.)

A separate webpage, titled "Intellectual Property for Rights Owners," (the "IPRO page") indicates that a patent holder (i.e. "rights owner") may submit a notice of patent infringement to Amazon by submitting a report.  (Doc. 32-2, pp. 2, 8.)  The IPRO page is contained in a section of Amazon's website titled "Policies, agreements, and guidelines."  (See id. at p. 1.)  According to the IPRO page, to be "valid," the report must identify the infringing products and include "information that will help Amazon in processing [the] complaint."  (Id. at p. 8.)  Furthermore, the webpage states that, if the notice is "valid," Amazon will inform the responsible seller of the infringement claim and provide the seller with the claimant's contact information.  (Id. at p. 10.) Additionally, if the notice of infringement is "accepted," Amazon "will remove the [reported] content . . . and take appropriate action against the responsible sellers."  (Id.)  Finally, the IPRO page provides a link to "[r]elated articles" on Amazon's site, including "Program Policies."  (Id.)

### III.   Defendants' Infringement Notifications and the Removal of Plaintiff's Products from Amazon's Website

On October 6, 2021, Defendants' counsel wrote to Amazon and demanded that it remove two of Plaintiff's best-selling models—which were sold under the Amazon Standard Identification

Numbers (ASINs) B07G36F79M (the "79M desk converter") and B07WDV1GDV (the "GDV desk converter")—from its website because, counsel claimed, the products were infringing the 773 Patent. (Doc. 15, pp. 6–8.) On that same day, Amazon notified Plaintiff of Defendants' request. (Doc. 15, p. 8; <u>see</u> doc. 15-2.) Soon after, Plaintiff contacted Defendants and asked them to withdraw their takedown request because, in Plaintiff's view, the products were not infringing the 773 Patent. (<u>Id.</u> at p. 9.) Defendants refused, however, and, on November 2, 2021, Amazon removed the 79M and GDV models from its website. (<u>Id.</u>)

Ultimately, at Defendants' request, Amazon removed thirteen other models of desk converters Plaintiff offered for sale on the site for infringing one of the Patents. (<u>See id.</u> at pp. 19–30.) Although Plaintiff asked Amazon to re-list the removed products, Amazon refused to do so because Defendants never withdrew their infringement claims. (<u>Id.</u> at pp. 9, 21 24, 28.) According to Plaintiff, the product removals have caused it to suffer damages, including lost sales and profits, as well as reputational harm. (<u>Id.</u> at pp. 2, 6, 21, 24, 28–29.)

## IV.    Procedural History

On December 31, 2021, Plaintiff brought this suit, asserting, *inter alia*, tortious interference and civil conspiracy claims against Defendants.[2] (Doc. 1 (original Complaint); <u>see</u> doc. 15 (Amended Complaint).) Plaintiff alleges that Defendants conspired to hire counsel to wrongfully notify Amazon that Plaintiff's desk converters infringed the Patents, thereby inducing Amazon to remove the products from its site. (Doc. 15, pp. 40–43.) According to Plaintiff, Defendants lacked a "colorable or good faith argument" that its products were infringing, and, thus, Defendants' notices were "frivolous and objectively baseless." (<u>Id.</u> at pp. 40, 43.) Plaintiff alleges that its

---

[2] In addition to these claims, Plaintiff requests declaratory judgments that (1) the models of desk converters Amazon removed from its site do not infringe the Patents and (2) that the Patents are invalid. (Doc. 15, pp. 30–39.) However, Defendants have not sought dismissal of those claims at this time. (<u>See</u> doc. 32.)

products cannot possibly infringe any independent claim of the Patents, and, therefore, as a matter of law, cannot infringe any dependent claim of the Patents.  (Id. at pp. 17, 21, 24 27–28.)  Additionally, with respect to the 79M and GDV models, Plaintiff alleges that these products constitute "prior art" to the 773 Patent, and, thus, any claim that these products infringe that patent are frivolous.  (Id. at pp. 17–19.)  Moreover, the Amended Complaint states that Defendants acted improperly, without privilege, and with the specific intent to injure Plaintiff.  (Id. at pp. 40–43.)  Plaintiff seeks, among other relief, an award of actual and punitive damages, an order requiring Defendants to attempt to persuade Amazon to reinstate Plaintiff's desk converters, and attorneys' fees and costs.  (Id. at pp. 43–44.)

Defendants filed the at-issue Motion to Dismiss, seeking dismissal of Plaintiff's tortious interference and conspiracy claims pursuant to Rule 12(b)(6) for failure to state a claim.  (Doc. 32.)  Plaintiff filed a Response, (doc. 43), and Defendants filed a Reply, (docs. 49, 50).

## STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Iqbal, 556 U.S. at 678).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action'" does not suffice.  Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and dismissal is proper.  Id. (internal quotation marks and citation omitted).  Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. V. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## DISCUSSION

### I.    Tortious Interference (Count VII)

In Count VII, Plaintiff alleges that Defendants tortiously interfered with its contractual relationship with Amazon and its prospective business relationship with Amazon's consumers by frivolously notifying Amazon that Plaintiff's desk converters infringed Defendants' Patents.  (Doc. 15, pp. 40–41.)  Under Georgia law, tortious interference with contractual relations is a distinct and separate tort from tortious interference with existing or prospective business relations, although they share many of the same essential elements:

(1)    improper action or wrongful conduct by the defendant without privilege;

(2)    the defendant acted purposely and with malice with the intent to injure;

(3)    the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and

>     (4)     the defendant's tortious conduct proximately caused damage to the
>     plaintiff.

Disaster Servs., Inc. v. ERC P'ship, 492 S.E.2d 526, 528 (Ga. Ct. App. 1997).[3]

Defendants argue that Plaintiff has failed to state a claim for either tortious interference with contractual relations or tortious interference with prospective business relations.  (Doc. 32, pp. 10–20.)  Specifically, Defendants contend that Plaintiff inadequately alleged that Defendants' reports of infringement to Amazon constituted "wrongful conduct or improper action . . . without privilege."  (Id. at pp. 11–16; doc. 50, pp. 3–7.)  Defendants also argue that Plaintiff's tortious interference claims are subject to Rule 9(b)'s heightened standard for pleading fraud and that the Amended Complaint fails to allege fraud with sufficient particularity.  (Doc. 32, pp. 8–9; doc. 50, pp. 7–11.)  Finally, Defendants contend that Plaintiff's tortious interference claims are preempted by federal patent law and precluded by the Noerr-Pennington doctrine.[4]  (Doc. 32, pp. 16–20; doc. 50, pp. 11–14.)

### A.     Improper Action or Wrongful Conduct Without Privilege (Element I)

#### 1.     Improper Action

As noted above, the first element of all tortious interference claims in Georgia is "improper action or wrongful conduct by the defendant without privilege."  Disaster Servs., 492 S.E.2d at 528.   In Georgia, "improper actions constitute conduct wrongful in itself," and, thus, are

---

[3] The parties agree that Georgia law defines the elements of Plaintiff's tortious interference claims.  (See doc. 32, pp. 10–11; doc. 43, pp. 5–6.)

[4] To the extent that Defendants also argue that Plaintiff's tortious interference with contractual relations claim should be dismissed because Plaintiff failed to allege a breach of contract, this argument fails.  (See doc. 32, pp. 2–3.)  In Georgia, "[t]he intentional and non-privileged interference by a third party with existing contractual rights and relations constitutes a tort for which an action shall lie," and Georgia courts "have recognized that such interference with a contractual right or relationship need not result in a breach of the contract to be actionable."  McDaniel v. Green, 275 S.E.2d 124, 126 (Ga. Ct. App. 1980); see Perry & Co. v. New S. Ins. Brokers of Ga., Inc., S.E.2d 852, 856 (Ga. Ct. App. 1987) ("[T]he tort of the interference with contractual relations is not limited to the procurement of a breach of contract[.]").

understood to mean "wrongful action[s] that generally involve[] predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." Sommers Co. v. Moore, 621 S.E.2d 789, 791 (Ga. Ct. App. 2005). This list of improper actions is not exhaustive, as Georgia courts have found other types of conduct sufficiently wrongful to support liability for tortious interference. U.S. Cap. Funding VI, Ltd. v. Patterson Bankshares, Inc., 137 F. Supp. 3d 1340, 1371 (S.D. Ga. 2015) (collecting cases).

Defendants argue that Plaintiff has failed to plausibly allege the "improper action" element because Plaintiff "has not alleged conduct by Office Kick that is 'wrongful in itself' or 'involves predatory tactics.'" (Doc. 32, p. 13.) Defendants are incorrect. Plaintiff has plausibly alleged facts that show Defendants misrepresented to Amazon that Plaintiff's desk converters infringed the Patents. See Coloplast Corp. v. Am. Breast Care, L.P., 209 Fed. App'x 945, 946 (11th Cir. 2006) (identifying "misrepresentation" as one of the predatory tactics that can support a tortious interference claim in Georgia); see also Sommers, 621 S.E.2d at 791 (defining "improper actions" to include "fraud or misrepresentation"). The Amended Complaint alleges that "Defendants intentionally interfered with [Plaintiff]'s contractual relationship with Amazon and with its prospective business relationship with Amazon's customers by *wrongfully asserting* that [Plaintiff]'s desk converters infringed the [Patents]." (Doc. 15, p. 40 (emphasis added).) The Amended Complaint alleges that Defendants' infringement claims "were frivolous and objectively baseless because no colorable or good faith argument exists that [Plaintiff]'s accused desk converter products infringed any claim of [the Patents]." (Id.) Indeed, Plaintiff alleges throughout the Amended Complaint that Defendants' infringement notices to Amazon were "false," "objectively baseless," and "frivolous." (See, e.g., id. at pp. 2, 6, 8, 40–42.) To support these

allegations, Plaintiff included detailed allegations showing (1) that its products "cannot possibly" infringe any independent or dependent claim of the Patents, and (2) that the 79M and GDV desk converters constitute "prior art" to the 773 Patent.  (See id. at pp. 12–29.)  As such, Defendants' argument that Plaintiff "offers no facts to support a finding that Office Kick's enforcement of its valid patent rights in the marketplace was [frivolous]" is meritless.  (Doc. 32, p. 13); cf. FDW v. iTouchless Houseware & Prods., Inc., No. 1:18-cv-4091-CAP (N.D. Ga. Nov. 29, 2018) (doc 16, p. 8) (dismissing tortious interference claim brought by Plaintiff against a different competitor given "the absence of allegations that the actions by the defendant were somehow fraudulent or wrongful in some way").[5]

Notwithstanding these allegations in the Amended Complaint (which the Court treats as true at this stage), Defendants maintain that Plaintiff cannot satisfy the improper action element because Defendants' alleged misconduct was "explicitly authorized" by Amazon's Seller Agreement and IPRO page.[6]  (Doc. 32, p. 12.)  According to Defendants, these sources empowered them "to assert their patent rights and report any suspected infringement."  (Id. at p. 14.)  It is true that, in Georgia, a third-party's exercise of "an absolute legal right" does not constitute wrongful conduct for purposes of tortious interference.  Disaster Servs., 492 S.E.2d at 529.  However, at this stage of the litigation, "nothing in this case suggests that [Defendants] had a legal right to engage in the conduct underlying Plaintiff's tortious interference claim[s]"—namely, *falsely* notifying Amazon that Plaintiff's products were infringing the Patents *with the intent* of inducing Amazon

---

[5] Plaintiff attached a copy of the iTouchless decision to its Response to Defendants' Motion.  (See doc. 43-1.)

[6] In their Motion, Defendants use the short form "Amazon's IP Policies" to refer to the IPRO page. (See doc. 32, p. 4.)  However, the only "policies" Defendants attached to their Motion and have referred to therein are those described in the IPRO page.  (See generally docs. 32, 50.)  Thus, the Court construes Defendants' references to Amazon's IP Policies as a reference to the IPRO Page.

to remove the products from its website.  U.S. Cap. Funding VI, Ltd, 137 F. Supp. 3d at 1372.  The photocopy of Amazon's standard Seller Agreement that Defendants attached to their Motion does not explicitly authorize users of Amazon's services to report infringement, much less to make frivolous or false infringement claims.[7]  (See generally doc. 32-1.)  Moreover, the IPRO page—like Amazon's Seller Agreement—does not authorize sellers to make frivolous reports of patent infringement.  (See generally doc. 32-2.)  To the contrary, it appears to prohibit (or at least dissuade) sellers from making false infringement claims.  (See id. at p. 10 ("The continuous submission of inaccurate or fake notices could lead to the removal of your submission privileges.").)  Similarly, certain notices that Plaintiff received from Amazon alerting Plaintiff that its products had been taken down advise, "If you think that the rights owner has made *an error* in sending the notice, please reach out to the rights owner and ask them to submit a retraction of this notice."  (Doc. 15-3, p. 3 (emphasis added); doc. 15-4, p. 3 (emphasis added).)

In sum, because Plaintiff plausibly alleged that Defendants misrepresented to Amazon that Plaintiff's products were infringing the Patents, and because the materials in the record do not

---

[7] In fact, the Seller's Agreement does not mention or outline the process for making internal complaints of patent infringement.  (See generally doc. 32-1.)  Rather, it binds sellers to Amazon's "program policies," (id. at p. 2).  While Defendants claim that the referenced "program policies" include the infringement reporting policies set forth in Amazon's IPRO page, (see doc. 32, p. 4 ("The . . . Seller['s] Agreement also requires that sellers be bound by Amazon's additional 'service terms and program policies that apply,' including . . . Amazon's [IPRO] policies.") (quoting doc. 32-1, p. 2)), the Court has reviewed the materials that Defendants attached to their Motion and does not observe the policies described in the IPRO page to clearly be "program policies"; thus, they do not appear to be *binding* upon sellers via the Seller's Agreement.  The Seller's Agreement specifically defines the term "program policies" to mean "all policies and program terms *provided on the Program Policies page*" of Amazon's website.  (Doc. 32-1, p. 16 (emphasis added).)  The copy of the IPRO page contained in the record indicates that the IPRO page is provided in a section of Amazon's website titled "Policies, agreements, and guidelines," *not* in the "Program Policies" page.  (See doc. 32-2, p. 2.)  Indeed, the IPRO page provides a link to "Program Policies" and other "[r]elated articles," which strongly suggests that the Program Policies page is separate and distinct.  (Id. at p. 10.)  Therefore, while the IPRO page indicates that Amazon has a program in place for reporting patent infringement, the IPRO page does not set forth Amazon's binding policies with respect to reporting patent infringement because it does not appear to be one of the "program policies" incorporated into the Seller's Agreement.

show that Defendants held a legal right to submit frivolous reports of infringement, dismissal for failing to plausibly allege the improper action element is unwarranted.

### 2.     Privilege and the Interwoven Contracts Doctrine

Next, Defendants argue that Plaintiff has failed to plead that Defendants' reports of infringement constituted improper action "without privilege." (Doc. 50, p. 3.) In Georgia, in the tortious interference context, "privilege" means the "legitimate economic interests of the defendant or a legitimate relationship of the defendant to the contract, so that it is not considered a stranger, interloper, or meddler." Disaster Servs., 492 S.E.2d at 529. A defendant is not a stranger, and, therefore, is deemed privileged, when it has "a bona fide economic interest in the contract or relationship with one of the parties to the contract." Id.; see Parnell v. Sherman & Hemstreet, Inc., 874 S.E.2d 394, 402 (Ga. Ct. App. 2022). Additionally, the parties to "an interwoven contractual arrangement" are not strangers, and, thus, "are not liable for tortious interference with any of the contracts or business relationships." Atlanta Mkt. Ctr. Mgm't Co. v. McLane, 503 S.E.2d 278, 283–84 (Ga. 1998)); see Jefferson-Pilot Commc'ns Co. v. Phoenix City Broad., Ltd., 421 S.E.2d 295, 299 (Ga. Ct. App. 1992).

Defendants argue that Plaintiff "fails to plead that Defendants were somehow without privilege." (Doc. 50, p. 4.) According to Defendants, they were "expressly 'privileged' to submit infringement reports via Amazon's online reporting form" because the Amazon's Seller Agreement and IPRO page authorized such reports. (Id. at pp. 4–5; see doc. 32, pp. 11–12.) This argument fails. The Court already determined that, based upon the evidence available in the record, it cannot conclude that Amazon's Seller Agreement or the IPRO page authorized Defendants to make *false* infringement reports, which is the wrongful conduct alleged in this case.

11

See Discussion Section I.A.1, supra.  Indeed, the evidence in the record tends to show that Amazon prohibits sellers from submitting frivolous complaints.  See id.

Nevertheless, Defendants maintain that Plaintiff cannot prove that Defendants acted "without privilege" because they are not strangers to Plaintiff's contractual and business relationship with Amazon.[8]  Defendants contend that they are not strangers because they are parties to and beneficiaries of the "interwoven set of contracts"—i.e., the Seller's Agreement and IPRO page—which permit them to report patent infringement by other Amazon sellers, and, thus, involve themselves in other sellers' (like Plaintiff's) relationship with Amazon.  (Doc. 50, pp. 4–5 (citing Atlanta Mkt. Ctr. Mgm't Co., 503 S.E.2d at 283 (recognizing that "those who benefit from the contract of others," including unintended third-party beneficiaries, are not strangers to the contract)).)  Defendants also reason that they have a "legitimate or bona fide economic interest" in the Seller's Agreement because it allowed them to protect their intellectual property rights.  (Id. at p. 6.)  These arguments fail.  Plaintiff has explicitly alleged that the parties are competitors, (doc. 15, p. 4), and Defendants appear to concede that Plaintiff and Defendants have their own, separate agreements with Amazon, (doc. 50, p. 4 ("Each of [Plaintiff and Defendants'] agreements allows any seller to report infringement by another seller.") (emphasis added)).  "[Defendants] ha[ve] not provided, and the Court is not aware of, any case holding two companies in direct competition, like [the parties] in this case, are not strangers to an agreement between one of the companies and a third party."  Interra Int'l, LLC v. Al Khafaji, No. 1:16-CV-1523-MHC, 2017 WL 4866266, at *8 (N.D. Ga. Mar. 21, 2017).

---

[8]  Defendants do not contend that they are not strangers to (or, put another way, are privileged with respect to) Plaintiff's prospective relationship with Amazon's customers.  (See generally docs. 32, 50.)  Thus, the Court declines to address this issue, and will limit its analysis to whether Defendants are strangers to (and thus, acted without privilege with respect to) Plaintiff's contractual relationship with Amazon.

Moreover, Amazon's Seller Agreement states that it "is an agreement between you [i.e., the seller] . . . and Amazon," (doc. 32-1, p. 2), and explicitly provides that "[n]othing expressed or mentioned or implied [therein] is intended or will be construed to give to *any person other than the parties to this Agreement* any legal or equitable right, remedy, or claim under or in respect to this Agreement," (id. at p. 9 (emphasis added)).  Thus, at this stage, the Court cannot find that the parties' respective contractual arrangements with Amazon are "interwoven."  Cf. Jefferson-Pilot Commc'ns Co., 421 S.E.2d at 299 (finding buyer, seller, and lender who were all involved in the purchase and sale of a radio station "were all parties to a comprehensive interwoven set of contracts" with "rights and duties flowing between each of the parties"); Carey Station Vill. Home Owners Ass'n, Inc. v. Carey Station Vill., Inc., S.E.2d 233, 235 (Ga. Ct. App. 2004) (deeming homeowner's association, developer, and purchasers of the developer's lots parties to an interwoven set of contracts, and, thus, not strangers to the contracts or relationship at issue). Furthermore, while Defendants may have a bona fide interest in or benefit from their *own* contract with Amazon, Defendants have failed to show that they have a direct economic interest in *Plaintiff's* separate agreement with Amazon.  Cf. Atlanta Mkt. Ctr. Mgm't Co., 503 S.E.2d at 283 (providing that one is not a stranger to a contract if they "would benefit *from the contract with which [they are] alleged to have interfered*") (emphasis added) (citing Lake Tightsqueeze v. Chrysler First Fin. Serv. Corp., 435 S.E.2d 486 (Ga. Ct. App. 1993)).  Accordingly, the Court cannot find that Defendants are not strangers to (i.e., were privileged with respect to) Plaintiff's contractual relationship with Amazon.

In sum, based upon the forgoing, Defendants are not entitled to a Rule 12(b)(6) dismissal of Plaintiff's tortious interference claims on the ground that their actions were privileged.

**B.      Pleading Fraud with Particularity Under Federal Rule of Civil Procedure 9(b)**

Defendants argue that Plaintiff's tortious interference claims should be dismissed because they are grounded in fraudulent conduct and are not alleged with sufficient particularity under Rule 9(b).  (Doc. 32, pp. 8–9; doc. 50, pp. 7–11.)  Plaintiff argues that, even assuming Rule 9(b) applies to its tortious interference claims,[9] the Amended Complaint's allegations easily satisfy the rule.  (Doc. 43, pp. 16–17.)

Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "Particularity" means that "a plaintiff must plead facts as to time, place, and substance of the defendant[s'] alleged fraud, specifically the details of the defendant[s'] allegedly fraudulent acts, when they occurred, and who engaged in them."  U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006) (internal quotations omitted).  In Brooks v. Blue Cross & Blue Shield of Fla., Inc., the Eleventh Circuit stated that Rule 9(b) is satisfied if the complaint sets forth: (1) "precisely what statements were made in what documents or oral representations or what omissions were made," (2) "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same," (3) "the content of such statements and the manner in which they misled the plaintiff," and (4) "what the defendants obtained as a consequence of the fraud."  116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).  However, courts "evaluate whether the allegations of a

---

[9]  Plaintiff insinuates that Rule 9(b) is inapplicable without arguing why that is the case.  (See doc. 43, pp. 16–17.)  At least one other district court in the Eleventh Circuit Court of Appeals has found that Rule 9(b) applies to tortious interference claims based upon allegations of fraud.  See Diamond Resorts Int'l, Inc. v. US Consumer Att'ys, P.A., No. 18-80311-CIV, 2019 WL 3412169, at *4 (S.D. Fla. May 14, 2019).  However, the Court need not decide this issue.  As explained more fully within this subsection, even assuming Rule 9(b) applies, the Amended Complaint's allegations satisfy the Rule's particularity requirement.

complaint contain sufficient indicia of reliability to satisfy Rule 9(b) on a case-by-case basis." McInteer, 470 F.3d at 1358.

Defendants argue that Plaintiff has not identified the specific statements Defendants made to Amazon that were false.  (Doc. 50, pp. 8–10.)  According to Defendants, Plaintiff (1) "merely alleges that Defendants' 'actions showed . . . fraud'" and (2) states in conclusory fashion that Defendants "falsely accused" Plaintiff's products of infringing the Patents, and that such accusations were "objectively baseless" and "frivolous".  (Id. (quoting doc. 15, ¶¶ 18, 19, 59, 68, 138).)  That is incorrect.  As mentioned in Discussion Section I.A.1, supra, Plaintiff included detailed allegations explaining why Defendants' reports of infringement to Amazon were "false," "objectively baseless," and "frivolous."  Specifically, the Amended Complaint alleges that, based upon the accused products' configuration, there is "no colorable argument" that any of the accused products infringe any independent or dependent claim of the Patents.  (Doc. 15, pp. 15–17, 21, 24, 28.)  For example, the Amended Complaint states that the 79M and GDV desk converters cannot possibly infringe independent claim 1 of the 773 Patent—which describes "a gas spring directly attached to one of the set [sic] of pivot arms through an arm pivot point"—because neither product has this feature.  (Id. at p. 13.)  Indeed, according to the Amended Complaint, the "only force mechanism that exists in the 79M and GDV desk converters is an *air piston,*" which "does not connect directly to an arm and does not connect either directly or indirectly to an arm pivot point." (Id. (emphasis added).)  Plaintiff corroborated these allegations by including rendered "component schematics" images which show that the air piston is indirectly connected to the arm via a separate extension component and crossbar.  (Id. at p. 14.)  Furthermore, the Amended Complaint alleges that Defendants' notices to Amazon that the 79M and GDV desk converters infringe the 773 Patent are frivolous because these products constitute prior art to the 773 Patent.  (Id. at pp. 17–19

(explaining that the effective filing date of the 773 Patent cannot be earlier than February 9, 2020, at which time the 79M and GDV desk converters were already on sale in the United States).)  Thus, because the Amended Complaint's allegations describe in detail why Defendants' notices to Amazon were false and objectively baseless, Defendants' Motion on this issue is denied.

Defendants next argue that Plaintiff has not plead with particularity how Defendants' reports of infringement misled *Plaintiff*, as opposed to Amazon.  (Doc. 50, p. 8.)  Defendants' argument is premised upon the fact that, in <u>Brooks</u>, the Eleventh Circuit formulated the third prong of its Rule 9(b) standard in terms of how the alleged misrepresentations misled the "plaintiff."  116 F.3d at 1371.  However, <u>Brooks</u> involved a traditional fraud claim (where a plaintiff alleges that the defendant misled them to their detriment), <u>see</u> <u>id.</u> at 1368, whereas Plaintiff has alleged tortious interference, which occurs when the defendant improperly persuades (i.e., here, defrauds) a *third-party* to do something that harms the plaintiff.  Thus, allegations about how *Plaintiff* was misled are not relevant to its claims.  Furthermore, as the court stated in <u>Brooks</u>, the third prong is not a required element; it is merely one of the circumstances in which a complaint's allegations "*may*" satisfy Rule 9(b).  <u>Id.</u> (emphasis added).  In fact, <u>Brooks</u> recognized that "alternative means are . . . available to satisfy [Rule 9(b)]."  116 F.3d at 1381; <u>see</u> <u>Durham v. Bus. Mgm't. Assocs.</u>, 847 F.2d 1505, 1511–12 (11th Cir. 1988) ("Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule.").  Moreover, the Eleventh Circuit has warned courts not to apply Rule 9(b) in a way that "abrogate[s] the concept of notice pleading." <u>Durham</u>, 847 F.2d at 1511.  Thus, the fact that Plaintiff did not allege how it was misled by Defendants' alleged frivolous infringement reports is not dispositive; what matters, ultimately, is whether the Amended Complaint's allegations "alert[] [D]efendants to the precise misconduct with

16

which they are charged." Brooks, 116 F.3d at 1370 (internal quotation omitted); see id. at 1371 ("Rule 9(b) must be read in conjunction with Rule 8(a) . . ., which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief.").

Here, Plaintiff sufficiently alleged the "who, what, when, where, and how" of Defendants' alleged fraudulent complaints of infringement to Amazon. Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). The Amended Complaint alleges that Defendants "reached an agreement to retain counsel to jointly represent them to raise with Amazon false and objectively baseless allegations that certain adjustable standing desk products sold by [Plaintiff] on Amazon's website infringed the . . . [P]atents, thereby causing the wrongful removal of [Plaintiff's] products from Amazon's website." (Doc. 15, p. 4.) The Amended Complaint specifically alleges that Defendants' retained counsel sent a letter to Amazon on October 6, 2021, falsely accusing the 79M and GDV products of infringing the 773 Patent. (Id. at p. 8.) Furthermore, as discussed above, Plaintiff alleged in detail why Defendants' complaints to Amazon were false and frivolous. Additionally, Plaintiff clearly alleged how Defendants' complaints misled Amazon and what Defendants gained from the false accusations. The Amended Complaint states that "Defendants' actions induced Amazon to discontinue selling" fifteen of Plaintiff's desk converter products "and to remove [them] from Amazon's website, thereby making it impossible for [Plaintiff] to continue selling these products on the Amazon website." (Doc. 15, pp. 40–41); see Brooks, 116 F.3d at 1371 (allegations of "what the defendants obtained as a consequence of the fraud" support a finding that fraud has been alleged with sufficient particularity). In fact, Plaintiff included a table showing which products have been removed from Amazon as a result of Defendants' takedown requests, the date the products were removed, and the patent Defendants asserted was being violated by each product. (Doc. 15, pp. 29–30.) Moreover, Plaintiff alleged that Defendants are

its competitors, which suggests Defendants had something to gain by having Plaintiff's products removed from Amazon.  (Id. at p. 4.)  Viewed collectively, these allegations adequately alerted Defendants to the fraud-based misconduct Plaintiff claims they committed.

In light of the forgoing, the Court finds that Plaintiff has satisfied Rule 9(b)'s particularity requirement, and, accordingly, Defendants are not entitled to dismissal on this issue.

**C.      Preemption Under Federal Patent Law and the Noerr-Pennington Doctrine**

Finally, Defendants seek the dismissal of Plaintiff's tortious interference claim on the grounds that it is preempted by federal patent law and barred by the Noerr-Pennington Doctrine. (Doc. 32, pp. 16–20.)

**1.      Overview of Preemption and the Noerr-Pennington Doctrine**

"Federal patent law 'preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent.'" Iguana, LLC v. Lanham, 835 F. Supp. 2d 1372, 1378 (M.D. Ga. 2011) (quoting Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 & n.5 (Fed. Cir. 2008)).  This preemption applies to tortious interference claims brought under state law.  Releana, LLC v. Stephens, No. 2:15-CV-00222-RWS, 2016 WL 11745940, at *2 (N.D. Ga. Aug. 16, 2016) (citing Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1354-1355 (Fed. Cir. 1999)).  However, preemption does *not* apply "if the patent holder acted in bad faith in the enforcement of its patent."  Id. (citing 800 Adept, Inc. v. Murex Sec., Ltd., 539 F.3d 1354, 1369 (Fed. Cir. 2008)).  "Bad faith includes separate objective and subjective components."  Dominant Semiconductors Sdn. Bhd., 524 F.3d at 1260.  "The objective component requires a showing that the infringement allegations are 'objectively baseless,'" meaning that "no reasonable litigant could realistically expect success on the merits."  800 Adept, Inc., 539 F.3d at 1370 (quoting Globetrotter Software, Inc. v. Elan Computer Grp., Inc., 362 F.3d 1367, 1375 (Fed.

Cir. 2004)); see also Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993) (indicating that "objectively baseless" means "no reasonable litigant could realistically expect success on the merits"). "The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith." 800 Adept, Inc., 539 F.3d at 1370.

The Noerr-Pennington doctrine prohibits anti-trust liability for defendants who exercise their federal constitutional right to petition the government. Andrx Pharms., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1233 (11th Cir. 2005). While arising in the anti-trust context, the doctrine has been extended to provide immunity to defendants who petition the government by resorting to administrative and/or judicial proceedings. Id.; see McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1559–60 (11th Cir. 1992) (recognizing that threats of litigation and conduct "reasonably and normally attendant upon effective litigation" are protected by the doctrine) (quoting Coastal States Mktg, Inc. v. Hunt, 694 F.2d 1358, 1367 (5th Cir.1983)). The United States Court of Appeals for the Ninth Circuit has found infringement notices sent to Amazon are sufficiently related to petitioning conduct and thus are protected by the Noerr-Pennington doctrine. Hard2Find Accessories, Inc. v. Amazon.com, Inc., 691 F. App'x 406, 407 (9th Cir. 2017).

An exception to Noerr-Pennington immunity exists for sham proceedings. Landlordsoftware.com, LLC v. Grasmeyer, No. 1:11-cv-00802-JOF, 2012 WL 13008141, at *3 (N.D. Ga. Feb. 13, 2012) (citing Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 516 (1972)); see also McGuire Oil Co., 958 F.2d at 1559–60. To prevail on an argument that the sham exception applies, the plaintiff must establish that (1) "the [underlying petitioning conduct was] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) the defendant possessed the "subjective motivation . . . to interfere *directly*

with the business relationships of a competitor." Andrx Pharm, 421 F.3d at 1234 (quoting Prof'l Real Est. Invs., 508 U.S. at 60–61).

As the parties recognize, the elements of the "sham" exception are virtually identical to the objective and subjective components of the "bad-faith" exception to federal preemption, described above.  (See doc. 32, p. 19 ("Like the exception to Noerr-Pennington protection, this bad faith standard has objective and subjective components.") (internal quotations omitted); doc. 43, p. 19 ("[I]n cases in which defendants raised patent infringement claims in bad faith, the Noerr-Pennington doctrine does not apply, and the federal patent laws do not result in preemption.").) Therefore, the Court will evaluate the preemption and Noerr-Pennington issues simultaneously, analyzing whether the Amended Complaint adequately alleges that Defendants acted in bad faith, objectively and subjectively.

### 2. Plaintiff has adequately alleged that Defendants acted in bad faith.

Defendants argue that the Amended Complaint "provides nothing more than conclusory allegations of 'improper' actions that fail to satisfy either the objective or subjective prongs of bad faith."  (Doc. 32, p. 20.)  The Court disagrees.  The Court has twice noted that the Amended Complaint contains detailed allegations to substantiate Plaintiff's allegations that Defendants' notices of infringement to Amazon were "objectively baseless."  See Discussion Sections I.A.1, supra (rejecting Defendants' argument that Plaintiff "offers no facts to support a finding that Office Kick's enforcement of its valid patent rights in the marketplace was [frivolous]"); see also Discussion Section I.B, supra (analyzing the Amended Complaint's allegations and finding that they "describe in detail why Defendants' infringement notices to Amazon were false and objectively baseless").  Furthermore, with respect to subjective bad faith, Plaintiff alleges that "Defendants' frivolous accusations of infringement were made with the specific intent to cause,

and actually caused, direct injury to [Plaintiff]." (Doc. 15, p. 4.) Additionally, Plaintiff alleges that (1) "Defendants acted purposely and with malice to interfere with [Plaintiff]'s relationship with Amazon and with Amazon's customers, with specific intent to injure [Plaintiff]," (id. at p. 40), and (2) "Defendants . . . conspired and reached an understanding among themselves to tortiously interfere with [Plaintiff]'s contractual and business relationships with Amazon and Amazon's customers by raising false, objectively baseless, and frivolous claims of infringement," (id. at pp. 41–42). Finally, the Amended Complaint states that "Defendants were fully aware that the 79M and GDV desk converters were on sale on Amazon within the United States prior to February 9, 2020," and, thus, constituted "prior art." (Id. at p. 19.) Taken as true, these allegations are sufficient to find objective and subjective bad faith for purposes of federal preemption and the "sham" exception to the Noerr-Pennington doctrine. Accordingly, Defendants' Motion to Dismiss Plaintiff's tortious interference claims based upon these doctrines is denied.

## II.     Civil Conspiracy (Count VIII)

In Count VIII, Plaintiff alleges that Defendants *conspired to* raise frivolous claims of infringement with Amazon. (Doc. 15, pp. 41–42.) Specifically, the Amended Complaint alleges that

> Defendants agreed to retain separate counsel to jointly represent them to contact Amazon and to cause Amazon to take down [Plaintiff]'s 79M and GDV products from the Amazon website. In accordance with the Defendants' agreement and pursuant to Defendants' instructions, Defendants' counsel did in fact contact Amazon and cause Amazon to remove [Plaintiff]'s products from Amazon's website.

(Id. at p. 42.)

"To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort." McIntee v. Deramus, 722 S.E.2d 377, 379 (Ga. Ct. App. 2012) (internal

quotations omitted).  The Georgia Court of Appeals has recognized the intra-corporate conspiracy doctrine, which provides that "a corporation cannot conspire with itself."  Strickland v. Chase Bank USA, Nat'l Ass'n, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712256, at *15 n.18 (N.D. Ga. July 2, 2009) (quoting Alta Anesthesia Assocs. of Ga., P.C. v. Gibbons, 537 S.E.2d 388, 394 (Ga. Ct. App. 2000), *report and recommendation adopted*, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712252 (N.D. Ga. Aug. 24, 2009); see Catlett v. Wyeth, Inc., 379 F. Supp. 2d 1374, 1382 (M.D. Ga. 2004) ("Georgia courts are clearly unwilling to recognize claims of 'intra-corporate' conspiracies.") (citing Nalley Northside Chevrolet, Inc. v. Herring, 450 S.E.2d 452, 455 (Ga. Ct. App. 1994)).

Relying upon the intra-corporate conspiracies doctrine, Defendants argue that Plaintiff's civil conspiracy claim fails as a matter of law because Office Kick and Vivo are "essentially the same entity."  (Doc. 32, pp. 21–22.)  For support, Defendants cite Plaintiff's allegation in the Amended Complaint that Vivo is "a parent or related company of, or is otherwise affiliated with, Office Kick" and that Vivo "owns and/or exercises managerial control over Office Kick."[10]  (Id. at pp. 22, 23 (citing doc. 15, pp. 3, 5).)  Even taking these allegations as true, the fact that Defendant Vivo exercises some control over or owns Office Kick does not mean that they are the same entity. In Georgia, "a subsidiary is generally considered under law to be a separate legal entity from its

---

[10]  Defendants also cite documents produced by the Illinois Secretary of State (the "Illinois Document") and the Colorado Secretary of State (the "Colorado Document"), which they attached to their Motion.  (Doc. 32, pp. 22–23 (citing docs. 32-3, 32-4).)  Defendants claim that these documents show that Office Kick and Vivo are both owned and controlled by an individual named Chance Knapp.  Defendants argue that the Court may take judicial notice of these documents because they are public records.  (Doc. 32, p. 23 n.19.) Even assuming (without deciding) that the Court could take judicial notice of these documents, they are inapposite.  The Illinois Document is a certificate of Vivo's good standing, which states that Knapp is Vivo's registered agent and lists him as "President."  (Doc. 32-3, pp. 1–2.)  Furthermore, the Colorado Document is merely a statement updating the name and address of Office Kick's registered agent.  (Doc. 32-4.)  The only reference to Knapp therein is that he delivered the document for filing.  (Id. at p. 2.)  Thus, contrary to Defendants' contention, the documents do not show that Knapp *owns* either Office Kick or Vivo (even assuming that common ownership would prove that the two are essentially the same entity).

parent." Reeves v. Mohawk Factoring, Inc., 583 S.E.2d 487, 488 (Ga. Ct. App. 2003). Furthermore, "[a] parent/subsidiary relationship does not in and of itself establish the subsidiary as . . . the alter ego of the parent." Kissun v. Humana, Inc., 479 S.E.2d 751, 753 (Ga. 1997). Rather, whether a parent and its subsidiary should be treated as the same entity depends on their "business structure[s] . . . and the level of control one entity has over the other." Lowery v. Noodle Life, Inc., 869 S.E.2d 600, 603 (Ga. Ct. App. 2022).

Here, the Amended Complaint vaguely alleges, "[o]n information and belief," that "[Vivo] owns and/or exercises managerial control over Office Kick" and that "Knapp, the president of [Vivo], also serves as the registered agent for Office Kick." (Doc. 15, p. 5.) Absent additional allegations concerning Vivo's control over Office Kick and Defendants' respective corporate structures, the Court cannot find, at this stage, that Defendants are, as they contend, "essentially the same entity."[11] (Doc. 32, p. 21–22.) Accordingly, the Court rejects Defendants' argument that Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine. See Strickland, 2009 WL 10712256, at *15 n.18 ("[T]here is not a sufficient basis for the Court to conclude that the intracorporate conspiracy doctrine is applicable as there is no allegation in the complaint regarding *the amount of* control [the defendant] exercised over [its subsidiary].") (emphasis added).

---

[11] In their Reply, Defendants cite—for the first time—their Rule 7.1 Disclosures, which state that (1) Knapp is the CEO and President of Office Kick and Vivo, and (2) Vivo is the parent company of Office Kick by virtue of owning 100% of Office Kick's stock. (Doc. 50, p. 15 (citing doc. 36, pp. 1–2).) According to Defendants, these disclosures show that Vivo exerts complete control over Office Kick. (Id.) However, Defendants made these disclosures nearly two weeks *after* filing their Motion and did not refer to or rely upon them in their Motion. (See generally doc. 32.) Indeed, Defendants failed to contend—much less cite to evidence showing—that Knapp was the President and CEO of *both* Office Kick and Vivo (as opposed to just the President of Vivo, as indicated in the Illinois Document) prior to their Reply. (Id.; compare doc. 32-3 (referring to Knapp as Vivo's President), with doc. 32-4 (referring to Knapp as Office Kick's registered agent).) "Arguments raised for the first time in a reply brief are not properly before the reviewing court." United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir. 1984). Thus, the Court declines to consider the disclosures and Defendants' arguments based thereon.

Next, Defendants contend that Plaintiff's conspiracy allegations are insufficient because they are "merely speculative" and "devoid of further factual enhancement." (Doc. 32, p. 24.) The Court disagrees. Plaintiff alleged that Defendants agreed to and ultimately did retain counsel to file frivolous infringement notifications with Amazon in order to induce Amazon to remove Plaintiff's competing products from Amazon's site. (See doc. 15, pp. 41–42.) These allegations state a claim for civil conspiracy because they plausibly show that Defendants "combined" to commit the torts of tortious interference with contractual and prospective business relations. McIntee, 722 S.E.2d at 379. Furthermore, Defendants' reliance upon Green v. Sams, 433 S.E.2d 678 (Ga. Ct. App. 1993), and Budd v. Saddler Realty, Inc., 257 S.E. 2d 1 (Ga. Ct. App. 1979), is misplaced because these cases involved appeals from denials of a motion for summary judgment and a motion for directed verdict, respectively, as opposed to a Rule 12(b)(6) motion to dismiss.

Finally, Defendants argue that Plaintiff's civil conspiracy claim fails because (1) Plaintiff has no underlying tort to support its claim and (2) Office Kick had a legal right to enforce its patents by sending notices of infringement to Amazon. (Doc. 32, pp. 21, 23–24.) Both of these arguments are moot. With respect to the first argument, Defendants contend that Plaintiff has no underlying tort because its "claim of tortious interference against Office Kick fails for at least the reasons stated [in Defendants' Motion]." (Id. at p. 21.) However, the Court already rejected Defendants' arguments with respect to Plaintiff's tortious interference claim. See Discussion Section I, supra. With respect to the second argument, Defendants contend that "[t]here can be no conspiracy because one cannot conspire to do what it is legally allowed to do," and "Office Kick is legally allowed to enforce its patent rights." (Id. at p. 23.) This is precisely the argument that Defendants raised—and the Court rejected—concerning the "improper action" element of Plaintiff's tortious interference claim. See Discussion Section I.A.1, supra.

In sum, the Court rejects Defendants' arguments that Plaintiff failed to state a claim for civil conspiracy, and, therefore, their Motion on this issue must be denied.

## CONCLUSION

Based upon the forgoing, the Court **DENIES** Defendants Office Kick, Inc., and CKNAPP Sales, Inc.'s Motion to Dismiss Plaintiff Factory Direct Wholesale, LLC's tortious interference and civil conspiracy claims.  (Doc. 32.)  The Court **ORDERS** the parties to conduct a Rule 26(f) conference within **fourteen (14) days** from the filing of this Order and to file a Rule 26(f) Report within **seven (7) days** from the Rule 26(f) conference.[12]  Failure to comply with these directives may result in the dismissal of this action or striking of the answer.

**SO ORDERED** this 27th day of February, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[12]  The Rule 26(f) Report shall conform to the language and format of Judge Baker's Rule 26(f) Report Form located on the Court's website www.gasd.uscourts.gov under "Forms" and "Judge Baker-Instructions and Forms."