# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

FACTORY DIRECT           )
WHOLESALE, LLC,          )
                         )
         Plaintiff,      )
                         )
v.                       )
                         )
OFFICE KICK, INC., and   )
CKNAPP SALES, INC.       )
                         )
         Defendants.     )                    CV421-368
_____
OFFICE KICK, INC., and   )
CKNAPP SALES, INC.,      )
                         )
         Counterclaim Plaintiffs  )
                         )
v.                       )
                         )
FACTORY DIRECT           )
WHOLESALE, LLC,  DEFU USA, )
LLC, and HANPING LIU,    )
                         )
         Counterclaim Defendant/ )
         Third Party Counterclaim )
         Defendants.     )

# REPORT AND RECOMMENDATION

Plaintiff Factory Direct Wholesale, LLC sells adjustable standing

desk converter units which allow users to either stand or sit while using

the work surface.  Doc. 15 at 5 (First Amended Complaint).  It has sold

various desk converters models on Amazon.com. *Id.* at 6, 29-30. Defendant CKNAPP Sales, Inc., also known as "Vivo," is a parent company of Defendant Office Kick, Inc. ("Office Kick"). *Id.* at 3. Vivo and Office Kick are competitors of Plaintiff, and they sell desk converters on their own websites. *Id.* at 4.

According to United States Patent Office ("USPO") records, Office Kick holds three desk converter patents: (1) Patent No. 11,134,773 (the "773 Patent"), (2) Patent No. 11,134,774 (the "774 Patent"), and (3) Patent No. 10,575,630 (the "630 Patent," and, collectively with the 773 and 774 Patents, the "Patents"). Doc. 15 at 7-8, 22, 25; *see also* doc. 15-6 (630 Patent); doc. 15-1 (773 Patent); doc. 15-5 (774 Patent). Plaintiff asserts that although the 774 Patent purports to be a continuation of the 773 Patent, and the 773 Patent purports to be a continuation of the 630 Patent, the 774 Patent and 773 Patent are actually "continuations-in-part" because they add substantive content. Doc. 71 at 6 n.3 (noting that this distinction does not impact the Court's claim construction analysis); *see also* doc. 73 at 5 (The Patents "are related, sharing a common priority date, specification, and title[.]"). Plaintiff alleges that Defendants' counsel wrote to Amazon demanding that it remove two of Plaintiff's

models because they infringed the 773 Patent; Amazon subsequently removed the models.  Doc. 15 at 6-9.  Amazon eventually removed more of Plaintiff's models at Defendants' request because they purportedly infringed one of the Patents.  *Id.* at 19-30.

Plaintiff brought this action against Defendants asserting claims for tortious interference, civil conspiracy, declaratory judgment of non-infringement of the Patents, and declaratory judgment of invalidity of the Patents.  *See* doc. 15 at 30-43.[1]  Consistent with Rule 6.3 of the Local Patent Rules of the Northern District of Georgia ("LPRs"),[2] the parties filed a Joint Claim Construction Statement containing, *inter alia*, their respective proposed constructions of disputed patent claim terms.  Doc. 62; *see also* doc. 63 (first amended joint statement); doc. 72 (second amended statement).   Plaintiff proposes constructions for eleven disputed terms, doc. 72-1 at 1-8; Defendants contend that "[n]o

---

[1]  Defendants filed an Answer, Affirmative Defenses, and Counterclaims to First Amended Complaint which asserts counterclaims against Plaintiff, and third-party counterclaims against Defu USA, LLC ("Defu") and Hanping Liu.  Doc. 81 at 18-52.  The parties agreed at an April 14, 2023 status conference that the addition of Defu and Liu as parties does not impact the Court's claim construction analysis.  Doc. 90 (Minute Entry).

[2]  The Court granted the parties' joint request to adopt the Northern District of Georgia's LPRs in this case to the extent they do not conflict with the Local Rules of the Southern District of Georgia.  Doc. 42 at 1-2; *see also id.* at 1 n.1 (noting that the Southern District has not implemented local rules applicable to patent cases).

construction is necessary" for any of the terms.  Doc. 77 at 26.  The parties filed opening claim construction briefs, docs. 71 & 73, and responsive briefs, docs. 77 & 78.  *See* LPR 6.5.  The Court held a claim construction hearing, doc. 82 (Minute Entry); doc. 86 (Transcript), and the claim construction issues are ripe for disposition.

## STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotations and citation omitted).[3]  "[A] district court's duty at the claim construction stage is, simply, the one that [the Federal Circuit] described . . . many times before: to resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016).  Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

---

[3]  The Court must apply the law of the Federal Circuit to substantive patent issues, and the law of the Eleventh Circuit to procedural nonpatent issues.  *See In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999).

"When a court is presented with a purported dispute as to the meaning and scope of patent claim terms, the threshold question must be whether claim construction is truly necessary." *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 2019 WL 7161687, at *3 (E.D. Pa. Dec. 23, 2019); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and *when necessary* to explain what the patentee covered by the claims[.]" (emphasis added)). Claim construction is necessary "[w]hen the parties raise an *actual dispute* regarding the proper scope of claims." *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022) (quoting *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (emphasis added)).

"Determining whether there exists a genuine dispute as to the scope of a claim term must be resolved by first considering the 'ordinary and customary meaning' of the term." *Britax*, 2019 WL 7161687, at *3 (quoting *FenF, LLC v. SmartThingz, Inc.*, 601 F. App'x 950, 952 (Fed. Cir. 2015)). In patent cases, "the ordinary and customary meaning . . . is the meaning that the term would have to a person of ordinary skill in the art in question at the time of invention." *Phillips*, 415 F.3d at 1313; *see also*

*Sci. Applications Int'l Corp. v. United States*, 161 Fed. Cl. 373, 376 (2022) (referring to a person of ordinary skill in the art as a "POSITA").[4]   In some cases, "the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Keurig, Inc. v. JBR, Inc.*, 2013 WL 1213061, at *3 (D. Mass. Mar. 22, 2013) (citing *O2 Micro*, 521 F.3d at 1361) ("[I]t is well-established that a court may construe a claim term to have its plain meaning when such a construction resolves a dispute between the parties."); *id.* at *6 ("[T]he Court is not required to provide additional language construing a claim if its ordinary meaning can be readily understood by a layperson and adopting it would resolve the parties' dispute concerning interpretation."); *Truinject Corp. v. Galderma, S.A.*,

---

[4]  The parties dispute the applicable POSITA's level of skill in this case.  *Compare* doc. 71 at 6-7 (Plaintiff contends that the POSITA "is an individual with a B.S. degree in mechanical engineering, mechanical engineering technology, or similar degree, or alternatively, a person with four years' experience in designing mechanical consumer products with simple moving components."), *with* doc. 77 at 3 (Defendants counter that the POSITA "needs no more than a 2-year degree in the mechanical arts and/or 2 years' experience designing or building office equipment.").  The Court need not resolve this dispute since the parties agree that resolution would not impact any of their claim construction arguments.  *See* doc. 86 at 22-24 (Transcript).

2020 WL 3287047, at *1 (D. Del. June 18, 2020) ("Where the meaning is not readily apparent, however, the court may look to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." (quotations and citation omitted)).  However, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361.[5]

"Where claim construction is determined to be necessary, the court must abide by the same standard in construing the disputed claim term as in determining whether construction is necessary in the first place: the disputed term must be given its ordinary and customary meaning, that is, the meaning the term would have to a [POSITA] who has read

---

[5]  *Compare, e.g.*, *O2 Micro*, 521 F.3d at 1361 (finding the district court erred by determining that the claim term "only if" needs no construction.  Although the parties agreed that "only if" has a common meaning, "each party provid[ed] an argument identifying the alleged circumstances when the requirement specified by the claim term ['only if'] must be satisfied (e.g., at all times or during steady state operation)."  The "ordinary meaning" did not resolve that dispute.), *with Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (The district court did not err by construing a term as having its plain and ordinary meaning.  "Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction" by telling the jury to "give the . . . words in the claims their ordinary meaning.").

the entire patent at the time of the invention." *Britax*, 2019 WL 7161687, at *3.

"Importantly, the [POSITA] is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent[.]" *Phillips*, 415 F.3d at 1313. Therefore, although "[t]he claim construction inquiry . . . begins and ends in all cases with the actual words of the claim," *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998), courts must also consider "the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Further, a court construing patent claim terms need not adopt the constructions proposed by the parties, and should determine its own constructions if it determines the parties' proposals to be legally flawed." *Holmberg v. United States*, 124 Fed. Cl. 610, 613 (2016).

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide

to the meaning of a disputed term.' " *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Courts, however, must "us[e] the specification [only] to interpret the meaning of a claim", and may not "import[ ] limitations from the specification into the claim." *Phillips*, 415 F.3d at 1323. "[T]he court may also consider the prosecution history of the patent, if in evidence." *Vitronics Corp*, 90 F.3d at 1582. The prosecution history consists of "all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Id.* However, since the "prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Courts may also examine "extrinsic evidence," e.g., dictionaries, treatises, and expert testimony, *id.* at 1318; however, extrinsic evidence is "less significant than the intrinsic record", and "cannot alter any claim meaning discernible from intrinsic evidence." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004).

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning, as understood by the POSITA: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Id.* (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "The standard for disavowal of claim scope is similarly exacting." *Id.* at 1366. "[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013). "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [the Federal Circuit has] declined to find prosecution disclaimer." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (quoting *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003)). "The party seeking to invoke . . . disclaimer bears the burden of proving the existence of a clear and

unmistakable disclaimer." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063-64 (Fed. Cir. 2016) (citation and quotations omitted).

## ANALYSIS

Plaintiff asserts that "[t]he first disputed claim language" is "a set[s] of [pivot] arms that connect at a scissoring point[s] creating a scissoring motion", and cites eight separate claims in the three Patents in which the "disputed claim language appears."   Doc. 72-1 at 2 (alterations added by Plaintiff) ("Disputed Term 1").  It asserts that slight variations exist in some of these asserted claims, but contends the variations "are insignificant and do not affect proper construction[.]" *Id.* It proposes the following construction for the combined Disputed Term 1:

> The disputed phrase (including variations) should be construed to mean: "for each set, two elongated components ('arms') configured to enable a scissoring motion, wherein the arms in each set are directly attached to each other at a scissoring pivot point, and wherein each arm is also directly attached to the work surface platform and the base at a sliding mechanism on one end of the arm, and a pivot point on the opposite end of the arm."

*Id.*

Although some of the cited claims include language similar to Plaintiff's combined Disputed Term 1,[6] at least one of the cited claims includes more significant differences from Plaintiff's combined disputed term. *Compare* doc. 72-1 at 2 (Plaintiff characterizes Claim 29 of the 630 Patent as having "[s]light variations" from the combined disputed term), *with* doc. 15-6 at 33 (Claim 29 of the 630 Patent states: "The desktop workspace of [C]laim 24, wherein the scissoring motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base."); *see also* doc. 86 at 58 (At the hearing, Defendants expressed skepticism that Plaintiff's combined disputed term is appropriate, but discussed them together.).

Plaintiff also seeks construction of six disputed "sub-terms" related to its combined Disputed Term 1. *See* doc. 72-1 at 3-6 (identifying Disputed Terms 1.a. through 1.f.). The Court will address the sub-terms before addressing the combined Disputed Term 1, since resolution of

---

[6] *See, e.g.*, doc. 15-6 at 31 (Claim 1 of the 630 Patent states "two sets of arms that connect at scissoring pivot points creating a scissoring motion . . ."); doc. 15-1 at 33 (Claim 1 of the 773 Patent states "a set of pivot arms that connect at a scissoring pivot point creating a scissoring motion . . .").

several of the sub-terms' constructions streamlines resolution of the combined term.

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 1.a | "a set of pivot arms" | "a pair of pivot arms." | Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |
| 1.b | "two sets of arms" | "two pairs of arms" | Claims 1, 13, 14, 19 & 24, 630 Patent |

Plaintiff argues that "[a] 'set' of pivot arms in the [Patents] means two arms—not one arm, not three or more arms, but two arms[.]"  Doc. 71 at 12.  Defendants counter that no construction is necessary for the term "set", which includes any "plurality of [ ] pivot arms."  Doc. 77 at 9.[7]  Disputed Terms 1.a and 1.b appear in the following context:

> . . . two *sets of arms* that connect at scissoring pivot points creating a scissoring motion when raising and lowering the work surface platform . . .

Doc. 15-6 at 31 (630 Patent, Claim 1) (emphasis added); *see also id.* at 32-33 (similar language appears in Claims 13, 14, 19 & 24 of the 630 Patent).

---

[7] Plaintiff asserts that the term "set" is ambiguous because "it can describe **any** number of elements."  Doc. 71 at 12 (emphasis in original).  It argues that the Court must adopt its construction because, "[s]peaking literally, a set can mean a single element, or it can mean any number of elements greater than one.  And a 'null set' can include zero elements."  *Id.*  A "set" of one arm or zero arms, however, is inconsistent with the claims' use of the plural word "arms."  *See, e.g.*, doc. 15-6 at 31 ("two sets of *arms*" (emphasis added)); doc. 15-1 at 33 ("a set of pivot *arms*" (emphasis added)).

> . . . a *set of pivot arms* that connect at a scissoring pivot point creating a scissoring motion when raising and lowering the work surface platform . . .

Doc. 15-1 at 33 (773 Patent, Claim 1) (emphasis added).

> . . . a *set of pivot arms* including a base pivot arm and a platform pivot arm, the set of pivot arms connecting at a scissoring pivot point creating a scissoring motion when raising and lowering the work surface platform . . .

Doc. 15-5 at 32 (774 Patent) (emphasis added).

Since the plain and ordinary meaning of "set" includes groups of more than two items, adopting the plain and ordinary meaning would resolve the parties' dispute over the terms' scope. *See O2 Micro*, 521 F.3d at 1361. "The slightly more difficult issue is whether the jury's general understanding of the term[ ], without further interpretation by the Court, would comport with [its] use in the claims or differ from the meaning[ ] given to the term[ ] by those skilled in the art." *Keurig*, 2013 WL 1213061, at *6. As discussed, the Court may not "focus[ ] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Phillips*, 415 F.3d at 1321. Accordingly, although the Court must "avoid the danger of reading limitations from the specification into the claim", *Phillips*, 415 F.3d at 1323, "[t]he patentee may demonstrate an intent to deviate from the

ordinary and accustomed meaning of a claim term [through disavowal]

by including in the specification expressions of manifest exclusion or

restriction, representing a clear disavowal of claim scope." *Teleflex, Inc.*

*v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

   Here, the "Detailed Description" portion of each patent expressly

describes the invention as including "sets" composed of "two arms":

> The Desktop Workspace That Adjusts Vertically includes *at least one set of two arms* that connect along their lengths at a pivot point, allowing a scissoring motion, which is part of the method for raising and lowering the work surface platform.

Doc. 15-6 at 29 (630 Patent) (emphasis added); *see also* doc. 15-1 at 31

(773 Patent); doc. 15-5 at 30 (774 Patent).  The Court acknowledges that

disclaimer must meet the high "clear and unmistakable" standard,

*Thorner*, 669 F.3d at 1367; however, "[t]here are certainly cases where

[the Federal Circuit has] found disavowal or disclaimer based on clear

and unmistakable statements by the patentee that limit the claims, such

as 'the present invention includes . . .' or 'the present invention is . . .' or

'all embodiments of the present invention are . . .' " *GE Lighting Sols.,*

*LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) (compiling

cases).   Here, the Patents' specifications similarly assert that the

invention as a whole, "The Desktop Workspace That Adjusts Vertically[,] includes at least one set of two arms." *See, e.g.*, doc. 15-6 at 29.

Defendants note that the patentee used the word "pair" in other portions of the claims, *see, e.g.*, doc. 15-5 at 33 ("pair of springs"), and that the patentee's choice to use "set" instead of "pair" when describing a group of arms indicates that a set of arms can include more than two arms. Doc. 73 at 10. Defendants are correct that under the doctrine of claim differentiation, "the general assumption is that different terms have different meanings[.]" *Id.* (quoting *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1289 (Fed. Cir. 2008)). The Federal Circuit, however, has clarified that "the doctrine of claim differentiation . . . does not override clear statements of scope in the specification and the prosecution history." *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999) (citations omitted). Defendants do not explain why the specification's "clear and unmistakable" limitation regarding a "set of arms" does not constitute disavowal. *See* doc. 73 at 8-

16

10; doc. 77 at 7-9.[8]  Accordingly, the Court **RECOMMENDS**[9] that the

word "set" in Disputed Term 1.a and 1.b be construed to mean "pair."

---

[8] The parties discuss the patentee's "Provisional Patent Application," which includes language similar to the "at least one set of two arms" language from the Patents' "Detailed Description" portion:

> The present invention includes at least one set of two arms that connect along their lengths at a pivot point, allowing a scissoring motion, which is part of the method for raising and lowering the work surface.

Doc. 78-2 at 10.  Plaintiff argues that the provisional application's reference to "two arms" weighs in favor of is proposed construction, since the Patents "incorporate by reference the entirety of the provisional [application.]"  Doc. 86 at 39; *see also* doc. 78 at 9.  At the hearing, Defendants countered that "[t]hese are simply embodiments. They don't create lexicography or disavowal.  And none of that language actually followed through to the nonprovisional applications[.]"  Doc. 86 at 63.

Regardless of whether the language in the provisional application indicates that the Court should adopt Plaintiff's proposed construction, the actual specifications include "Detailed Descriptions" with clear statements that the invention includes "at least one set of two arms."  *See, e.g.*, doc. 15-6 at 29.  To the extent Defendants contend that the "at least one set of two arms" language in the Detailed Description sections "simply [describes] embodiments", doc. 86 at 63, that argument fails.  The Detailed Description makes clear that the inventions itself, the "Desktop Workspace That Adjusts Vertically", includes "at least one set of two arms." *See, e.g.*, doc. 15-6 at 29.

[9] *See Shuffle Master v. Vendingdata Corp.*, 2007 WL 674290, at *2 (D. Nev. Feb. 28, 2007) (citing 28 U.S.C. § 636) ("[O]nly a district court and not a Magistrate Judge may make a final determination as to the proper construction of the claims at issue in any patent case.").

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 1.c | "arm pivot point" | "one of the base, platform, scissoring, or sliding[10] pivot points on an arm." | Claims 1 & 11, 773 Patent<br><br>Claims 1 & 12, 774 Patent[11] |
| 1.d | "scissoring pivot point" | "the pivot point connecting two arms together, located on the arms between each arm's sliding mechanism and base or platform pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |
| 1.e | "base pivot point" | "an arm pivot point connecting an arm to the base." | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |
| 1.f | "platform pivot point" | "an arm pivot point connecting an arm to the platform" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |

Plaintiff argues that the Court should construe Disputed Term 1.c, "arm pivot point", as a category of pivot points encompassing (1) scissoring pivot points, (2) base pivot points, (3) platform pivot points, and (4) sliding pivot points. *See* doc. 71 at 14 ("Any of these [four] types of pivot points can be referred to more generically as an 'arm pivot point.'"); *see also* doc. 86 at 51 (adding "sliding pivot point[s]" as a fourth kind of pivot point encompassed by "arm pivot points"). Plaintiff also

---

[10]  At the hearing, Plaintiff added "sliding pivot point" as a kind of pivot point encompassed by the purported broad category of "arm pivot point." *See* doc. 86 at 51.

[11]  Plaintiff's Second Amended Proposed Claim Constructions state that Disputed Term 1.c appears in Claim 1 of the 773 and 774 Patent, doc. 72-1 at 4; however, it subsequently recognized that the term appears in Claim 11 of the 773 Patent and Claim 12 of the 774 Patent.  Doc. 78 at 10 n.5.

proposes individual constructions for scissoring, base, and platform pivot points. *See* doc. 72-1 at 5-6. Although Defendants agree that scissoring, base, and platform pivot points are "arm pivot points" in the context of the Patents, they argue that the term is not limited to those kinds of pivot points. *See* doc. 77 at 10. They also dispute Plaintiff's individual proposed constructions for scissoring, base, and platform pivot points. Doc. 73 at 11-13. They argue that the Court should construe all four disputed terms as having their "plain meaning." *Id.* The Court will address the parties' dispute over the broad "arm pivot point" category before turning to the scissoring, base, platform, and sliding pivot points.

Disputed Term 1.c, "arm pivot point", appears in the context of the 773 Patent as follows:

> A desktop workspace that adjusts vertically, comprising:
>
> . . .
>
> A gas spring directly attached to one of the set of pivot arms through an *arm pivot point* to assist in elevation of the work surface platform.

Doc. 15-1 at 33 (emphasis added); *see also* doc. 15-5 at 32 (774 Patent). Construing the term "arm pivot point" as having its plain and ordinary meaning would resolve the parties' dispute over its scope, since the plain

and ordinary meaning of "arm pivot point" is not limited to the finite list of "pivot points" in Plaintiff's proposed construction. The Court, however, must determine whether "the jury's general understanding of the term[ ], without further interpretation by the Court, would comport with [its] use in the claims or differ from the meaning[ ] given to the term[ ] by those skilled in the art." *Keurig*, 2013 WL 1213061, at *6. For the following reasons, the Court **RECOMMENDS** that Disputed Term 1.c be given its plain and ordinary meaning.

The Court agrees with Defendants that at least one embodiment described in the 773 Patent's specification contradicts Plaintiff's proposed construction. *See* doc. 77 at 11. The following images are Figures 4 and 5 of the 773 Patent:



Doc. 15-1 at 15, 17. In its discussion of Figures 4 and 5, the 773 Patent's specification provides:

> Examples can utilize element 36 [e.g., a gas spring] or similar element in a different location; for example, the element [e.g., the gas spring 36] could attach directly to arms 16 or 18, *or* to one of the pivot points [e.g., pivot points 24, 26, or 28], instead of to element 34 [e.g., a crossbeam].

Doc. 77 at 11 (quoting doc. 15-1 at 32) (emphasis and alterations added by Defendants).  This description acknowledges that the gas spring can be attached to "one of the pivot points", or, alternatively, "directly to arms 16 or 18[.]"  *Id.*  Accordingly, the specification articulates an example of an embodiment in which the gas spring—which, according to the claim, directly attache[s] to one of the set of pivot arms through an arm pivot point"—attaches to an arm pivot point that is distinct from the scissoring, base, platform, and sliding pivot points, *i.e.*, an "arm pivot point" located somewhere else on arms 16 or 18.  *See id*; *see also Munchkin, Inc. v. Luv N' Care, Ltd.*, 2014 WL 4543161, at *3 (C.D. Cal. Sept. 12, 2014) (rejecting proposed construction which is "clearly contradict[ed]" by an embodiment in the specification).

Plaintiff counters Defendants' argument regarding Figures 4 and 5 by noting that the paragraph quoted above includes the following amendment made during the prosecution process: "*In FIG. 4B, elements 36 attach directly to arms 18 through **arm pivot points** 31, instead of to*

*element 34.*"  Doc. 78 at 11 (quoting doc. 15-1 at 32) (emphasis added by

Plaintiff).  Plaintiff argues:

> Prior to this amendment to the '773 and '774 patents, the only pivot points ever referenced anywhere in the file history were the scissoring pivot point, the base pivot point, and the platform pivot point.  Thus, when the quoted excerpt of the specification refers to "one of ***the*** pivot points" or "arm pivot points," it necessarily was referring to the only pivot points taught by the specification: the base pivot points, the platform pivot points, or the scissoring pivot points.

*Id.* at 11 (emphasis added by Plaintiff).  This argument does not address

the embodiment identified by Defendants indicating that the gas spring

can attach to one of the sets of pivot arms "through an arm pivot point",

*see, e.g.*, doc. 15-1 at 33, at some location on an arm other than the pivot

points listed in Plaintiff's proposed construction.  Accordingly, the Court

**RECOMMENDS** that Disputed Term 1.c be construed to have its plain

and ordinary meaning.

Disputed Term 1.d., "scissoring pivot point", appears in the Patents

as follows:

> . . . two sets of arms that connect at *scissoring pivot points* creating a scissoring motion when raising and lowering the work surface platform to various heights . . .

Doc. 15-6 at 31-33 (630 Patent, Claims 1, 13, 14, 19 & 24) (emphasis

added).

> . . . a set of pivot arms that connect at a *scissoring pivot point* creating a scissoring motion when raising and lowering the work surface platform to various heights . . .

Doc. 15-1 at 33 (773 Patent, Claim 1) (emphasis added).

> . . . a set of pivot arms including a base pivot arm and a platform pivot arm, the set of pivot arms connecting at a *scissoring pivot point* creating a scissoring motion when raising and lowering the work surface platform to various heights . . .

Doc. 15-5 at 32 (774 Patent, Claim 1) (emphasis added). As discussed above, Plaintiff argues that Disputed Term 1.d should be construed to mean "the pivot point [1] connecting two arms together, [2] located on the arms [3] between each arm's sliding mechanism and base or platform pivot point." Doc. 71 at 13 (numbering added).

The Court declines to adopt the first portion of Plaintiff's proposed construction, "connecting two arms together." Doc. 71 at 13. The Federal Circuit has explained that "[t]he *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction . . . is not an obligatory exercise in redundancy." *U.S. Surgical Corp.*, 103 F.3d at 1568. Here, if the Court substituted

23

Plaintiff's proposed construction in place of "scissoring pivot point" in, e.g., Claim 1 of the 773 Patent, the claim would read, in part:

> . . . a [pair] of pivot arms[12] that *connect* at [a pivot point *connecting two* arms together].

Doc. 15-1 at 33 (emphasis added). The Court declines to recommend that the first portion of Plaintiff's proposed construction be adopted given the redundancy created by the words "connecting" and "two." *See* doc. 15-6 at 31-33; doc. 15-5 at 32 (inserting this phrase in the relevant claims in the 630 and 774 Patents would result in a similar redundancy); *see also E-Contact Techs., LLC v. Apple, Inc.*, 2013 WL 12136607, at *4 (E.D. Tex. Apr. 16, 2013) ("[I]ncluding Defendant's requested language would be redundant. . . . Construing the term further is unnecessary.").

The Court also rejects the second portion of Plaintiff's proposed construction, "located on the arms." *See* doc. 71 at 13. As discussed, the relevant claims provide that the set of pivot arms, construed as a pair of pivot arms, "connect at a scissoring pivot point[.]" *See, e.g.*, doc. 15-1 at 33; *see also, e.g.*, doc. 15-6 at 31; doc. 15-5 at 32. Plaintiff does not explain how adding "located on the arms" would not be redundant given the

---

[12]  As discussed above, the Court has recommended that "set of pivot arms" be construed to mean "pair of pivot arms."

claims' statement that the arms in a set connect at the scissoring pivot point. Accordingly, the Court should not construe Disputed Term 1.d to include "located on the arms."

The remaining dispute regarding Disputed Term 1.d centers on the location of the "scissoring pivot point" on the arms. In the section of its briefing regarding Disputed Term 1.d, Plaintiff asks the Court to construe the term to limit the scissoring pivot point's location to "between each arm's sliding mechanism and base or platform pivot point." Doc. 72-1 at 5. Since the proper construction of this term requires the Court to evaluate the Patents' use of the term "scissoring", the Court finds the parties' argument regarding the combined Disputed Term 1 relevant. *See, e.g.*, doc. 71 at 7-12 (Plaintiff asserts that the combined Disputed Term 1 relates to the "scissoring" function used for raising and lowering the workspace). In its discussion of Disputed Term 1, Plaintiff argues that "[t]he key to the scissoring action is that the height adjustment components—the 'arms'—are connected together to form 'X's' rather than 'V's'." *Id.* at 7. Plaintiff reproduces Figure 1 from the 630 Patent to illustrate the "X" configuration:



'630 patent, Figure 1

*Id.* (citing doc. 15-6 at 4) (highlighting added by Plaintiff). Plaintiff's position that the arms must form an "X" shape to achieve the "scissoring" motion is consistent with its argument regarding Disputed Term 1.d. *See* doc. 72-1 at 5 (asking the Court to adopt a construction in which the "scissoring pivot point" is located "between each arm's sliding mechanism and base or platform pivot point.").

Defendants counter that the Court should construe Disputed Term 1.d as having its plain meaning: "a pivot point that creates a scissoring motion." Doc. 73 at 12; *see also* doc. 77 at 14 ("If the patentee wished to limit the structure or location of the 'scissoring pivot point,' he could have done so with surrounding claim language (but did not)."). For the following reasons, the Court agrees with the portion of Plaintiff's proposed construction regarding the location of the scissoring pivot point, and the "X" structure of the arms required to achieve the "scissoring" motion specified in the Patents.

As discussed, the POSITA "is deemed to read the claim term . . . in the context of the particular claim in which the disputed term appears[.]" *Phillips*, 415 F.3d at 1313. One of the relevant claims including the term "scissoring pivot point" states:

> . . . a set of pivot arms including a base pivot arm and a platform pivot arm, the set of pivot arms connecting at a scissoring pivot point creating a scissoring motion when raising and lowering the work surface platform to various heights;
>
> a base pivot point fixed relative to the base and connecting the base and the base pivot arm;
>
> a platform pivot point fixed relative to the work surface platform and connecting the work surface platform and the platform pivot arm;
>
> a first sliding mechanism on an end of the platform pivot arm between the end of the platform pivot arm and the base; and
>
> a second sliding mechanism on an end of the platform pivot arm between the end of the base pivot arm and the work surface platform[.]

Doc. 15-5 at 32 (Claim 1 of the 774 Patent). Based on the quoted portion of the claim, as well as the Court's previously-discussed claim constructions, the Court discerns the following requirements of the "height adjustment mechanism" which utilizes a "scissoring motion":

(1) The "set of pivot arms" consists of two arms.

(2) One of those arms, the "base pivot arm" connects to the base via a fixed "base pivot point", and connects to the work surface platform via a sliding mechanism.

(3) The second arm, the "platform pivot arm", connects to the work surface platform via a "platform pivot point" and connects to the base via a sliding mechanism.

(4) Each sliding mechanism is located at the "end" of each arm.

Given the requirement that the two arms be connected to the base and surface at four separate points (a pivot point and sliding mechanism on both the base and the surface), the scissoring motion could *only* be achieved through an "X" configuration:



*See, e.g.*, doc. 15-5 at 12 (774 Patent).

Defendants assert that "[a]n X configuration is discussed nowhere in the [P]atent[s]. . . . X is not a structure that was used to limit the invention." Doc. 86 at 61-62. Defendants, however, do not explain how the "scissoring" motion could be achieved by a configuration other than the "X" given the four requirements above. The only other configuration the Court can envision which would allow the two arms to connect to the base and surface at four points would appear something like the following fanciful figure:



The green scissoring pivot point would have to be located above the work surface platform given the claims' requirement that the base is "configured to sit on an existing platform." Doc. 15-5 at 32. Further, the blue sliding mechanism could only be located on the base, and not the

work surface platform given the requirement that the mechanism is located "on an end" of an arm.  *Id.*  Given the location of the arms' remaining points of contact, the orange pivot points, the workspace would not adjust vertically. *See also* doc. 86 at 39 (Plaintiff notes that it is unclear how a "V" scissoring motion would function in the context of the Patents).[13]  Accordingly, the Court agrees with Plaintiff's view that the "scissoring pivot point" allows for a "scissoring motion" with arms in an "X" configuration.  Since the Court's construction of Disputed Term 1.c is relevant to the construction of Disputed Term 1, the Court will state its recommended construction of Disputed Term 1.c in its discussion of Disputed Term 1 below.

---

[13]  The Court recognizes that the Patents' precise descriptions of the pivot points and sliding mechanisms involved in the height adjustment mechanism differ across the Patents.  *Compare, e.g.*, doc. 15-5 at 32 (Claim 1 of the 774 Patent, quoted above), *with* doc. 15-1 at 33 (Claim 1 of the 773 Patent states "a sliding mechanism on an end of an arm of the set of pivot arms . . .").  Plaintiff contends that the differences in the Patents "[d]o not affect the Court's construction of any of the disputed terms."  Doc. 71 at 6 n.3.  Although Defendants express concern regarding this approach, *see, e.g.*, doc. 73 at 9; *see also* doc. 77 at 5 ("Even if it were proper for Plaintiff to lump together several terms, which vary in words used . . ."), they do not provide robust argument on why the Court should not construe patent terms consistently across the patents. *See also* doc. 71 at 5 (citing *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.")); doc. 86 at 58 (at the hearing, Defendants' counsel stated "We have a little bit of heartburn about construing them together, but let's talk about them together to get some clarity today.").  Accordingly, the Court construes the term "scissoring pivot point" consistently across the three Patents.

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 1.e | "base pivot point" | "an arm pivot point connecting an arm to the base." | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |
| 1.f | "platform pivot point" | "an arm pivot point connecting an arm to the platform." | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |

The parties primarily discuss the use of Disputed Terms 1.e and 1.f in the 773 Patent. *See, e.g.*, doc. 73 at 12-13; doc. 77 at 15. Claim 1 of the 773 Patent provides, in relevant part:

> . . . a height adjustment mechanism . . . including:
>
> . . .
>
> a base pivot point fixed relative to the base and connecting the base and the set of pivot arms;
>
> a platform pivot point fixed relative to the work surface platform and connecting the work surface platform and the set of pivot arms . . .

Doc. 15-1 at 33. Plaintiff's proposed constructions include two distinct components: (1) the base and platform pivot points are encompassed by the category "arm pivot points," and (2) the base and platform pivot points connect arms to the base and platform, respectively. *See* doc. 72-1 at 5-6. For the following reasons, because the Court can discern no actual dispute over the scope of Disputed Terms 1.e and 1.f based on the

31

parties' discussion of those two components, the Court **RECOMMENDS** that the terms be construed to have their plain and ordinary meaning. *See ClearPlay, Inc. v. DISH Network, LLC*, 2022 WL 604856, at *1 (D. Utah Mar. 1, 2022) (citing *O2 Micro*, 521 F.3d at 1362) ("[T]here is no requirement to construe a claim term when there is no actual dispute about its meaning.").

As discussed above, although Defendants disagree with Plaintiff's proposed construction of "arm pivot point" as a category consisting of a finite list of pivot points, Defendants do not dispute that "base pivot points" and "platform pivot points" are "arm pivot points." *See* doc. 77 at 10 (" . . . Defendants acknowledge that an 'arm pivot point' may comprise one of these . . . types of pivot points[, including base or platform pivot points].").  Further, the Court cannot discern an actual dispute as to the second component of Plaintiff's proposed construction: the base and platform pivot points connecting arms to the base and platform.  On this point, Defendants assert:

> [Plaintiff's] proposal . . . [is] inconsistent with the remaining claim language.  For example, in the '773 Patent, the "base pivot point" is required only to be the point at which there is a connection of "the base *and the set of pivot arms*," not "connecting *an arm*" as [Plaintiff] proposes.

Doc. 73 at 12 (quoting doc. 15-1 at 33) (emphasis added by Defendants). The Court is unconvinced by Defendants' distinction between connecting "an arm" to the platform or base and connecting "the set of pivot arms" since the set of pivot arms is comprised of pivot arms. *See, e.g.*, doc. 15-1 at 33.[14]   Since the Court can discern no actual dispute as to Disputed Terms 1.e and 1.f, the Court **RECOMMENDS** that they be construed to have their plain and ordinary meaning.

---

[14]  In its response brief, Defendants contend that

> [T]he claim does not recite connecting an arm to the base or the platform.  Instead, the claims themselves recite that the 'base pivot point' is fixed "*relative to*" the base, and that the "*platform pivot point*" is fixed "*relative to*" the work surface platform. . . . there has been no lexicography or disavowal requiring connection of the arm to the base or platform as Plaintiff proposes.  Instead, the specification demonstrates base and platform pivot points that are not connected to an arm, but rather "fixed relative to" the base and platform via a bracket or other member of the base.

Doc. 77 at 15-16 (emphasis in original).  The Court disagrees, since the claims expressly state that the base and platform pivot points "connect[ ] the [base and platform] and the set of pivot arms", and since the set of pivot arms consists of pivot arms.  *See* doc. 15-1 at 33.

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 1 | "a set[s] of [pivot] arms that connect at a scissoring point[s] creating a scissoring motion" | The disputed phrase (including variations) should be construed to mean: "for each set, two elongated components ('arms') configured to enable a scissoring motion, wherein the arms in each set are directly attached to each other at a scissoring pivot point, and wherein each arm is also directly attached to the work surface platform and the base at a sliding mechanism on one end of the arm, and a pivot point on the opposite end of the arm." | Claims 1, 13, 14, 19, 24, and 29, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |

The Court will address Plaintiff's proposed construction of Disputed

Term 1 in its component parts:

[1] The set of pivot arms consists of two pivot arms.

[2] The pivot arms are "elongated components."

[3] The pivot arms are "configured to enable a scissoring motion."  The scissoring motion includes:

> [A] the arms in each set directly attached to each other at a scissoring pivot point.

> [B] the arms in each set directly attached to the platform and base via a sliding mechanism and pivot point on opposite ends of each arm.

*See* doc. 72-1 at 2; *see also, e.g.*, doc. 71 at 7-12 (Plaintiff does not clearly delineate between each component of Disputed Term 1 in its briefing.).[15]

The Court has recommended that "set of pivot arms" be construed to mean "pair of pivot arms" in its discussion of Disputed Term 1.a and 1.b.  Given that conclusion, it is **RECOMMENDED** that the Court adopt the first component of Plaintiff's proposed construction of Disputed Term 1, "two pivot arms" or "a pair of pivot arms."[16]

In support of its argument that "arm" should be construed to mean "elongated component", Plaintiff tersely states:

> Not just any component can be an arm.  Defining arm as "an elongated component" will minimize the risk that the jury will misconstrue a component as an arm when it is not.  An arm in the context of the patent is not just any component, it is an elongated component.

---

[15]  Plaintiff groups Claim 29 of the 630 Patent in its discussion of Disputed Term 1. *See, e.g.*, doc. 72-1 at 2.  As discussed above, although that claim shares some phrases with Plaintiff's characterization of Disputed Term 1, it appears to include several significant differences.  *See* doc. 15-6 at 33.  The parties, however, do not specifically discuss whether these differences alter the Court's claim construction analysis as to the combined Disputed Term 1.  To the extent the Court has recommended a construction for a term, the Court **RECOMMENDS** that the same construction be adopted as to Claim 29 of the 630 Patent.

[16]  Plaintiff proposes that a "set of pivot arms" consists of "two" arms in its construction of Disputed Term 1, doc. 72-1 at 2; however, it proposes that a "set of pivot arms" is a "pair of pivot arms" in its discussion of Disputed Terms 1.a and 1.b. *Id.* at 3-4.  The parties do not discuss, and the Court cannot discern, a distinction between a "pair of arms" and "two arms."

Doc. 71 at 11.  Absent any indication that the jury will "misconstrue" the simple and commonly-understood term "arms" the Court **RECOMMENDS** that it be given its plain and ordinary meaning.

The third component of Plaintiff's proposed construction relates to the "scissoring motion." *See* doc. 72-1 at 2.  To the extent Plaintiff asks the Court to add the language "*configured to enable* a scissoring motion", *id.* (emphasis added), the Court should reject that addition.  The claim already provides that the set of pivot arms "create[es] a scissoring motion", *see, e.g.*, doc. 15-1 at 33, and Plaintiff does not explain why the Court should adopt the proposed "configured to enable" language.

To the extent Plaintiff asks the Court to add the phrase "directly attached" to describe the connection between the arms at the scissoring pivot point, the Court should reject that proposal.  Plaintiff's briefs are silent as to why "*connect* at a scissoring pivot point", *see, e.g.*, doc. 15-1 at 33 (emphasis added), should be construed to include the phrase "directly attached." *See* doc. 71 at 7-12; doc. 78 at 6-9.  Further, as discussed more fully in the Court's analysis of Disputed Term 2 below, the patentee used the phrases "connecting" and "*directly* attached" in different portions of the claims for different purposes. *See, e.g.*, doc. 15-5 at 32 (774 Patent,

Claim 1).   The Court should not include "directly attached" in its construction of Disputed Term 1.

The final component of Plaintiff's proposed construction of Disputed Term 1 describing the "scissoring motions" is as follows:

> . . . each arm is also directly attached to the work surface platform and the base at a sliding mechanism on one end of the arm, and a pivot point on the opposite end of the arm . . .

Doc. 72-1 at 2.  The Court should decline to adopt Plaintiff's proposed "directly attached" language absent explicit argument from Plaintiff regarding the phrase, and given the relevant claims' statement that the base and platform pivot points simply "connect[ ]" the base and platform to the set of arms.  *See, e.g.*, doc. 15-1 at 33 (773 Patent).  The remainder of this component, however, is consistent with the Court's recommended construction of Disputed Term 1.d, the "scissoring pivot point" which "creat[es] a scissoring motion when raising and lowering [the platform]", as an "X" configuration with a pivot point and sliding mechanism on opposite sides of each arm.  *Id.*  Given the Court's recommendations regarding the various "sub-terms" under Disputed Term 1, and its discussion of the combined Disputed Term 1 itself, the Court **RECOMMENDS** that Disputed Term 1 be construed as follows:

. . . a pair of pivot arms that connect at a scissoring pivot point creating a scissoring motion, wherein the scissoring pivot point is located on the arms between each arm's sliding mechanism and base or platform pivot point . . .

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 2 | "an element that connects the two sets of arms to one another" | "a structural component that provides stability to the desktop workspace and that attaches directly to one arm of the first set of arms and attaches directly to one arm of the second set of arms." "Directly" means without intermediate components." | Claims 1, 13, 14 & 19, 630 Patent |

Plaintiff's proposed construction of Term 2, which it refers to as the "crossbeam" element, doc. 71 at 17, includes two distinct constructions: (1) the crossbeam is a structural component providing stability to the invention, and (2) the crossbeam attaches "directly", *i.e.*, without "intermediate components", to two sets of arms. *See* doc. 72-1 at 6-7. The Court will address these two proposed constructions in turn.

Plaintiff argues that its "structural" construction is appropriate because "[t]he specification . . . explains that the sole purpose of a crossbeam is to provide more rigidity and stability." Doc. 71 at 17. Plaintiff bases its contention on two quotations from the 630 Patents' "Detailed Description" section, both of which reference, *inter alia*, Figure 2C:

38



FIG. 2C

Doc. 15-6 at 10. The two quotations are as follows:

- "Height adjustment mechanism 14 also includes components that make the disclosure more rigid, such as cross beam supports labeled as element 68 in [Figures] 1C and 2C." *Id.* at 30.

- "As can be seen in [Figures] 2, 2B, 2C, 4, 5B and 5C pivoting arms, are attached to a cross beam 34. Cross beam 34 assists in stabilizing the invention and assist[s] all elements of the height adjustment mechanism to move in concert when a force is applied." *Id.*

*See also* doc. 71 at 17 (Plaintiff quotes the two portions of Patent 630, in part). Defendants counter that the Court should not read a statement regarding the crossbeam's "intended use" from the specification into the claim. Doc. 73 at 13-14; doc. 77 at 17.

39

Adopting the plain and ordinary meaning of the word "element" would resolve the parties' dispute over the term's scope, since the plain and ordinary meaning is not limited to a "structural component" which "provides stability." Doc. 72-1 at 6-7. "The slightly more difficult issue is whether the jury's general understanding of the term[ ], without further interpretation by the Court, would comport with their use in the claims or differ from the meanings given to the terms by those skilled in the art." *Keurig*, 2013 WL 1213061, at *6.

In evaluating Plaintiff's argument, the Court is mindful of the Federal Circuit's admonition that courts

> must interpret the claims in light of the specification, [cit.] yet avoid impermissibly importing limitations from the specification. [Cit.] That balance turns on how the specification characterizes the claimed invention. [Cit.] In this respect, this court looks to whether the specification refers to a limitation only as a part of less than all possible embodiments or whether the specification read as a whole suggests that the very character of the invention requires the limitation be a part of every embodiment. For example, it is impermissible to read the one and only disclosed embodiment into a claim without other indicia that the patentee so intended to limit the invention. [Cit.] On the other hand, where the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims.

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) (citations omitted).[17]   Contrary to Plaintiff's contention, the specification does not indicate that the "*sole purpose* of a crossbeam is to provide more rigidity and stability."  Doc. 71 at 17 (emphasis added).  The page of the 630 Patent cited in Plaintiff's brief also describes various embodiments in which the crossbeam assists the elements of the height adjustment mechanism "to move in concert", and serves as a surface upon which another component applies force, causing the desk to raise and lower.  *See* doc. 15-6 at 30.   Further, the portions of the 630 Patent's Detailed Description cited by Plaintiff describe *specific embodiments* as including a crossbeam which provides stability or rigidity.[18]   The Court should decline to read this proposed limitation into the claims.

---

[17]  *See also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003) ("An intended use or purpose usually will not limit the scope of the claim because such statements usually do no more than define a context in which the invention operates.  But . . . preamble language will limit the claim if it recites not merely a context in which the invention may be used, but the essence of the invention without which performance of the recited steps is nothing but an academic exercise." (citations omitted)).

[18]  *See* doc. 15-6 at 30 ("Height adjustment mechanism 14 also includes components that make the disclosure more rigid, such as cross beam supports labeled as element 68 in [Figures] 1C and 2C."); *id.* ("As can be seen in [Figures] 2, 2B, 2C, 4, 5B and 5C pivoting arms, are attached to a cross beam 34.  Cross beam 34 assists in stabilizing the invention and assists all elements of the height adjustment mechanism to move in concert when a force is applied." (emphasis added)).

As discussed, Plaintiff also contends that "connects" should be construed to mean "that the connection is direct and that no intermediate components exist[.]"  Doc. 71 at 17.  Defendants counter that a POSITA would understand the "plain and ordinary meaning" of the term, "which allows direct or indirect connections[.]"  Doc. 77 at 19.  "In this instance, a finding that the term at issue should retain its plain and ordinary meaning alone would not resolve the underlying dispute between the parties," since "connects" could mean *directly* connects, or *directly or indirectly* connects.  *See Rasmussen Instruments, LLC v. DePuy Synthes Prod., Inc.*, 568 F. Supp. 3d 117, 138 (D. Mass. 2021) (construing the term "coupling", as "connecting directly or indirectly", when the parties dispute whether the word is limited to "direct" connections).  The Court must therefore determine the proper construction of the term.  *See O2 Micro Int'l*, 521 F.3d at 1362.

Plaintiff bases its argument on Figure 10 in the 630 Patent:



FIG. 10

Doc. 71 at 17 (citing doc. 15-6 at 25). Plaintiff cites the following description of Figure 10 in the 630 Patent's "Detailed Description" section: "Bracket 52 connects to channel plate component 54, which connects to bracket 56, which connect to slider 58, which connect to keyboard platform 60." *Id.* (quoting doc. 15-6 at 31)). Plaintiff argues that "connects" means "attached without intermediate components" because, in its view, "[b]racket 52 does ***not*** connect to bracket 56", and "[k]eyboard platform 60 is not connected to items 52, 54, or 56. It is connected ***only*** to bracket 58 because there are no intermediate components between them." *Id.* at 18 (emphasis in original).

Plaintiff's argument does not establish that the POSITA would understand the word "connects" to mean that elements are "directly connected" with "no intermediate components." Although the description

of Figure 10 refers to the directly touching components as "connected", this does not foreclose the possibility that a "connection" between elements could include "intermediate" components. *See, e.g.*, *Sennco Sols., Inc. v. Mobile Techs., Inc.*, 2021 WL 6066664, at *3 (D. Or. July 2, 2021) (citing *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998)) ("It is improper to import, or 'read in' to a claim, a limitation from the specification's general discussion, embodiments, and examples.").

Further, the Patents use variations of the word "connect" to describe elements attached via multiple "intermediate" components. Consider the following language from Claim 1 of the 630 Patent:

> A desktop workspace that adjusts vertically, comprising . . . a height adjustment mechanism connecting the work surface platform and the base.

Doc. 15-5 at 32. Figure 1B of the 630 Patent is a helpful illustration of the "height adjustment mechanism" (14) which "connect[s]" the work surface platform and the base:



FIG. 1B

Doc. 15-6 at 5.  Claim 1 states that the "height adjustment mechanism" (14) consists of multiple components including two sets of arms (16 & 18) connected at a scissoring point (28), base pivot points, (26), platform pivot points (24), and a sliding mechanism (20).  Doc. 15-6 at 31; *see also id.* at 29 (defining and describing the labeled components in Figure 1B).  The Court is unconvinced by Plaintiff's narrow construction of "connecting" given the numerous "intermediate" components which "connect" the work surface platform (10) to the base (12) in the embodiment depicted in Figure 1B.  *Id.* at 31; *see also Munchkin, Inc.*, 2014 WL 4543161, at *3 (rejecting proposed construction which is "clearly contradict[ed]" by an embodiment in the specification).

Further, the Court agrees with Defendants that portions of Claims 1 and 12 of the 630 Patent describing the "crossbeam" itself indicate that

Plaintiff's proposed construction would be inconsistent with a POSITA's understanding of the word "connecting." *See* doc. 77 at 18-19.   As discussed, Claim 1 of the 630 Patent references "an element that connects the two sets of arms to one another."  Doc. 15-6 at 31.  Claim 12 states the following:

> The desktop workspace of [C]laim 1, wherein the element that connects the two sets of arms *includes* a crossbeam.

Doc. 15-6 at 32 (emphasis added).  Claim 12's use of the word "includes" suggests that the element connecting the sets of arms could include additional, "intermediate" components.

Finally, Defendants correctly point out that "if the patentee intended the connection to be only a direct connection, he would have used the word 'directly,' as he did elsewhere in the [Patents]."  Doc. 73 at 14 (citing doc. 15-1 at 34 (the 773 Patent includes a claim with the language "wherein the gas spring is directly attached")); *see also Rasmussen*, 568 F. Supp. 3d at 138 (construing the term "coupling" as "connecting directly or indirectly" when other claims in the patent distinguish between indirect and direct coupling).  Accordingly, the Court should construe the term "connects" in Disputed Term 2 to mean "directly

or indirectly connects." *See O2 Micro Int'l*, 521 F.3d at 1362.[19]

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 3 | The phrase "directly attached" in the following language: "a gas spring directly attached to one of the set of pivot arms through an arm pivot point" | "directly attached" means the gas spring is attached through an arm pivot point without an intermediate component.[20] | Claims 1 & 4, 773 Patent<br><br>Claim 1, 774 Patent |

[19]   Plaintiff cites *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed. Cir. 1996), which concluded that construing the term "connected to" as "includ[ing] elements which are connected directly or indirectly" would render the term "meaninglessly empty." Doc. 78 at 13-14. The court, however, specified that its conclusion was based on the specific patent at issue, and "acknowledge[d] that the term 'connected to' could, in other contexts, be broadly construed." *Ethicon*, 93 F.3d at 1578. Here, the context of the Patents does not support Plaintiff's proposed narrow construction, and other courts have found that a broader construction of terms like "coupled", "joined", and "connected" is appropriate if such a construction is supported by the intrinsic and extrinsic record. *See, e.g., Rasmussen*, 568 F. Supp. 3d at 138 (compiling cases).

[20]   Plaintiff's phrasing of its proposed constructions for Term 3 is inconsistent throughout its briefing. In its list of proposed claim constructions, Plaintiff proposes that "directly attached" in this claim should be construed to mean "that the gas spring is attached to an arm without an intermediate component." Doc. 72-1 at 7. This proposed construction contradicts the text of the claim, which requires that the gas spring be "directly attached" to one of the sets of pivot arms through an "arm pivot point", which seems to be an intermediate component. *See id.* Plaintiff's phrasing of its proposed construction in its claim construction brief is more coherent:

- "directly attached" means the gas spring is attached [to one of the sets of pivot arms] through an arm pivot point without an intermediate component.

Doc. 71 at 18. The Court presumes that Plaintiff advocates for the latter construction of Term 3, *i.e.*, that the phrase "directly attached" in the above claim means that a gas spring is attached to one of the sets of pivot arms through an arm pivot point, and that no other components are involved in the attachment other than the arm pivot point. *See also id.* at 18-19 (Plaintiff asserts that " '[d]irectly attached' means that the gas spring component itself must attach to the arm pivot point, as opposed to attaching to some intermediate component that attaches to the arm pivot point.").

The parties' dispute over Disputed Term 3 centers on whether the "gas spring" referenced in Claim 1 of the 773 and 774 Patents may be attached to the set of pivot arms with "intermediate component[s]", given the claims' requirement that the gas spring be "directly attached" to the set of pivot arms via an "arm pivot point."[21]  Plaintiff's brief includes a helpful image of a relevant embodiment of the invention from the 733 Patent:



**'773 patent, Figure 4B**

---

[21] *Compare, e.g.*, doc. 71 at 20 ("the specification makes clear that when the gas spring (force component) is 'directly attached' to an arm through an arm pivot point, there is no intermediate component between them."), *with* doc. 77 at 20 ("Here, the plain meaning of the term 'direct' as modifying attachment '*to one of the set of pivot arms*' is not completely without an intermediate component where that intermediate component effects or assists the connection or attachment." (emphasis in original)).

48

Doc. 71 at 20 (green color added by Plaintiff to highlight gas springs (36));
*see also* doc. 15-1 at 16 (original Figure 4B in the 733 Patent without
green color).

Plaintiff contends that the claims' use of the phrase "directly
attached" indicates that the gas spring must attach to the set of pivot
arms through the arm pivot point, and that intermediate components
other than the arm pivot point do not assist in the attachment. *See* doc.
71 at 18-19. Defendants counter that "the claims simply describe that a
gas spring is attached directly through an arm pivot point, which does
not exclude intermediate attachment components that effect or assist the
direct attachment." Doc. 77 at 21-22.

The Court agrees with Plaintiff that the plain language of the
claims indicate that the "attachment" between the gas spring and set of
pivot arms is achieved through the arm pivot point alone:

> a gas spring *directly attached* to one of the set of pivot arms
> *though an arm pivot point*.

*See, e.g.*, doc. 15-1 at 33 (emphasis added).

The prosecution history of the 773 Patent also indicates that
Plaintiff's view of the term's scope is more persuasive. The 773 Patent's
application initially recited that the gas spring and arm are simply

"attached."  *See* doc. 78-6 at 2.   A Patent Office Examiner rejected Plaintiff's application as to Claims 1 and 13.  Doc. 78-7 at 3, 12.  The Examiner explained that the application was not sufficiently distinct from prior art references, including a patent referred to as "Shimada." *Id.* at 12.  Several figures in Shimada show the gas spring (16) connected to a "roller (moving member)" (7) through a "support arm" (17):



Doc. 78-8 at 6 (yellow circle highlight added); *see also id.* at 10 (defining the labeled components in the Shimada Figures).

After the Examiner made her determination, the inventor's attorney participated in an interview with the Examiner.  Doc. 78-10 at 3 (Interview Summary).   The Interview Summary notes that the following discussion occurred regarding the 773 Patent application:

> Shimada . . . does not teach a gas spring attached *directly* to one of the set of pivot arms . . . via an arm pivot point[.] . . . [In the 773 Patent application], [t]he gas spring (36) attached *directly* to the arms is not shown but discussed in paragraph 0046; however, if Fig. 4 is modified to delete member (34) and member (36) is moved adjacent the arms (using one or two actuators) and designated as pivotally attached via a numeral, this objection would be overcome.

*Id.* (emphasis added). The inventor subsequently amended Claims 1 and 13 the 773 Patent application by adding the following language:

> wherein the gas spring is directly attached to the one of the set of pivot arms through an arm pivot point.

Doc. 78-11 at 8; *see also id.* at 16 (Plaintiff also added Figure 4B to the amended application, which is reproduced above (the figure in the amended application does not include green highlighting)). Given this prosecution history, and given the plain language of the claim requiring "direct[ ]" attachment through an arm pivot point, *see, e.g.*, doc. 15-1 at 33, the Court agrees with Plaintiff that a POSITA would understand the disputed term "directly attached" to mean attached to the set of pivot arms through an arm pivot point, and without intermediate components other than the arm pivot point.

Defendants argue:

> [T]he plain language of the claim modifies the term "directly attached" such that the gas spring need only be directly attached *through* an arm pivot point, where the direct attachment can go through the arm pivot point. The fact that one element is directly attached "*through*" a second element cannot exclude intermediate components that assist or facilitate the direct attachment between the first and second element, and there is no lexicography or disavowal to the contrary.

Doc. 77 at 21. As discussed above, however, the plain language of the claims, read in light of the prosecution history, makes clear that the "intermediate component" though which the gas spring "directly" attaches to the set of pivot arms is the arm pivot point.[22]   Accordingly,

---

[22]  At the hearing, Plaintiff recognized that the 773 Patent's specification is "not very clear" as to the precise definition of a "pivot point." Doc. 86 at 75-76. Further, the Court agrees with Defendants' assertion that

> [e]ven directly attached components may require some form of attachment to "directly attach" the components together. . . . In particular, an intermediate component, existing between the two attached components, can facilitate the direct attachment. For example, two boards may be directly attached by an intermediate nail or screw. Two pieces of plastic may be directly attached through intermediate glue.

Doc. 77 at 20. The Court's construction does not foreclose the possibility that the "arm pivot point" itself can consist of multiple component parts, especially in light of the Examiner's Interview Summary suggesting that the "direct attachment" can be achieved "using one or two actuators." Doc. 78-10 at 3; *see also, e.g.*, doc. 15-1 at 10 (it is unclear whether the "pivot point" broadly labeled as (24) in Figure 2B of the 773 Patent consists of a hole, a pin, the bracket protruding from the work surface, or all of those components). As discussed, however, the Court agrees with Plaintiff that the POSITA would understand that the "direct" attachment is achieved by the "arm pivot point."

although the Court agrees with Plaintiff's view of the scope of Term 3,

the Court will supply its own construction for clarity:

> "directly attached" [in the relevant claims] means the gas
> spring is attached to the set of pivot arms through an arm
> pivot point without an intermediate component other than the
> arm pivot point.

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 4 | "keyboard tray mechanism is configured to allow the keyboard platform to be stored under the work station platform and to extend out in the protruding Position" | "keyboard tray mechanism that allows the keyboard tray to have two positions— one for being stored underneath the work station platform and one that allows the keyboard tray to extend out in the protruding position." | Claims 11 & 22, 630 Patent<br><br>Claim 10, 773 Patent |

Plaintiff initially proposed the following construction for Disputed

Term 4:

> a keyboard tray mechanism that allows the keyboard tray to
> have two positions – one for being stored underneath the work
> station platform and one that allows the keyboard tray to be
> *positioned out, down, and parallel to the work surface
> platform.*

Doc. 72-1 at 8 (emphasis added).  Defendants subsequently pointed out

that the "out, down, and parallel" limitation would be duplicative of other

portions of the 630 and 773 Patents.  Doc. 73 at 15.  Plaintiff agreed that

the limitation would be duplicative in Claim 11 of the 630 Patent, since

Claim 11 depends on Claim 10, which states:

> 10. The desktop workspace of claim 1, further comprising a
> keyboard tray mechanism configured to hold the keyboard
> platform in the position that protrudes out, down, and parallel
> to the work surface platform.

Doc. 15-6 at 32; *see also* doc. 78 at 17 (Plaintiff's response brief).  Plaintiff

proposed the following construction for the disputed phrase in Claim 11

of the 630 Patent given its concession:

> A keyboard tray mechanism that allows the keyboard tray to
> have two positions—one for being stored underneath the work
> station platform and one that allows the keyboard tray to
> extend out in the protruding position.

Doc. 78 at 17.  Plaintiff, however, asserts that "Defendants' argument on

this point is not valid for [C]laim 22 of the [630 Patent] or for [C]laim 10

of the [773 Patent] because the language 'to be positioned out, down, and

parallel to the work surface' does not otherwise exist in these two claims.

Therefore, Plaintiff adheres to its originally proposed claim construction

for the disputed language in [C]laim 22 of the [630 Patent] and for

[C]laim 10 of the [773 Patent]."  *Id.*

Plaintiff's assertion is incorrect, since both Claim 22 of the 630

Patent and Claim 10 of the 773 Patent incorporate identical "out, down,

and parallel" language:

> . . . further composing a keyboard tray mechanism configured
> to hold the keyboard platform in the position that protrudes
> *out, down, and parallel* to the work surface platform and to
> allow the keyboard platform to be stored under the work
> surface platform.

Doc. 15-6 at 33 (630 Patent, Claim 22); *see also* doc. 15-1 at 34 (773

Patent, Claim 10).  Given Plaintiff's recognition that adding "out, down,

and parallel" language would be duplicative as to Claim 11 of the 630

Patent, the Court finds that it would also be duplicative as to Claim 22

of the 630 Patent and Claim 10 of the 773 Patent.  *See* doc. 78 at 17.  The

Court should not construe Disputed Term 4 by adding this limitation.

The only remaining issue as to Disputed Term 4 is whether the

Court should construe the phrase "allow the keyboard platform to be

stored under the work station platform and to extend out in the

protruding Position", *see, e.g.*, doc. 15-6 at 32, to mean "allows the

keyboard tray to have *two positions*—one for being stored underneath the

work station platform and one that allows the keyboard tray to extend

out in the protruding position."  *See* doc. 71 at 20-22 (emphasis added).

Before addressing the merits of the parties' dispute, the Court must

clarify the actual construction Plaintiff proposes.  Plaintiff initially asked

the Court to adopt a construction limiting the keyboard tray to "*two*

*position[s]*—one for being stored underneath the work station platform and one that allows the keyboard tray to be positioned out, down, and parallel . . . [.]" Doc. 71 at 20 (emphasis added).  To the extent Plaintiff's initial construction suggests that the tray must have *exactly* two positions,[23] that construction is contradicted by the embodiments Plaintiff cites in which the tray moves in a "sliding motion" between many possible "positions."  *See, e.g.*, doc. 71 at 22 (quoting doc. 15-6 at 31).

When the Court questioned Plaintiff's counsel on this issue at the hearing, he seemed to propose an alternative construction of Disputed Term 4 involving "at least two" positions:

> You have to have *at least two*. One of those two has to be tucked away, and the other . . . has to be at least one position where you can use it.  Of course, . . . if you look at the mechanism, it's a moving part.  It slides.  It's gotta have at least two positions.

Doc. 86 at 100 (emphasis added); *see also* doc. 78 at 18 (" . . . the specification unambiguously supports the requirement that the keyboard be movable into *at least* two positions[.]" (emphasis added)).  Given this

---

[23]  The Court finds that Plaintiff's initial proposed construction strongly suggests *exactly* two positions given its express listing of two positions, and use of the phrase "one for being stored . . . and one that allows."  Doc. 71 at 20.

amendment which proposes a different construction from Plaintiff's initial proposal, the Court presumes that Plaintiff seeks the following construction:

> A keyboard tray mechanism that allows the keyboard tray to have *at least two* positions, *including* one for being stored underneath the work station platform and one that allows the keyboard tray to extend out in the protruding position.

Defendants do not dispute that Disputed Term 4 encompasses embodiments in which the keyboard tray can have two or more positions; rather, it argues that the claim "could be read [to include] a single keyboard tray position."  Doc. 86 at 101; *see also* doc. 77 at 22 ("The plain language of these claims supports any number of keyboard platform positions, including one position[.]").  Defendants rely heavily on the 630 Patent's discussion of Figure 10B:



FIG. 10B

Doc. 15-6 at 26.  The 630 Patent discusses Figure 10B as follows:

> [Figure 10B] show[s] an example of part of keyboard tray
> mechanism 50[.] . . . Keyboard mechanism 50 is configured
> move to a position that is in an outward and lowered position
> with respect to surface 10.  . . .  Some examples include a
> design where the keyboard tray can be removed, adjusted, or
> designed so that it extends out when it is in use and is
> compactly stored under surface 10 when not in use.

Doc. 15-6 at 31.  Defendants assert, and Plaintiff does not dispute, that

Figure 10B depicts a keyboard tray which is "locked in one position."  Doc.

86 at 102.  Plaintiff, however, argues that Figure 10B is not encompassed

by the claims at issue in Disputed Term 4.  *Id.* at 103 ("So [Figure] 10B

is not what we're talking about.  That's not what's covered by this

question.").  For the following reasons, the Court agrees with Plaintiff

that Figure 10B is not encompassed by the relevant claims.

As discussed, Claims 1 and 10 of the 630 Patent provide, in relevant part:

> [Claim 1]   A desktop workspace that adjusts vertically, comprising . . . a keyboard platform that protrudes out, *down*, and parallel to the work surface platform[.]
>
> [Claim 10] The desktop workspace of [C]laim 1, further comprising a keyboard tray mechanism configured to hold the keyboard platform in the position that protrudes out, *down*, and parallel to the work surface platform.

Doc. 15-6 at 31-32 (emphasis added).  The plain language of the claims and the remainder of the specification indicate that that 630 Patent uses the word "down" to describe an element vertically lower than another element.  *See, e.g.*, *id.* at 30 (". . . moves the work surface platform vertically up and down"); *id.* ("the other end of the arm moves up or down vertically").   Accordingly, Claim 10 encompasses embodiments like Figure 10B, which hold the keyboard tray "down" relative to the work surface.  *See id.* at 26.

In Claim 11, the claim relevant to Disputed Term 4, the patentee chose to write a claim dependent on Claim 10, and used the word "under":

> [Claim 11]  The desktop workspace of [C]laim 10, wherein the keyboard tray mechanism is configured to allow the keyboard platform to be stored *under* the work surface platform and to extend out in the protruding position.

Doc. 15-6 at 32 (emphasis added); *see also* doc. 77 at 8 (Defendants assert that "different terms presumptively have different meanings."). The 630 Patent's use of the phrase "under" indicates that an element is not only "down" relative to another element, *i.e.*, vertically lower than the other element, but also, *e.g.*, "covered" by the surface of some other element from above. *See, e.g.*, doc. 15-6 at 31 ("When the user pulls or pushes up, down, in, or out on the platform, . . . [several elements] guide the platform to [a] tucked away [position] *under* the work surface platform." (emphasis added) (element labels omitted)).[24]

Given the distinction between "down" and "under" in the 630 Patent, the Court is unconvinced by the following highlighted and edited version Figure 10B in Defendants' slideshow presented at the hearing:

---

[24] The Court agrees with Defendants that the 630 Patents do not appear to require that an element be, e.g., "wholly under" a second element to be "under" the second element. *See* doc. 86 at 102. However, the 630 Patents makes clear that at least some portion of the lower element must be "covered" by the higher element to be "under" the higher element.



FIG. 10B

Defendants argue that in Figure 10B, "the keyboard mechanism can *hold* the keyboard platform in the protruding position, and where the keyboard platform is 'stored under the work surface platform' simply when the desktop workspace lowered and not used."  Doc. 77 at 23 (emphasis in original); *see also* doc. 86 at 101-02 (Defendants assert that " . . . Figure 10B shows brackets 62 which are holding that keyboard tray in position. . . . And when the desktop is lowered, that keyboard tray will be stored.").  As discussed, however, Claim 11 states that the keyboard platform is "stored" when it is "under the work surface platform", *i.e.*, at least partially covered by the work surface platform from above.  Doc. 15-6 at 32.  The Court disagrees with Defendants that the keyboard platform

61

can be "stored" simply by moving "down" relative to the work surface platform under Claim 11, when Claim 11 requires it to move "under" the work surface platform to achieve the "stored" position. *See id.* Accordingly, Defendants have not shown that Figure 10B is an embodiment encompassed by Claim 11.

Although Defendants urge the Court to adopt the plain and ordinary meaning of Disputed Term 4, *see* doc. 77 at 22, their view that the term encompasses "any number of keyboard platform positions, including one position", *id.*, is inconsistent with the relevant claims' delineation between a "stored" position "under" the work surface platform and an "extend[ed]" position which is "protruding." *See, e.g.*, doc. 15-6 at 32. Accordingly, adopting the plain and ordinary meaning of Disputed Term 4 would resolve the parties' dispute by rejecting Defendants' position.

However, although the Court is persuaded that Plaintiff's proposed construction (as altered by the Court) accurately reflects the relevant claims' scope, the Court is concerned that it is so similar to the claim language that it "merely replaces the claim language with . . . similar phrase[s] that does not improve comprehension." *Kimberly-Clark Corp.*

*v. Extrusion Grp., LLC*, 2021 WL 302889, at *5 (N.D. Ga. Jan. 29, 2021)

("Replacing the term 'mounted to' with the longer phrase 'physically

attached to,' . . . would amount to an 'exercise in redundancy.' " (quoting

*O2 Micro*, 521 F.3d at 1362)). Nevertheless, to clarify that Defendants'

view of the term's scope is erroneous, the Court **RECOMMENDS** that

Plaintiff's proposed construction, as altered by the Court, be adopted:

> A keyboard tray mechanism that allows the keyboard tray to
> have *at least two* positions, *including* one for being stored
> underneath the work station platform and one that allows the
> keyboard tray to extend out in the protruding position.

*See Tubular Rollers, LLC v. Maximus Oilfield Prod., LLC*, 2020 WL

6278284, at *8 (S.D. Tex. Sept. 4, 2020) (construing a term when

construction "is not necessary" for the "sake of clarity").

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 5 | "gas spring, set of pivot arms, base pivot point, and the platform pivot point align side by side . . . in a fully lowered position such that the desktop workspace adjusts vertically" | "when in a fully lowered position, and as viewed from above the desktop workspace, the five listed components must be side by side in the same horizontal plane and not overlapping with one another."[25] | Claim 13, 630 Patent<br>Claim 6, 773 Patent<br>Claim 5, 774 Patent |

---

[25] Plaintiff initially proposed the following construction:

> when in a fully lowered position, and as viewed from above the desktop
> workspace, the five listed components must be side by side *and in
> parallel with one another* so they do not overlap with one another

Doc. 72-1 at 8 (emphasis added). At the hearing, Plaintiff offered a new construction

63

The parties' dispute as to Disputed Term 5 centers on whether the gas spring, sets of pivot arms, base pivot points, and the platform pivot points can "overlap" when the workspace is in a "fully lowered position." *Compare, e.g.*, doc. 71 at 23, *with* doc. 77 at 25.  Adopting Disputed Term 5's plain and ordinary meaning would resolve the parties' dispute over the term's scope, since the plain and ordinary meaning does not include Plaintiff's proposed "non-overlap" limitation.

Plaintiff cites the following portion of the 630 Patent's specification to support its proposed construction:

> Pivot arms, pivot points, and sliding elements are designed to fit compactly together when the desktop workspace is in a lowered position, as can be seen in FIGS. 7, 7B, and 10C.  ***All elements align side-by-side*** in such a manner that when fully lowered the desktop workspace is very compact, looks sleek, and takes up minimal space. . . . This arrangement of elements allows the elements[ ] to not overlap when [the unit] is in a fully lowered position[.]

Doc. 71 at 22-23 (quoting doc. 15-6 at 30, in part) (emphasis added by Plaintiff).  Plaintiff argues that "[t]he compactness in the fully lowered position is attainable only because the moving components 'align side-by-

---

which omits the "parallel" limitation.  *See* doc. 86 at 107 ("But the point is not whether they're parallel or not.  The point is they don't overlap.").  The finalized quoted proposed construction above was presented on Plaintiff's slideshow at the hearing.

side[.]' . . . If two components crossed over or overlapped each other (from the top view), then the component on top of the other would not be able to move as low as the component beneath it, and the apparatus could not move to the flat position as depicted in Figures 7 and 10C."  Doc. 71 at 23.

The Court agrees with Defendants that the specification's discussion of specific embodiments in which the elements do not "overlap" does not indicate that the Court must read-in that limitation to the claims, *see* doc. 73 at 17; doc. 77 at 25, especially given the specification's express assertion that the desktop workspace is "not limited to" specific elements configurations in Figures 7, 7B, and 10C.  Doc. 15-6 at 30.

Further, at least one embodiment encompassed by the claims at issue appears to contradict Plaintiff's proposed "non-overlap" limitation. Claims 1 and 6 of 773 Patent state:

> [Claim 1] . . . a gas spring directly attached to one of the set of pivot arms through an arm pivot point to assist in elevation of the work surface platform.

> [Claim 6] The desktop workspace of [C]laim 1, wherein the gas spring, the set of pivot arms, the base pivot point, and the platform pivot point align side-by-side when the desktop workspace is in a fully lowered position such that the desktop workspace adjusts vertically.

Doc. 71-2 at 33-34; *see also* doc. 71 at 22 (Plaintiff asks the Court to apply the "non-overlap" limitation to Claim 6 of the 773 Patent). Figure 4B of the 773 Patent depicts an embodiment in which the gas springs are "directly attached" to the sets of pivot arms:



FIG. 4B

Doc. 15-1 at 16 (highlighting circles added). If the pivot arms in Figure 4B were flattened to their lowest possible position, the right side of the gas spring (36), highlighted in blue, could "overlap" with the right side of arm (18), highlighted in yellow. The Court declines to adopt Plaintiff's non-overlap limitation given the 773 Patent's inclusion of an embodiment which contradicts that limitation. Accordingly, the Court should adopt the plain and ordinary meaning of Dispute Term 5.[26]

---

[26] As discussed above, Plaintiff also proposes that the Court construe Disputed Term 5 to include language concerning, e.g., "the five listed components" and a "horizontal plane." *See, e.g.*, doc. 71 at 22; doc. 86 at 107. Plaintiff included those phrases in its proposed construction to describe its view of the "non-overlap" limitation. *See, e.g.*,

## CONCLUSION

For the foregoing reasons, the Court should apply the following constructions to the disputed terms:

| Disputed Term Number | Term | Relevant Claims | Recommended Construction |
|---|---|---|---|
| 1.a | "a set of pivot arms" | Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | "a pair of pivot arms" |
| 1.b | "two sets of arms" | Claims 1, 13, 14, 19 & 24, 630 Patent | "two pairs of arms" |
| 1.c | "arm pivot point" | Claims 1 & 11, 773 Patent<br><br>Claims 1 & 12, 774 Patent | Plain and ordinary meaning |
| 1.d | "scissoring pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | *See construction of Disputed Term 1 below* |
| 1.e | "base pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |
| 1.f | "platform pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |

---

doc. 86 at 107.  Given the Court's rejection of that limitation, the Court also rejects Plaintiff's proposal to include language regarding the "listed components", and the "plane."

Additionally, at the hearing, Plaintiff argued that the phrase in Disputed Term 5 "such that the desktop workspace adjusts vertically" is "meaningless."  Doc. 86 at 103; *see also id.* at 103-04 ("I don't know what that's supposed to do. . . . When it's in a fully lowered position, it can adjust vertically.").  The Court disagrees, since the plain meaning of the phrase simply describes an alignment of elements which allows the workspace to adjust vertically.  *See, e.g.*, doc. 15-1 at 34.

| 1 | "a set[s] of [pivot] arms that connect at a scissoring pivot point[s] creating a scissoring motion" | Claims 1, 13, 14, 19, 24, and 29, 630 Patent

Claim 1, 773 Patent

Claim 1, 774 Patent | . . . a pair of pivot arms that connect at a scissoring pivot point creating a scissoring motion, wherein the scissoring pivot point is located on the arms between each arm's sliding mechanism and base or platform pivot point . . . |
|---|---|---|---|
| 2 | "an element that connects the two sets of arms to one another" | Claims 1, 13, 14 & 19, 630 Patent | "an element that directly or indirectly connects the two sets of arms to one another" |
| 3 | The phrase "directly attached" in the following language: "a gas spring directly attached to one of the set of pivot arms through an arm pivot point" | Claims 1 & 4, 773 Patent

Claim 1, 774 Patent | "directly attached" [in the relevant claims] means the gas spring is attached to the set of pivot arms through an arm pivot point without an intermediate component other than the arm pivot point. |
| 4 | "keyboard tray mechanism is configured to allow the keyboard platform to be stored under the work station platform and to extend out in the protruding Position" | Claims 11 & 22, 630 Patent

Claim 10, 773 Patent | "A keyboard tray mechanism that allows the keyboard tray to have at least two positions, including one for being stored underneath the work station platform and one that allows the keyboard tray to extend out in the protruding position." |
| 5 | "gas spring, set of pivot arms, base pivot point, and the platform pivot point align side by side . . . in a fully lowered position such that the desktop workspace adjusts vertically" | Claim 13, 630 Patent

Claim 6, 773 Patent

Claim 5, 774 Patent | Plain and ordinary meaning |

This report and recommendation ("R&R") is submitted to the

district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED and RECOMMENDED**, this 5th day of July, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA