IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| FACTORY DIRECT WHOLESALE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> OFFICE KICK, INC., and CKNAPP SALES, INC. <br><br> Defendant. <br><br>———————————————— <br><br> OFFICE KICK, INC., and CKNAPP SALES, INC., <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> FACTORY DIRECT WHOLESALE, LLC, DEFU USA, LLC, and HANPING LIU, <br><br> Counterclaim Defendant/Third Party Counterclaim Defendants. | CIVIL ACTION NO.: 4:21-cv-368 |

**O R D E R**

Before the Court is the Magistrate Judge's July 5, 2023 Report and Recommendation ("R&R") regarding the construction of disputed claims in the patents at issue in this case. (Doc. 103.)  Defendants Office Kick, Inc. ("Office Kick") and CKNAPP Sales, Inc. ("CKNAPP", and, collectively with Office Kick, "Defendants") object to a limited portion of the R&R, (doc. 104); Plaintiff Factory Direct Wholesale, LLC responded, (doc. 106), and Defendants replied, (doc. 112).   For the following reasons, the Court **SUSTAINS** Defendants' objections, in

part, and **OVERRULES** them, in part. (Doc. 104.) The Court **ADOPTS** the July 5, 2023 R&R as its opinion, in part, and **DECLINES** to **ADOPT** it, in part. (Doc. 103.)

## BACKGROUND

As the Magistrate Judge explained, Plaintiff sells adjustable standing desk converter units on Amazon.com which allow users to either stand or sit while using the work surface. (Doc. 103, pp. 1-2.) CKNAPP, also known as "Vivo," is a parent company of Office Kick, which holds three desk converter patents: (1) Patent No. 11,134,773 (the "773 Patent"), (2) Patent No. 11,134,774 (the "774 Patent"), and (3) Patent No. 10,575,630 (the "630 Patent," and, collectively with the 773 and 774 Patents, the "Patents"). (Id., p. 2; see also doc. 15-6 (630 Patent); doc. 15-1 (773 Patent); doc. 15-5 (774 Patent).) Plaintiff asserts that although the 774 Patent purports to be a continuation of the 773 Patent, and the 773 Patent purports to be a continuation of the 630 Patent, the 774 Patent and 773 Patent are actually "continuations-in-part" because they add substantive content. (Doc. 103, p. 2 (citing doc. 71, p. 6 n.3).) Plaintiff alleges that Defendants' counsel wrote to Amazon demanding that it remove two of Plaintiff's models because they infringed the 773 Patent; Amazon subsequently removed the models. (Id., pp. 2-3.) Amazon eventually removed more of Plaintiff's models at Defendants' request because they purportedly infringed one of the Patents. (Id., p. 3.) Plaintiff brought this action against Defendants asserting claims for tortious interference, civil conspiracy, declaratory judgment of non-infringement of the Patents, and declaratory judgment of invalidity of the Patents. (Doc. 15, pp. 30-43.) Following a claim construction hearing, (doc. 82 (Minute Entry); doc. 86 (Transcript)), the Magistrate Judge recommended constructions for eleven disputed claims in the Patents, (doc. 103), to which Defendants filed limited objections, (doc. 104.)

## ANALYSIS

As the Magistrate Judge explained, (doc. 103, p. 4), "a district court's duty at the claim construction stage is, simply, the one that [the Federal Circuit[1]] described . . . many times before: to resolve a dispute about claim scope that has been raised by the parties." Eon Corp. IP Holdings v. Silver Spring Networks, 815 F.3d 1314, 1319 (Fed. Cir. 2016). Claim construction is a matter of law. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995).

"When a court is presented with a purported dispute as to the meaning and scope of patent claim terms, the threshold question must be whether claim construction is truly necessary." Britax Child Safety, Inc. v. Nuna Int'l B.V., 2019 WL 7161687, at *3 (E.D. Pa. Dec. 23, 2019). Claim construction is necessary "[w]hen the parties raise an actual dispute regarding the proper scope of claims." Kaufman v. Microsoft Corp., 34 F.4th 1360, 1369 (Fed. Cir. 2022) (quoting O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (emphasis added)); see also Fastship, LLC v. United States, 114 Fed. Cl. 499, 504 (2013) ("Although the trial court is not required to construe every term in a patent, it must construe any term for which claim scope is disputed."). "A [court's] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." O2 Micro, 521 F.3d at 1361.

The Federal Circuit has "frequently stated that the words of a claim are generally given their ordinary and customary meaning. [Cits.] [It has] made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date

---

[1] The Court applies Federal Circuit law to substantive patent issues, and Eleventh Circuit law to procedural nonpatent issues. See In re Cambridge Biotech Corp., 186 F.3d 1356, 1368 (Fed. Cir. 1999).

3

of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (quotations and citations omitted).[2] "Importantly, the [POSITA] is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.[3] Although "[t]he claim construction inquiry . . . begins and ends in all cases with the actual words of the claim," Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998), courts must also consider "the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Phillips, 415 F.3d at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Further, a court construing patent claim terms need not adopt the constructions proposed by the parties, and should determine its own constructions if it determines the parties' proposals to be legally flawed." Holmberg v. United States, 124 Fed. Cl. 610, 613 (2016).

As the Magistrate Judge explained, (doc. 103, pp. 8-9), "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " Phillips, 415 F.3d at 1315 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Courts, however, must "us[e] the specification [only] to interpret the meaning of a claim", and may not "import[ ] limitations from the specification into the claim." Phillips, 415 F.3d at 1323. "[T]he court may also consider the

---

[2] The Magistrate Judge referred to the person of ordinary skill in the art as the "POSITA", (see doc. 103, p. 6 (citing Sci. Applications Int'l Corp. v. United States, 161 Fed. Cl. 373, 376 (2022)), and the Court will use that abbreviation in this Order. Additionally, the Magistrate Judge noted that the parties dispute the applicable POSITA's level of skill in this case, but declined to resolve the dispute given the parties' representation that resolution would not impact any of their claim construction arguments. (Id., p. 6 n.4.) The Court adopts this approach, to which no party has objected. (See generally docs. 104, 106 & 112.)

[3] "A patent 'specification' is statutorily defined as a written description of the invention, the preferred embodiment of the invention, and how to make and use the invention." Britax, 2019 WL 7161687, at *4 n.8 (citing 35 U.S.C. § 112(a)).

4

prosecution history of the patent, if in evidence." Vitronics Corp., 90 F.3d at 1582. The prosecution history consists of "all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." Id. However, since the "prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips, 415 F.3d at 1317. Courts may also examine "extrinsic evidence," e.g., dictionaries, treatises, and expert testimony, id. at 1318; however, extrinsic evidence is "less significant than the intrinsic record", and "cannot alter any claim meaning discernible from intrinsic evidence." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004).

The R&R acknowledged, (doc. 103, p. 10), there are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning, as understood by the POSITA: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner v. Sony Computer Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." Id. (quoting CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "The standard for disavowal of claim scope is similarly exacting." Id. at 1366. "[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." 3M Innovative Props. Co. v. Tredegar Corp., 725 F.3d 1315, 1325 (Fed. Cir. 2013). "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [the Federal Circuit has] declined to find prosecution disclaimer." Avid Tech., Inc. v. Harmonic, Inc., 812 F.3d 1040, 1045 (Fed. Cir.

2016) (quoting Cordis Corp. v. Medtronic AVE, Inc., 339 F.3d 1352, 1359 (Fed. Cir. 2003)). "The party seeking to invoke . . . disclaimer bears the burden of proving the existence of a clear and unmistakable disclaimer." Trivascular, Inc. v. Samuels, 812 F.3d 1056, 1063-64 (Fed. Cir. 2016) (citation and quotations omitted).

I. **The Court adopts the Magistrate Judge's unobjected-to recommendations.**

Plaintiff proposes constructions for eleven disputed terms designated 1.a, 1.b, 1.c, 1.d, 1.e, 1.f, 1, 2, 3, 4, and 5. (Doc. 72-1, pp. 1-8.) Defendants contend that "[n]o construction is necessary" for any of the terms. (Doc. 77, p. 26.) The Magistrate Judge recommended constructions for the eleven terms, (doc. 103, pp. 67-68), and Defendants only object to the recommendations regarding Terms 1.a, 1.b, and 1. (Doc. 104, p. 5.) The Court agrees with the Magistrate Judge's unobjected-to recommendations regarding Terms 1.c, 1.d, 1.e, 1.f, 2, 3, 4, and 5, and **ADOPTS** them as its opinion. The Court will summarize its constructions below.

II. **The Court declines to adopt the Magistrate Judge's recommendations regarding Terms 1.a and 1.b.**

The Magistrate Judge summarized Disputed Terms 1.a and 1.b as follows:

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 1.a | "a set of pivot arms" | "a pair of pivot arms" | Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |
| 1.b | "two sets of arms" | "two pairs of arms" | Claims 1, 13, 14, 19 & 24, 630 Patent |

(Doc. 103, p. 13.) Plaintiff argues that "[a] 'set' of pivot arms in the [Patents] means two arms— not one arm, not three or more arms, but two arms[.]" (Doc. 71, p. 12.) Defendants contend that

6

no construction is necessary for the term "set", which includes any "plurality of pivot arms." (Doc. 77, p. 9.)[4]

The Magistrate Judge concluded that "[s]ince the plain and ordinary meaning of 'set' includes groups of more than two items, adopting the plain and ordinary meaning would resolve the parties' dispute over the terms' scope."  (Doc. 103, p. 14 (citing O2 Micro, 521 F.3d at 1361).)  However, he also explained that "[t]he slightly more difficult issue is whether the jury's general understanding of the term[ ], without further interpretation by the Court, would comport with [its] use in the claims or differ from the meaning[ ] given to the term[ ] by those skilled in the art."  (Id. (quoting Keurig, Inc. v. JBR, Inc., 2013 WL 1213061, at *6 (D. Mass. Mar. 22, 2013)).)  He recommended that the Court adopt Plaintiff's proposed construction because the following language in the "Detailed Description" portions of the Patents constitutes disavowal of the plain and ordinary meaning of "set":

> The Desktop Workspace That Adjusts Vertically *includes at least one set of two arms* that connect along their lengths at a pivot point, allowing a scissoring motion, which is part of the method for raising and lowering the work surface platform.

(Id., pp. 15-16 (quoting doc. 15-6, p. 29 (630 Patent) (emphasis added by Magistrate Judge), and citing doc. 15-1, p. 31 (773 Patent) & doc. 15-5, p. 30 (774 Patent)).)[5]  He noted that "[t]here are

---

[4]  The Magistrate Judge rejected Plaintiff's assertion that the term "set" is ambiguous in the context of the Patents because the word "can describe ***any*** number of elements", including zero or one.  (Doc. 71, p. 12 (emphasis in original).)  The Magistrate Judge explained that "[a] 'set' of one arm or zero arms . . . is inconsistent with the claims' use of the plural word 'arms.' "  (Doc. 103, p. 13 n.7.)  The Court agrees with that conclusion, to which no party has objected.

[5]  In their objections, Defendants cite Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298 (Fed. Cir. 1999), to argue that the Magistrate Judge's "citation (which uses the phrase 'The Desktop Workspace That Adjusts Vertically') simply cites the title of the patents-in-suit", and that "[t]he title of a patent may not be used to read in (i.e., limit) the claims of a patent."  (Doc. 104, p. 9.)  In Pitney Bowes, Inc., however, the Federal Circuit explained that "if we do not read limitations into the claims from the specification that are not found in the claims themselves, then we certainly will not read limitations into the claims from the patent title."  182 F.3d at 1312.  Here, the Magistrate Judge did not use the substance of the Patents' titles to recommend a construction; rather, he concluded that certain references to "The Desktop Workspace That Adjusts Vertically" in the specifications discussed the "invention as a whole."  (Doc. 103, pp. 15-16.)

certainly cases where [the Federal Circuit has] found disavowal or disclaimer based on clear and unmistakable statements by the patentee that limit the claims, such as 'the present invention includes . . .' or 'the present invention is . . .' or 'all embodiments of the present invention are . . .' " (Id. (quoting GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1309 (Fed. Cir. 2014)).) In their objections, Defendants primarily argue that the Magistrate Judge's recommended construction is inconsistent with other portions of the specification. (See, e.g., doc. 104, pp. 4-11.) For the following reasons, the Court agrees, and **DECLINES** to **ADOPT** the Magistrate Judge's recommended constructions of Terms 1.a and 1.b. (Doc. 103, in part.)

As discussed, "[w]hen the specification describes the features of the 'present invention' as a whole, this description limits the scope of the invention." Lemoine v. Mossberg Corp., 2021 WL 4199934, at *3 (Fed. Cir. Sept. 15, 2021). "However, a reference to 'the present invention' does not amount to a disavowal of scope if the phrase is used to describe 'one way to carry out the present invention,' or where the specification does not 'uniformly require' the limiting feature." Perdiemco LLC v. CalAmp Corp., 2023 WL 1879303, at *3 (D. Del. Feb. 10, 2023) (quoting Continental Circuits LLC v. Intel Corp., 915 F.3d 788, 798 (Fed. Cir. 2019)).

Defendants note in their objections that although a portion of the 774 Patent's "Detailed Description" refers to the "Desktop Workspace That Adjusts Vertically" as "includ[ing] at least one set of two arms",[6] the patent's "Summary" section includes the following language:

---

[6] Defendants contend that "the presence of the terminology '*at least*' as a precursor to '*one set of two arms*' . . . suggests that 'The Desktop Workspace That Adjusts Vertically' may include *more* than two arms." (Doc. 104, p. 8 (emphasis in original).) Plaintiff counters that Defendants' position "ignores basic English grammar", and that " '[a]t least one set of two arms' does *not* mean the same as 'a set of at least two arms.' " (Doc. 106, p. 6 (emphasis in original).) Even if Plaintiff's interpretation of the phrase is correct, it is insufficient to constitute disavowal, as discussed below.

8

> This desktop workspace includes *at least one set of arms* as part of the height adjustment mechanism that utilizes a scissor motion to move the work surface platform up and down. . . . In one example, a desktop workspace that adjusts vertically is comprised of . . . a height adjustable mechanism including *at least one set of arms* that connect at a pivot point creating a scissoring motion[.]

(Doc. 15-5, p. 29 (774 Patent) (emphasis added); see also doc. 104, p. 9; doc. 112, pp. 7-8.) As the District of Delaware has explained, "[specification] language characterizing 'the present invention' must be read in context of the entire specification and the prosecution history, and it should not be interpreted to impose a limitation not supported by the rest of the intrinsic record." Perdiemco LLC, 2023 WL 1879303, at *3. Here, "[b]ecause the specification does not 'uniformly require' the limiting feature advocated by [Plaintiff]," id. at *4, i.e., a "set" of arms being limited to a "pair" of arms", the Court cannot conclude that the "includes at least one set of two arms" language from the 774 Patent's Detailed Description "amount[s] to a disavowal of scope", particularly in light of Plaintiff's failure to address the above-quoted portion of the 774 Patent's Summary section in its response. (See generally doc. 106.)[7]

Defendants also point out, for the first time, the "[m]ost important[ ]" inconsistency between Plaintiff's proposed construction and the Patents' specifications: the construction "can

---

[7] Further, as the Magistrate Judge noted, the patentee used the word "pair" in certain portions of the claims, but chose to use "set" when describing groups of arms. (Doc. 103, p. 16.) Under the doctrine of claim differentiation, "the general assumption is that different terms have different meanings[.]" Symantec Corp. v. Computer Assocs. Int'l, Inc., 522 F.3d 1279, 1289 (Fed. Cir. 2008).

exclude three-arm designs expressly recited by claims of the [774 Patent]." (Doc. 104, p. 6.)[8]

They cite the following claims in the 774 Patent which are not asserted[9] in this case:

> [Claim 8]: A desktop workspace that adjusts vertically, comprising . . . a set of pivot arms including [1] a first base pivot arm, [2] a second base pivot arm, and [3] a platform pivot arm, the set of pivot arms connecting at a scissoring pivot point creating a scissoring motion when raising and lowering the work surface platform to various heights;
>
>> a first base pivot point fixed relative to the base and connecting the base and the first base pivot arm;
>>
>> a second base pivot point fixed relative to the base and connecting the base and the second base pivot arm;
>>
>> a platform pivot point fixed relative to the work surface platform and connecting the work surface platform and the platform pivot arm;
>>
>> a first sliding mechanism on an end of the first base pivot arm between the end of the first base pivot arm and the work surface platform;
>>
>> a second sliding mechanism on an end of the second base pivot arm between the end of the second base pivot arm and the work surface platform; and
>>
>> a third sliding mechanism on an end of the platform pivot arm between the end of the platform pivot arm and the base[.]
>
> [Claim 12]: A desktop workspace that adjusts vertically, comprising . . . a set of pivot arms including [1] a base pivot arm, [2] a first platform pivot arm, and [3] a second platform pivot arm, the set of pivot arms connecting at a scissoring pivot point creating a scissoring motion when raising and lowering the work surface platform to various heights[.]

---

[8] Plaintiff contends that Defendants did not raise the argument regarding the claims describing three-arm "sets" in their initial briefing or at the Claim Construction Hearing. (Doc. 106, p. 6.) Defendants counter that although they did not cite these specific claims prior to the R&R's entry, "this issue is not new [because] Defendants have maintained throughout the briefing that other disclosed embodiments precluded disavowal[.]" (Doc. 112, p. 13.) "[C]ourts have the discretion to consider novel evidence, factual claims, and legal arguments raised for the first time in an objection to an R&R, [but] they are under no obligation to do so." Rolland v. Saul, 2019 WL 3554640, at * 2 (S.D. Ga. Aug. 5, 2019) (Hall, C.J.). The Court agrees with Plaintiff that Defendants did not previously raise their argument regarding three-arm "sets"; however, the Court exercises its discretion to consider the argument, particularly in light of the parties' opportunity to fully brief the issue. (Docs. 104, 106 & 112.)

[9] Plaintiff explains that Claims 8 and 12 of the 774 Patent "have not been asserted against [Plaintiff]; in other words, Defendants do not accuse [Plaintiff] of infringing [those two claims]." (Doc. 106, p. 6.)

(Doc. 15-5, p. 33 (numbering added) (formatting altered).)[10]  Defendants contend that construing "set" to mean "pair" "directly contradicts these claims, which means the claim construction cannot be correct."  (Doc. 104, p. 7.)

In its response, Plaintiff does not dispute Defendants' contention that Claims 8 and 12 of the 774 Patent describe "set[s] of pivot arms" consisting of three arms, (see generally doc. 106), and the Court agrees that they describe three-arm sets given their express delineation between, e.g., "[1] a first base pivot arm, [2] a second base pivot arm, and [3] a platform pivot arm[.]" (Doc. 15-5, p. 33.)  This inconsistency between Plaintiff's proposed construction and Claims 8 and 12 of the 774 Patent militate against adopting Plaintiff's proposed construction.  See, e.g., Perdiemco LLC, 2023 WL 1879303, at *3 ("[L]anguage characterizing 'the present invention' must be read in context of the entire specification and the prosecution history, and it should not be interpreted to impose a limitation not supported by the rest of the intrinsic record."); see also Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1305 (Fed. Cir. 2014), overruled on other grounds by Williamson v. Citrix Online, LLC, 792 F.3d 1339 (Fed. Cir. 2015) (declining to adopt "proposed construction [which] contradicts the claim language"); Personalized Media Commc'ns, LLC v. TCL Corp., 2018 WL 3207436, at *10 (E.D. Tex. June 29, 2018) ("[B]ecause Defendants' proposed construction would . . . potentially be inconsistent [with specific claim language], Defendants' proposed construction is disfavored."); Neev v. Abbott Med. Optics, Inc., 2012 WL 1066797, at *12 (D. Del. Mar. 26, 2012) ("The Court adopts Plaintiff's construction of this claim term, because to adopt Defendant's proposed construction would be to impose a limitation on the claim . . . that contradicts the language of the claims that were actually issued.").

---

[10]  Claim 12 of the 774 Patent, like Claim 8, lists three pivot points and three sliding mechanisms after listing the arms in the "set of pivot arms."  (Doc. 15-5, p. 33.)  The Court omits the Claim 12 pivot point and sliding mechanism lists from this Order for the sake of brevity.

11

Plaintiff argues in a single sentence that the Defendants' argument regarding Claims 8 and 12 of the 774 Patent fails because those claims "have not been asserted against [Plaintiff]; in other words, Defendants do not accuse [Plaintiff] of infringing [those claims]." (Doc. 106, p. 6.) As the Federal Circuit has explained, however, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." Phillips, 415 F.3d at 1314; see also Boss Indus., Inc. v. Yamaha Motor Corp. U.S.A., 333 F. App'x 531, 541 (Fed. Cir. 2009) (rejecting proposed construction which is "contradicted by the unasserted claims of [a relevant] patent."). The Court is unconvinced by Plaintiff's argument, particularly considering Plaintiff's prior recognition that terms should be construed consistently across the Patents. (See, e.g., doc. 86, pp. 35-36; doc. 71, p. 5 (citing In re Varma, 816 F.3d 1352, 1363 (Fed. Cir. 2016)) ("When a claim term appears in multiple claims and/or multiple of the three asserted patents, the same meaning for that term should apply across all of the three patents.").)

Plaintiff also argues, without citation to authority, that Claims 8 and 12 of the 774 Patent are "irrelevant for construction of the [disputed] claims of the '630 and '773 [P]atents" because Claims 8 and 12 "did not exist until well after the [ ]630 and 773 [P]atent applications were filed. . . . And neither the '630 [P]atent nor the '773 [P]atent incorporate any part of the '774 [P]atent, and could not, because the '774 [P]atent application was not even in existence when the applications for the '630 and '773 [P]atents were filed. (Doc. 106, pp. 6-7.) In Baxter Healthcare Corp. v. Mylan Lab'ys Ltd., 346 F. Supp. 3d 643 (D.N.J. 2016), the defendants raised a similar argument that construing terms in prior related patents based on a definition in a subsequent patent was "illogical, because an ordinary artisan would not and could not know to wait for the issuance of a later-in-time patent [in order to] provide a definition of a given claim term (unless the [ordinary artisan] had a time machine)." Id. at 658. The District of New Jersey rejected this argument,

explaining that "portions of the intrinsic record in a later-issued patent can be used to interpret the same term in the earlier-issued, related patent[.]" Id. at 658-59 (citing Capital Machine Co. v. Miller Veneers, Inc., 524 Fed. App'x. 644, 649 (Fed. Cir. 2014)); see also id. at 659 ("[T]he Court finds it entirely appropriate, and perhaps necessary, to look to the intrinsic evidence of a later issued, related patent in order to interpret a common term used in both patents.") Given this authority, Plaintiff's failure to cite authority supporting its patent sequencing argument, (see doc. 106, pp. 6-7), and its prior assertions that "the same meaning for [terms] should apply across all of the three patents", (doc. 71, p. 5), the Court is unpersuaded by Plaintiff's arguments on this point.

Plaintiff also argues that Claim 1 of the 774 Patent, an asserted claim referencing "a set of pivot arms including a base pivot arm and a platform pivot arm", (doc. 15-5, p. 32), "should be construed differently from the unasserted Claims 8 and 12." (Doc. 106, p. 7.) It notes that "[a]lthough a strong presumption exists that the same phrase should be construed the same in all claims of the same patent, that presumption is overcome when the specification makes clear that different constructions of the same term should apply to different claims." (Id. (citing Haemonetics Corp. v. Baxter Healthcare Corp., 607 F.3d 776, 782 (Fed. Cir. 2010).) It argues that Claims 8 and 12 are "directly inconsistent" with the 774 Patent's "definitional statement" that the Desktop Workspace that Adjusts Vertically includes "at least one set of two arms." (Id., p. 8.) It argues that "[a]sserted [C]laim 1 should be construed in accordance with the specification ('set of arms' should mean 'pair of arms'), whereas the phrase 'set of arms' in [C]laims 8 and 12 stand alone, and may be construed to mean something other than 'pair of arms.' " (Id.) As one of Plaintiff's cited cases explains, however, "the same terms appearing in different claims in the same patent . . . should have the same meaning 'unless it is clear from the specification and prosecution

history that the terms have different meanings at different portions of the claims.' " Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1328 (Fed. Cir. 2006) (quoting Fin Control Sys. Pty, Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed. Cir. 2001)).  For the reasons discussed above, the Court disagrees with Plaintiff that the 774 Patent specification's reference to "at least one set of two arms" is a "definitional statement."  (Doc. 106, p. 8.)  Further, the Court disagrees that "[i]nternal inconsistency . . . exists" between the specification and Claims 8 and 12, (id., p. 8), given the lack of uniformity in the specification's language.

Plaintiff also argues that "Claims 8 and 12 of the '774 [P]atent are invalid" because they fail to comply with "the separate enablement and written description requirements of 35 U.S.C. § 112."  (Doc. 106, pp. 8-9.)[11]  It also argues that "if 'set of arms' in [C]laim 1 is construed to includes sets of three arms, [C]laim 1 is also invalid."  (Id.)  "A patent must 'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention.' " Biosig Instruments, Inc. v. Nautilus, Inc., 783 F.3d 1374, 1377 (Fed. Cir. 2015) (quoting 35 U.S.C. § 112).  "A claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.' " Id. (quoting Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 901-02 (2014)).  Plaintiff asserts that "Claims 8 and 12 lack an enabling disclosure in the specification, which must teach a person of skill in the art how to make and use the claimed invention to the full scope of the claims without undue experimentation."  (Doc. 106, p. 9.)  As discussed above, however, Plaintiff does not address the portions of the specification describing "sets" which could consist of more than two

---

[11] Defendants assert that "Plaintiff[']s [invalidity] argument is misplaced in claim construction briefing." (Doc. 112, p. 16.)  To the extent Plaintiff's argument is procedurally proper, it fails for the reasons discussed below.

14

arms.  (See, e.g., doc. 15-5, p. 29 ("This desktop workspace includes at least one set of arms as part of the height adjustment mechanism . . .").)  Plaintiff also argues that "if the Court construes 'set of arms' in [asserted] [C]laim 1 of the '774 patent to mean two or more arms, then [C]laim 1 will also be invalid for same reasons as [C]laims 8 and 12[.]"  (Doc. 106, p. 9.)  Given the Court's rejection of Plaintiff's invalidity argument in the context of Claims 8 and 12, the court rejects the incorporated argument in the context of Claim 1.

For the foregoing reasons, the Court declines to adopt Plaintiff's proposed construction of Terms 1.a and 1.b, which would limit the word "set" to "pair."  Defendants agree with the Magistrate Judge's conclusion that the plain and ordinary meaning of "set", in the context of the Patents, constitutes groups of two or more, (doc. 104, p. 6), and Plaintiff does not expressly disagree with that conclusion, (see generally doc. 106).  Further, neither party objects to the Magistrate Judge's conclusion that adopting the plain and ordinary meaning of "set" would resolve the parties' dispute over the term's scope.  (Doc. 103, p. 14 (citing O2 Micro, 521 F.3d at 1361).) The Court agrees with that conclusion, since the plain and ordinary meaning of "set" in the context of the Patents, i.e., a group of two or more, is consistent with Defendants' view of the term's scope, and inconsistent with Plaintiff's view.  (See id., pp. 13-14.)  The Court will construe Terms 1.a and 1.b to have their plain and ordinary meaning, and the Court **DECLINES to ADOPT** the R&R as to those terms.  (Doc. 103, in part.)

**III.    The Court adopts the Magistrate Judge's recommendations regarding Term 1.**

Defendants also object to the Magistrate Judge's recommended construction of Term 1.  (See doc. 104, p. 5 n.1.)[12]  The Magistrate Judge summarized Plaintiff's proposed construction regarding Term 1 as follows:

---

[12]  The Magistrate Judge referred to Term 1 as a "combined disputed term" because it incorporates other disputed terms.  (Doc. 103, p. 11.)

15

| Disputed Term Number | Term | Plaintiff's Proposed Construction | Relevant Claims |
|---|---|---|---|
| 1 | "a set[s] of [pivot] arms that connect at a scissoring point[s] creating a scissoring motion" | The disputed phrase (including variations) should be construed to mean: "for each set, two elongated components ('arms') configured to enable a scissoring motion, wherein the arms in each set are directly attached to each other at a scissoring pivot point, and wherein each arm is also directly attached to the work surface platform and the base at a sliding mechanism on one end of the arm, and a pivot point on the opposite end of the arm." | Claims 1, 13, 14, 19, 24, and 29, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent |

(Doc. 103, p. 34.) The Magistrate Judge divided Plaintiff's proposed construction into its component parts, (id.), and recommended that the Court reject each portion except the language regarding the location of the scissoring pivot point:

> . . . a pair[13] of pivot arms that connect at a scissoring pivot point creating a scissoring motion, wherein the scissoring pivot point is located on the arms between each arm's sliding mechanism and base or platform pivot point . . .

(Id., p. 68; see also id., pp. 34-38.) He explained that the portion of Plaintiff's proposed construction regarding the scissoring pivot point's location in Term 1 is consistent with his recommended construction of "scissoring pivot point", which is designated as Term 1.d. (Id.,

---

[13] The Magistrate Judge recommended that the Court construe "scissoring motion" as a motion involving a set of two arms given his recommended construction of Terms 1.a and 1.b. (Doc. 103, pp. 34-35.) For the reasons discussed above, the Court declines to construe Term 1 to include a two-arm "set" limitation.

16

p. 37.) The Magistrate Judge based the recommended construction of Term 1.d and Term 1 on, *inter alia*, the text of the claims and figures in the specifications. (See id., pp. 25-30.)

Defendants assert a wholly conclusory objection to this recommendation in a footnote: "[t]he location of the arms is not a requirement recited in the claims and the R&R's construction improperly narrows the claim by including this additional phrase." (Doc. 104, p. 5; see also doc. 112, p. 19 ("[T]he location of the arms is not a requirement recited in the claims and the R&R's construction improperly narrows the claim by including this additional phrase. Plaintiffs do not identify any such claim language in their Response [to the R&R objection] [that] requires this limitation.").) Since Defendants do not explain why the Magistrate Judge's reasoning regarding the location of the scissoring pivot point in Terms 1.d and 1 is erroneous, that recommendation is **ADOPTED** as the Court's opinion. (Doc. 103, in part.)[14]

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS**, in part, the July 5, 2023 R&R, and **DECLINES** to **ADOPT** it, in part. (Doc. 103.) The following constructions shall apply:

| Disputed Term Number | Term | Relevant Claims | Construction |
|---|---|---|---|
| 1.a | "a set of pivot arms" | Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |
| 1.b | "two sets of arms" | Claims 1, 13, 14, 19 & 24, 630 Patent | Plain and ordinary meaning |
| 1.c | "arm pivot point" | Claims 1 & 11, 773 Patent<br><br>Claims 1 & 12, 774 Patent | Plain and ordinary meaning |

---

[14] Defendants do not explain whether the newly-cited Claims 8 and 12, (doc. 15-5, p. 33), indicate that the Magistrate Judge's recommended construction of Terms 1.d and 1 were erroneous. (See generally docs. 104 & 112.)

17

| | | | |
|---|---|---|---|
| 1.d | "scissoring pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | *See construction of Disputed Term 1 below* |
| 1.e | "base pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |
| 1.f | "platform pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |
| 1 | "a set[s] of [pivot] arms that connect at a scissoring point[s] creating a scissoring motion" | Claims 1, 13, 14, 19, 24, and 29, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | . . . a set[s] of pivot arms that connect at a scissoring pivot point creating a scissoring motion, wherein the scissoring pivot point is located on the arms between each arm's sliding mechanism and base or platform pivot point . . . |
| 2 | "an element that connects the two sets of arms to one another" | Claims 1, 13, 14 & 19, 630 Patent | "an element that directly or indirectly connects the two sets of arms to one another" |
| 3 | The phrase "directly attached" in the following language: "a gas spring directly attached to one of the set of pivot arms through an arm pivot point" | Claims 1 & 4, 773 Patent<br><br>Claim 1, 774 Patent | "directly attached" [in the relevant claims] means the gas spring is attached to the set of pivot arms through an arm pivot point without an intermediate component other than the arm pivot point. |

| 4 | "keyboard tray mechanism is configured to allow the keyboard platform to be stored under the work station platform and to extend out in the protruding Position" | Claims 11 & 22, 630 Patent<br><br>Claim 10, 773 Patent | "A keyboard tray mechanism that allows the keyboard tray to have at least two positions, including one for being stored underneath the work station platform and one that allows the keyboard tray to extend out in the protruding position." |
| --- | --- | --- | --- |
| 5 | "gas spring, set of pivot arms, base pivot point, and the platform pivot point align side by side . . . in a fully lowered position such that the desktop workspace adjusts vertically" | Claim 13, 630 Patent<br><br>Claim 6, 773 Patent<br><br>Claim 5, 774 Patent | Plain and ordinary meaning |

**SO ORDERED**, this 11th day of September, 2023.

_R. STAN BAKER_
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA