# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| FACTORY DIRECT WHOLESALE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| OFFICE KICK, INC., and CKNAPP SALES, INC., | ) ) ) | |
| Defendants. | ) | CV421-368 |
| OFFICE KICK, INC., and CKNAPP SALES, INC., | ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | |
| FACTORY DIRECT WHOLESALE, LLC, DEFU USA, LLC, and HANPING LIU, | ) ) ) | |
| Counterclaim Defendants. | ) | |

## <u>ORDER</u>

Defendants Office Kick, Inc. and CKnapp Sales, Inc. (collectively "Defendants") seek to exclude certain opinions of Plaintiff's experts Dr. Craig Forest and Lisa Miller. Doc. 145. Plaintiff Factory Direct Wholesale, LLC ("FDW") and Counterclaim Defendants Defu USA, LLC

("Defu") and Hanping Liu responded in opposition, doc. 158, and Defendants replied, doc. 170. Meanwhile, FDW, Defu, and Liu seek to exclude certain testimony and opinions of Defendants' experts Dr. Mark Benden and Mr. David Duski. Doc. 146-17. Defendants responded, doc. 157, and FDW, Defu, and Liu replied, doc. 171. These motions have been referred to the undersigned and are ripe for review.

## Background

Plaintiff FDW sells adjustable standing desk converter units which allow users to either stand or sit while using the work surface. Doc. 15 at 5 (First Amended Complaint). It has sold various desk converter models on Amazon.com. *Id.* at 6, 29-30. Defendant CKNAPP Sales, Inc., also known as "Vivo," is a parent company of Defendant Office Kick, Inc. ("Office Kick"). *Id.* at 3. Vivo and Office Kick are competitors of FDW, and they sell desk converters on their own websites. *Id.* at 4.

According to United States Patent Office ("USPO") records, Office Kick holds three desk converter patents: (1) Patent No. 11,134,773 (the "773 Patent"), (2) Patent No. 11,134,774 (the "774 Patent"), and (3) Patent No. 10,575,630 (the "630 Patent," and, collectively with the 773 and 774 Patents, the "Patents"). Doc. 15 at 7-8, 22, 25; *see also* doc. 15-1

2

(773 Patent); doc. 15-5 (774 Patent); doc. 15-6 (630 Patent). FDW alleges that Defendants' counsel wrote to Amazon demanding that it remove two of FDW's models because they infringed the 773 Patent; Amazon subsequently removed the models. Doc. 15 at 6-9. Amazon eventually removed more of FDW's models at Defendants' request because they purportedly infringed one of the Patents. *Id.* at 19-30.

FDW brought this action against Defendants asserting a claim for tortious interference with prospective and existing contractual and business relationships and seeking declaratory judgment of non-infringement of the Patents and declaratory judgment of invalidity of the Patents. *See* doc. 15 at 30-43.[1] Defendants filed an Answer, doc. 81, and asserted Counterclaims against FDW, Defu, and Lui for Infringement of the 773 Patent, Infringement of the 774 Patent, Infringement of the 630 Patent and Fraud, and against FDW for Violation of Georgia's Uniform Deceptive Trade Practices Act, *id.* at 18-51.[2]

Between December 1, 2022, and August 21, 2023, the parties participated in the claim construction process, *see, e.g.*, docs. 55, 71, 73,

---

[1] FDW asserted a claim for civil conspiracy in its Amended Complaint, doc. 15 at 41-43, but later amended its pleading to withdraw the claim, doc. 141 at 1.

[2] The District Judge's Order on Defu and Lui's Motions to Dismiss narrowed the scope of the Counterclaims against those Counterclaim Defendants. *See generally* doc. 121.

77, 78, 82, 103, 104, 106, 112, culminating in the District Judge's September 11, 2023, Order regarding the construction of disputed claims in the patents at issue in this case, (the "*Markman* Order"),[3] doc. 117. The District Judge entered the following claim constructions:

| Disputed Term Number | Term | Relevant Claims | Construction |
|---|---|---|---|
| 1.a | "a set of pivot arms" | Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |
| 1.b | "two sets of arms" | Claims 1, 13, 14, 19 & 24, 630 Patent | Plain and ordinary meaning |
| 1.c | "arm pivot point" | Claims 1 & 11, 773 Patent<br><br>Claims 1 & 12, 774 Patent | Plain and ordinary meaning |
| 1.d | "scissoring pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | *See construction of Disputed Term 1 below* |
| 1.e | "base pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |

---

[3] It is the Court's duty to construe the claims of the disputed patent. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–90 (1996).

| | | | |
|---|---|---|---|
| 1.f | "platform pivot point" | Claims 1, 13, 14, 19 & 24, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | Plain and ordinary meaning |
| 1 | "a set[s] of [pivot] arms that connect at a scissoring point[s] creating a scissoring motion" | Claims 1, 13, 14, 19, 24, and 29, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | . . . a set[s] of pivot arms that connect at a scissoring pivot point creating a scissoring motion, wherein the scissoring pivot point is located on the arms between each arm's sliding mechanism and base or platform pivot point . . . |
| 2 | "an element that connects the two sets of arms to one another" | Claims 1, 13, 14 & 19, 630 Patent | "an element that directly or indirectly connects the two sets of arms to one another" |
| 3 | The phrase "directly attached" in the following language: "a gas spring directly attached to one of the set of pivot arms through an arm pivot point" | Claims 1 & 4, 773 Patent<br><br>Claim 1, 774 Patent | "directly attached" [in the relevant claims] means the gas spring is attached to the set of pivot arms through an arm pivot point without an intermediate component other than the arm pivot point. |
| 4 | "keyboard tray mechanism is configured to allow the keyboard platform to be stored under the work station platform and to extend out in the protruding Position" | Claims 11 & 22, 630 Patent<br><br>Claim 10, 773 Patent | "A keyboard tray mechanism that allows the keyboard tray to have at least two positions, including one for being stored underneath the work station platform and one that allows the keyboard tray to extend out in the protruding position." |

| 5 | "gas spring, set of pivot arms, base pivot point, and the platform pivot point align side by side . . . in a fully lowered position such that the desktop workspace adjusts vertically" | Claim 13, 630 Patent<br><br>Claim 6, 773 Patent<br><br>Claim 5, 774 Patent | Plain and ordinary meaning |

Doc. 117 at 17-19.

After the District Judge entered the final *Markman* Order, the parties proceeded to conduct expert witness discovery. *See* doc. 120 at 2. Relevant to the motions before the Court, FDW identified Dr. Craig Forest as a technical expert, *see* docs. 145-1 (Forest Expert Report); 145-3 (Forest Rebuttal Report); 145-5 (Forest Second Rebuttal Report), and Lisa Miller as a damages expert, *see* docs. 145-11 (Sealed Miller Report); 145-12 (Sealed Miller Rebuttal Report); 145-13 (Redacted Miller Report); 145-14 (Redacted Miller Rebuttal Report). Defendants identified Dr. Mark Benden as a technical expert, *see* docs. 157-1 (Benden Report); 146-1 (Benden Rebuttal Report), and David Duski as a damages expert, *see* docs. 146-12 (Sealed Duski Report); 146-16 (Redacted Duski Report). The Court will address each expert, and the opposing party's challenges to each expert, in its analysis below.

## **Legal Standard**

Federal Rule of Evidence 702 compels the Court to act as a "gatekeeper" for expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n. 7, 597 (1993)).[4]  In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 592 n.10).

---

[4] The Court must apply the law of the Federal Circuit to substantive patent issues, and the law of the Eleventh Circuit to procedural nonpatent issues.  *See In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999).  "Whether proffered evidence is admissible at trial is a procedural issue not unique to patent law," *Summit 6, LLC v. Samsung Elects. Co., Ltd.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015), so the Court applies Eleventh Circuit law to these expert admissibility issues.

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]"). But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015.) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected

to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262.

Lastly, expert testimony must assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591). Expert testimony does not help the trier of fact if it fails to "fit" with the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004); *see also FP Augusta II, LLC v. Core Constr. Servs., LLC*, 2022 WL 626783, at *4 (S.D. Ga. Mar. 3, 2022) (quoting *Korsing v. United States*, 2017 WL 7794276, at *3 (S.D. Fla. Aug. 24, 2011)) ("Under [the helpfulness] requirement, which is

concerned primarily with relevance, the Court must consider whether the expert testimony 'is sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute.' ").

## Analysis

### 1.    Dr. Craig Forest

FDW identified Dr. Craig Forest as a retained mechanical engineer expert witness.  *See generally* doc. 145-1.  His initial report summarizes his five opinions:

> Opinion 1: Based on my analysis of the specification and file history of the '630 patent, my opinion is that a person of ordinary skill in the art ("POSITA") at the times the various applications and amendments were filed would not have understood that the inventor possessed and described an adjustable desk riser that incorporated a gas spring for the purpose of assisting the elevation of the adjustable desk riser prior to December 15, 2019. . . .
>
> Opinion 2: Based on my analysis of the specification and file history of the '773 and '774 patents, my opinion is that a POSITA at the times the various applications and amendments were filed would not have understood that the inventor possessed and described an adjustable desk riser that incorporated "a gas spring … to provide a force to assist in elevation of the work surface platform" (as recited in claims 1 and 8 of the '773 patent and 1, 8 and 12 of the '774 patent) prior to December 15, 2019. . . .
>
> Opinion 3: Based on my analysis of the specification and file history of the '773 and '774 patents, my opinion is that a POSITA at the times the various applications and amendments were filed would not have understood that the

inventor possessed and described an adjustable desk riser that incorporated "a gas spring directly attached to one of the set of pivot arms through an arm pivot point" (as recited in claims 1 and 8 of the '773 patent and 1, 8 and 12 of the '774 patent) prior to May 3, 2021. Therefore, the earliest priority date that can be claimed for claims 1 and 8 of the '773 patent and claims 1, 8 and 12 of the '774 patent is May 3, 2021. . . .

Opinion 4: Based on my analysis of the specification and file history of the '774 patent, my opinion is that a POSITA at the times the various applications and amendments were filed would not have understood that the inventor possessed and described an adjustable desk riser that incorporated three arms that "connect at __*a*__ scissoring pivot point." . . .

Opinion 5: Based on my analysis of the prior art and claim charts set forth in Plaintiff Factory Direct Wholesale, LLC's Third Supplemental Invalidity Contentions, the claims of the '773 and '774 patents are either anticipated or rendered obvious, as discussed therein. . . .

Doc. 145-1 at 7-9.

In his rebuttal report, Forest offered three additional opinions

related to the alleged infringement:

Opinion 6: I have been asked to consider Dr. Benden's opinion that FDW's SD-52 model desk riser includes "two sets of arms that connect at scissoring pivot points." I disagree; FDW's SD-52 lacks this limitation. Therefore, the SD-52 cannot infringe any of the claims of the '630 patent. . . .

Opinion 7: I have been asked to consider Dr. Benden's opinion that FDW's SD-8060 model desk riser includes "a set of pivot arms that connect at a scissoring pivot point(s)." I disagree; FDW's SD-8060 lacks this limitation. Therefore, the SD-8060 cannot infringe independent claims 1 at 11 of the '773 (or any

11

claims dependent thereon) or any of the claims of the '774 patents. . . .

Opinion 8: I have been asked to consider Dr. Benden's opinion that FDW's SD-8060 model desk riser includes "gas spring directly attached to one of the set of pivot arms through an arm pivot point." I disagree; FDW's SD-8060 lacks this limitation. Therefore, the SD-8060 cannot infringe any of the claims of the '773 or '774 patents. . . .

Doc. 145-3 at 3. Additionally, Forest's rebuttal report responded to Office Kick's financial expert's opinion that "no non-infringing alternatives existed for the products accused of infringing the patents-in-suit." *Id.* Forest's Opinion 9 is that "[a]t all pertinent times, alternative designs were readily available that would not even arguably infringe any of the claims of any of the patents-in-suit, without any loss of functionality." *Id.*

Defendants seek to exclude Forest's Opinions 4, 6, and 7 because they rely on interpretations of terms that are inconsistent with the Court's claim construction. Doc. 145 at 12-17. "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). An expert's opinion that is based on an impermissible claim construction is appropriately excluded, whether as irrelevant, *see Liquid Dynamics*

*Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006), unreliable or unhelpful, *see Personalized User Model, L.L.P. v. Google Inc.*, 2014 WL 807736, at \*1 (D. Del. Feb. 27, 2014).  Ultimately, where "the courts claim construction and related decisions are inconsistent with the opinions expressed in [an expert's report], such opinions will not be admitted at trial." *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 198, 210 (D. Del. 2006).

Defendants begin with their critique of Opinion 6.  Doc. 145 at 13. First, they argue, somewhat inexplicably, that Forest's understanding of the Court's construction of Term 1 is incorrect.  *Id.*  The Court's *Markman* Order provided the following construction for Term 1:

| 1 | "a set[s] of [pivot] arms that connect at a scissoring point[s] creating a scissoring motion" | Claims 1, 13, 14, 19, 24, and 29, 630 Patent<br><br>Claim 1, 773 Patent<br><br>Claim 1, 774 Patent | . . . a set[s] of pivot arms that connect at a scissoring pivot point creating a scissoring motion, wherein the scissoring pivot point is located on the arms between each arm's sliding mechanism and base or platform pivot point . . . |

Doc. 117 at 18.  Defendants contend that the construction somehow does not include "wherein the scissoring pivot points is located on the arms between each arm's sliding mechanism and base or platform pivot point."

Doc. 145 at 13. This argument is foreclosed by the face of the District Judge's *Markman* Order. Doc. 117 at 18. Forest's understanding of Term 1's construction appears to be consistent with the Court's construction. *See* doc. 145-3 at 4 (identifying the Court's construction as "a set[s] of pivot arms that connect at a scissoring pivot point creating a scissoring motion, wherein the scissoring pivot point is located on the arms between each arm's sliding mechanism and base or platform pivot point."). Next, Defendants argue that Forest is incorrect in saying the "arms in a given set must connect, either directly or indirectly, to each other at a scissoring pivot point." Doc. 145 at 13-14 (quoting doc. 145-3 at 4 (internal emphasis and quotations omitted)). A reading of the *Markman* Order shows that Forest's summary is consistent with the Court's construction. *See* doc. 117 at 18 (construing "a set[s] of pivot arms *that connect at a scissoring pivot point*" and construing "connects" as "directly or indirectly connects") (emphasis added)). Defendants' first two arguments against Opinion 6 are, therefore, unavailing.

Defendants next take issue with Forest's use of a new term, "pin joint," to explain the term "pivot point" in the patents-in-suit. Doc. 145 at 15 (citing doc. 145-3 at 5, ¶ 11). The *Markman* Order did not construe

the term "pivot point," instead construing the more specific terms "arm pivot point," "scissoring pivot point," "base pivot point," and "platform pivot point."  Doc. 117 at 17-18; *see also* doc. 158 at 7 ("The parties did not focus on the meaning of 'pivot point' itself; they were focused on the location or function of the pivot points: arm, scissoring, base, and platform.").  FDW contends the Court should allow its expert to express his opinion on the meaning of pivot point, or, alternatively, should "conduct a supplemental claim construction of the term 'pivot point.'" Doc. 158 at 8-9.  They point to authority that authorizes the Court to "revisit[ ] and alter[ ] its interpretation of the claim terms as its understanding of the technology evolves."  *Id.* at 9 n.1 (quoting *POWERbahn, LLC v. Foundation Fitness, LLC*, 2021 WL 2599663, at *7 (N.D. Ga. Mar. 26, 2021) (internal quotations omitted)).  But that is not what FDW asks the Court to do.  Instead, they ask the Court to interpret, for the first time, a term that the parties did not raise during the extensive claim construction process.  Defendants are correct, FDW has waived any argument on the meaning of "pivot point" by failing to raise it during claim construction.  *Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)

(approving of the district court's determination that a party waived argument on the meaning of a term by failing to raise it during the claim construction phase).

Defendants' final challenge to Opinion 6 focuses on Forest's discussion of the word "connected."  Doc. 145 at 15-16.  In Forest's analysis of an allegedly infringing product, identified as SD-52, he observes that "none of the arms are connected to each other at the axle," and that "[a] connection (i.e., a connect[ion] at a scissoring pivot point) on the axle would, at a minimum . . . impose lateral constraint upon the arms with respect to the axle (i.e., prevent the arms' lateral motion in the axial direction)."  Doc. 145-3 at 7-8.  Defendants argue this amounts to Forest "creat[ing] his own limitations," which "impermissibly narrow[s] the meaning of the word "connection."  Doc 145 at 15-16.  A review of the portion of Forest's Opinion 6 highlighted by Defendants does not show any anticipated testimony that contradicts the Court's construction of the term "connects."  *See, e.g.*, doc. 117 at 18.  His anticipated testimony about the allegedly infringing product is not the same as FDW's proposed claim construction of the word "connects," that it must mean "that the connection is direct and that no intermediate components exist," which

the Court rejected as too narrow. Doc. 103 at 42-44. This is not reason to exclude Forest's Opinion 6. For the above reasons, Defendants' requests to exclude portions of Opinion 6 are **GRANTED**, in part, and **DENIED**, in part. Doc. 145, in part. The portion of Forest's Opinion 6 that offers a new meaning of the term "pivot point," including his discussion of the term "pin joint," is **EXCLUDED**.

Defendants' challenge to Opinion 7 mirrors their challenge to Opinion 6, in that they contend Forest "wrongly alleges that . . . all claims of the '773 patent recite that the set of arms must connect to each other at a scissoring pivot point . . . and . . . misapplies the Court's construction of the term 'connect.'" Doc. 145 at 16. For the same reasons those arguments were unsuccessful to exclude those portions of Opinion 6, they are unsuccessful as challenges to Opinion 7. The request to exclude any portion of Opinion 7 is, therefore, **DENIED**. Doc. 145, in part.

Defendant also argues that Forest's Opinion 4 contradicts the Court's construction of the term "set of arms." Doc. 145 at 16-17. Forest opines that "[a] POSITA, would not interpret the phrase 'at least one set of two arms' as meaning 'a set of at least two arms.'" Doc. 145-1 at 43, ¶ 60. Defendants point to the Court's *Markman* Opinion, where the

District Judge declined to adopt the recommended construction of "set" and instead afforded the term its "plain and ordinary meaning," which is "a group of two or more." Doc. 117 at 15. Any opinion that contradicts this construction, *i.e.*, any opinion about what a POSITA might understand the term "set" to mean, is inappropriate and therefore excluded. The request to exclude the portion of Opinion 4 related to the POSITA's understanding of the word "set" is **GRANTED**. Doc. 145, in part.

Defendants next challenge Opinions 1, 2, 3, 4, and 8 because they rely on new proposed constructions that were not raised during the claim construction process and are inconsistent with the intrinsic record. Doc. 145 at 17-22. They take issue with Forest's opinions that "introduce[ ] new constructions, without permission from the Court, for the claim terms 'gas spring' and 'height adjustment mechanism' that only now require[ ] each term to provide both a 'pushing *and* pulling force.'" *Id.* at 7. However, Defendants' arguments appear to merely express their disagreement with Forest's opinions, and do not point to specific portions of his opinion that either contradict the Court's claim construction or would qualify as an attempt to end-run the claim construction process.

*See id.* at 17-22; *see also* doc. 158 at 14-15.  Instead, they point to over 20 pages of Forest's report.  Doc. 145 at 17.  This attempt to litigate the merits of FDW's substantive arguments is not the purpose of a *Daubert* challenge.  The requests to exclude Forest's Opinions 1, 2, 3, 4, and 8 related to the "height adjustment mechanism" or "gas spring" are, therefore, **DENIED**.  Doc. 145, in part.

Forest's Opinion 5 relates to FDW's Third Supplemental Invalidity Contentions, "which pertain to the validity of the '773 and '774 patents." Doc. 145-1 at 44.  His opinion is based on his review and consideration of "the claim charts and the prior art references identified therein."  *Id.*  He opines that, after his review of the Supplemental Invalidity Contentions, he "agree[s] that the claim charts for the '773 and '774 patents accurately identify the corresponding features that are disclosed and taught in the identified prior art references."  *Id.* at 47.  He then offers "additional comments" regarding the Chinese Patent Application No. CN105124920A ("Li").  *Id.* at 47-48.  He concludes that the "claim charts demonstrates that each limitation of each claim of the '773 and '774 patents are disclosed in the prior art references disclosed therein."  *Id.* at 48.  Defendants argue Opinion 5 is inadmissible because Forest merely

incorporates by reference FDW's attorney's claim charts and provides no independent invalidity analysis. Doc. 145 at 22-24.

Defendants identified several cases where courts have excluded an expert's report for merely incorporating the party's invalidity contentions. *See* doc. 145 at 23-24 (citing *Changzhou Kaidi Electrical Co., Ltd. v. Okin America, Inc.*, 112 F. Supp. 3d 330, 338-39 (D. Md. 2015); *Nat'l Prods., Inc. v. Proclip USA, Inc.*, 2022 WL 2304114, at \*2 (W.D. Wisc. June 27, 2022); *Avnet, Inc. v. Motio, Inc.*, 2016 WL 927194, at \*5 (N.D. Ill. Mar. 4, 2016)). The case they contend is most directly on point, *Changzhou Kaidi Electrical Co.*, relies on Federal Rules of Civil Procedure 26(a)(2)(B)(i) to determine the sufficiency of the expert's report, and Rule 37(c)(1) to determine the appropriate sanction for the insufficient report. *See* 112 F. Supp. 3d at 339; *see also Avnet*, 2016 WL 927194, at \*6 (analyzing exclusion of an insufficient expert report under Rule 37). Even if Defendants are correct, and Forest's report is deficient under Rule 26(a)(2)(B)(i) for merely referring to the invalidity contentions, Defendants do not engage with Rule 37(c)(1) to explain why exclusion is appropriate in this case.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019). As the arguably nondisclosing party, FDW bears the burden of establishing substantial justification or harmlessness. *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009). As to the issue of harm, "[a] failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to the disclosure." *Hewitt v Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010). FDW argues Defendants "have suffered no prejudice," hanging their hat on the harmlessness of the disclosure. Doc. 158 at 21.

To determine harmlessness, courts, including this one, apply a five-factor test: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial;(4) the importance of the evidence; and (5) the nondisclosing party's explanation for its

failure to disclose the evidence. *See Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012); *Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016) (citing *Cambridge Univ. Press v. Becker*, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)); *Kraese v. Jialiang Qi*, 2021 WL 640826, at *4-*5 (S.D. Ga. Feb. 18, 2021). On balance, the harmlessness factors weigh in favor of permitting Forest to testify about his Opinion 5. As FDW explains, albeit succinctly, Forest's opinions on invalidity were provided with his opening expert report, the Defendants' expert responded to those opinions, and Defendants had a full opportunity to depose Forest. Doc. 158 at 21. Defendants did not raise—at least with the Court—any issue with the deficiency of Forest's report until its *Daubert* motion, so it had plenty of time to cure any deficiency and chose not to take advantage of that time. For these reasons, the request to exclude Opinion 5 is **DENIED**. Doc. 145, in part.

Finally, Defendants argue Forest's Opinion 9 should be excluded as untimely, since it was not included in his original report. Doc. 145 at 24-25. The dispute around Opinion 9 centers on who carries the burden of proof on non-infringing alternatives. *Compare* doc. 145 at 24-25 *with* doc. 158 at 21-25. Defendants contend the "non-infringing alternative

analysis acts more like an affirmative defense," and therefore FDW should have included the opinion in the expert's opening report. Doc. 145 at 25. FDW disagrees, arguing that "Federal Circuit law makes clear that it is the patentees (Defendants in the present case) which bear the burden of proof." Doc. 158 at 21.

The Federal Circuit has explained that where a patent is infringed, the patentee is entitled to damages adequate to compensate for that infringement. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012). One category of infringement compensation is the reasonable royalty the patentee would have received through arms-length bargaining. *Id.* Courts use the 15 factors identified in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) to "provide a reasoned economic framework for a hypothetical negotiation, which attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Whitserve*, 694 F.3d at 26-27 (internal quotations, citation, and alterations omitted). Consideration of non-infringing alternatives is part of this analysis. *See VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1346 (Fed. Cir. 2023). The patentee

bears the burden of proving damages. *Whitserve*, 694 F.3d at 26; *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("[I]t was [the patentee's] burden, not [the opposing party's], to persuade the court with legally sufficient evidence regarding an appropriate reasonable royalty. [Cit.] As a matter of simple procedure, [opposing party] had no obligation to rebut until [patentee] met its burden with reliable and sufficient evidence.").

Because Defendants bear the burden of proving their damages for any infringement, FDW's expert's opinion regarding non-infringing alternatives, which is a factor to be considered in the reasonable royalty analysis, was appropriately presented in his rebuttal report. Moreover, Defendants have not pointed to any authority that would support their drastic request to strike the opinion, even if it were untimely. *See* doc. 145 at 25. As FDW rightly observes, Defendants' experts had an opportunity to review and respond substantively to Forest's Opinion 9. Doc. 158 at 24. Therefore, Defendants' request to exclude Forest's Opinion 9 as untimely is **DENIED**. Doc. 145, in part.

### 2.    Lisa Miller

FDW also identified Lisa Miller as an expert retained to "evaluate damages suffered by FDW due to the actions of Office Kick and Vivo alleged in the lawsuit."  Doc. 145-13 at 4.  In her initial Report, Miller offered her opinion of the appropriate calculation of FDW's lost profits, including the calculation of those damages reduced to present value.  *Id.* at 5-6.  Relevant to Defendants' challenge, in her rebuttal report, Miller offered additional opinions related to "available non-infringing alternatives," in response to Office Kick's expert's opinions related to the same.  Doc. 145-14 at 20-26.  As with Forest's Opinion 9, Defendants argue these additional opinions should be excluded as untimely, since they should have been included in her original report.  Doc. 145 at 2, 24-25.  For the same reasons articulated above regarding Forest's Opinion 9, Miller's opinions regarding available non-infringing alternatives were appropriately presented in her rebuttal report, and Defendants' request to strike those opinions as untimely is **DENIED**.  Doc. 145, in part.

### 3.    Dr. Mark Benden

Defendants identified Dr. Mark Benden as a retained technical expert in the fields of "engineering mechanical design, bioengineering,

ergonomics, and product design." Doc. 157-1 at 11.  FDW only challenges his opinions "regarding secondary considerations of nonobviousness."[5] Doc. 146-17 at 1.  They seek exclusion of his opinions in his rebuttal report regarding the existence of "a long felt but unsolved need," "the failure of others," "praise by others," "copying of the invention by competitors," and "commercial success."  Doc. 146-1 at 11-28; *see also* doc. 146-17 at 3-14.  They first challenge the opinions as outside the realm of Benden's qualifications and experience and within the understanding of an average layperson.  *Id.* at 4.

---

[5] As the Federal Circuit has explained:

> A patent claim is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103 (2012).  Obviousness "is a question of law based on underlying findings of fact."  *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).  Those underlying findings of fact include: (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) the presence of evidence of secondary considerations, such "as commercial success, long felt but unsolved needs, failure of others," and unexpected results.  *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *see United States v. Adams*, 383 U.S. 39, 50–52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

*Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1372 (Fed. Cir. 2019).

Defendants, who bear the burden of demonstrating Benden is qualified and his opinions are reliable and helpful, *see Allison*, 184 F.3d at 1306, argue that "Dr. Benden's opinions are not merely the understanding of an average layperson, but are based on being able to understand the disclosure of the Asserted Patents based on years of education and training in engineering, and understanding of the market forces in the ergonomic product market based on decades of experience working for, founding, and running ergonomic product companies, and personal experiences at the Las Vegas Ergonomics Conference & Ergoexpo (NECE) on November 15, 2016." Doc. 157 at 6. They recount his educational background and detail his experience in the relevant fields. *Id*. at 6-9; *see also* doc. 146-2 (Benden CV). Defendants are correct that Benden's extensive training and experience provide sufficient qualifications for him to offer his secondary considerations opinions, and those opinions are, generally speaking, "beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262-63.

Next, the parties dispute whether Benden's opinions on secondary considerations are impermissible legal conclusions, or, alternatively, underlying facts to which Benden may appropriately testify. *Compare*

27

doc. 146-17 at 4-5 *with* doc. 157 at 9-10.  FDW is correct that an expert may not "testify to the legal implications of conduct."  Doc. 146-17 at 5 (quoting *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)) (internal quotations omitted).  However, Defendants also correctly cite to the same case for the proposition that an expert *may* offer his opinion on an ultimate issue of fact.  Doc. 157 at 9-10 (citing *Montgomery*, 898 F.2d at 1541).  "[T]he distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive."  *Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989).  Although "obviousness" is a question of law, it is based on underlying findings of fact, including whether there is evidence of secondary considerations.  *Fox Factory*, 944 F.3d at 1372.  Therefore, while Benden may not testify as to what the law is, or the legal implications of the secondary considerations, he may testify as to his opinion of the existence of those secondary considerations.  *Montgomery*, 898 F.3d at 1541; *cf. Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).  If Benden's testimony begins to run afoul of this line during trial, FDW may object, but wholesale exclusion of his opinions is not required.

FDW also argues for exclusion of all of Benden's secondary considerations opinions because they do not have a proper "nexus" to the patented inventions. Doc. 146-17 at 5-7. "In order to accord substantial weight to secondary considerations in an obviousness analysis, 'the evidence of secondary considerations must have a nexus to the claims, *i.e.*, there must be a legally and factually sufficient connection between the evidence and the patented invention.'" *Fox Factory*, 944 F.3d at 1373 (quoting *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (internal citation and quotations omitted)). FDW argues that nexus is missing in Benden's testimony, because, in their view, Benden asserts the existence of the requisite nexus "based upon a single feature of the claimed inventions in the patents-in-suit." Doc. 146-17 at 6. Defendants, however, identify additional portions of Benden's report that discuss other unique characteristics of the claimed invention. Doc. 157 at 10-11 (citing doc. 146-1 at 15-20).

Because FDW's challenge rests on an oversimplification of Benden's opinions, it is not persuasive and does not support exclusion of his secondary-considerations opinions. Any critiques they may have regarding his assertion of a nexus are appropriate for vigorous cross-

examination. "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. . . . Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [arguably] shaky but admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (internal citations, quotations, and alterations omitted).

FDW also offers specific attacks on Benden's opinions related to "long felt but unsolved need," and "failure of others," doc. 146-17 at 7-8, "praise by others," *id.* at 8-10, "copying," *id.* at 10-12, and "commercial success," *id.* at 12-14. They argue for exclusion of his testimony regarding long felt but unsolved need and alleged failure of others because, in addition to the unsuccessful challenge to the nexus requirement, Benden "points to no evidence that shows any time period at all, much less, a 'long' period, over which this need supposedly existed." *Id.* at 7. This critique goes not to the admissibility of Benden's expert testimony, but to whether Defendants, as the patentee, can ultimately meet their burden on the obviousness analysis. *See Fox Factory*, 944 F.3d at 1373.

Tellingly, the cases they cite do not analyze the admissibility of expert testimony, but instead analyze the merits of the underlying claims. *See, e.g.*, *Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1327 (Fed. Cir. 2009) (reviewing the district court's grant of summary judgment on obviousness).

FDW similarly attacks Benden's opinions regarding "praise by others," "copying," and "alleged commercial success" by challenging the sufficiency of the evidence supporting those opinions. *See* doc. 146-17 at 8-14. Whether Defendants are able to present sufficient evidence to meet their burden is not a question that must be resolved in order to determine the admissibility of Benden's opinion testimony; instead, for now, they must meet their burden of demonstrating Benden's qualifications, his opinions' reliability, and their helpfulness. *See, e.g.*, *Frazier*, 387 F.3d at 1260. They have done so. The request to exclude his opinions about secondary considerations is, therefore, **DENIED**. Doc. 146, in part.

### 4.   David Duski

The remaining expert at issue is Defendant's damages expert David Duski. Doc. 146-17 at 14-22. Duski offers an opinion of patent damages consisting of a "running royalty" within a calculated range. Doc. 146-16

at 18-19.  FDW seeks exclusion of his opinions relating to damages for alleged patent infringement because he failed to apportion those alleged damages between the patented and unpatented features.  Doc. 146-17 at 16-20.

The parties seem to agree that damages in patent cases are often calculated using a reasonable royalty approach.  *See* doc. 146-17 at 15-16; doc. 157 at 16-17; *see also* 35 U.S.C. § 284 (statutory entitlement to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.").  A method to calculate a reasonable royalty rate is the "hypothetical negotiation," under which a party tries to "ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

Duski offers his opinion as to the range of reasonable royalties in this case.  Doc. 146-16 at 18-19.  FDW critiques the analysis because "where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no

more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). They argue Duski's opinion does not apportion the alleged damages between the patented features and the unpatented features. Doc. 146-17 at 16-20. Defendants respond that Duski relies on a different path to apportionment, relying on "sufficiently comparable licenses, namely, other licenses granted by OKI to infringers of the patents-in-suit and related patents in the same patent family . . . ." Doc. 157 at 16-17. In reply, FDW disputes that the licenses are "sufficiently comparable." Doc. 171 at 8-9.

"In determining a reasonable royalty, parties frequently rely on comparable license agreements." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020). "Assessing the comparability of licenses requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." *Id.* at 1372–73. The Federal Circuit has observed that it "has often excluded licenses that are technologically or economically non-comparable." *Id.* at 1373. However, the court further observed that "the issue of comparability is often one of sufficiency of the evidence, not

admissibility." *Id.* (citing cases). Applying the persuasive reasoning of the Federal Circuit, the issues raised by FDW are best addressed by cross examination and not by exclusion of Duski's testimony. *See Quiet Tech. DC-8*, 326 F.3d at 1341. The request to exclude Duski's testimony about Defendant's damages is, therefore, **DENIED**. Doc. 146, in part.

## Conclusion

For the foregoing reasons, Defendants' Motion to Strike Certain Opinions and Portions Thereof of Dr. Craig Forest, Ph.D., P.E. and Lisa Miller is **GRANTED, in part**. Doc. 145. Any portion of Forest's Opinion 4 about what a POSITA might understand the term "set" to mean is **EXCLUDED**. The portion of Forest's Opinion 6 that offers a new meaning of the term "pivot point," including his discussion of the term "pin joint," is **EXCLUDED**. The remainder of Defendant's requests for exclusion are **DENIED, in part**. Doc. 145, in part.

Plaintiff Factory Direct Wholesale, LLC's Motion to Exclude Certain Expert Opinions is **DENIED**. Doc. 146.

**SO ORDERED**, this 7th day of March, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA